AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

(30

# United States District Court

District  NORTHERN

FILED

Name  JACKSON, RONALD D.

Prisoner No.  V70867   Case No. SC057334A

Place of Confinement

CSP SOLANO

CLERK U.S DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Name of Petitioner (include name under which convicted)

Name of Respondent (authorized person having custody of petitioner)

V.

RONALD D. JACKSON

The Attorney General of the State of:  CALIFORNIA

D K SISTO

CV 08 1202

## PETITION

JSW

1. Name and location of court which entered the judgment of conviction under attack  SAN MATEO
SUPERIOR CT. 400 COUNTY CENTER, REDWOOD CITY, CA. 94063

2. Date of judgment of conviction  FEB. 8, 2005

3. Length of sentence  LIFE WITH POSSIBILTY, PLUS 20 YEARS

4. Nature of offense involved (all counts)  NEXT PAGE ATTACH"

5. What was your plea? (Check one)
   (a) Not guilty  ☑
   (b) Guilty  ☐
   (c) Nolo contendere  ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury  ☑
   (b) Judge only  ☐

7. Did you testify at the trial?
   Yes ☑  No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☑  No ☐

9. If you did appeal, answer the following:

(a) Name of court  FIRST APPELLATE DIST. DIV. FIVE

(b) Result  AFFIRM

(c) Date of result and citation, if known  FEB 15, 2006

(d) Grounds raised  JURY INSTRUCTION AND INSUFFICENT EVIDENXE

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court  SURPREME COURT OF CALIF.

(2) Result  DENIED

(3) Date of result and citation, if known  MAY 17, 2006

(4) Grounds raised  JURY INSTRUCTION AND INSUFFICIENT EVIDENCE

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court  N/A

(2) Result

(3) Date of result and citation, if known

(4) Grounds raised

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ✔ No ▭

11. If your answer to 10 was "yes," give the following information:
(a) (1) Name of court  SAN MATEO SUPERIOR COURT.

(2) Nature of proceeding  HABEAS CORPUS

(3) Grounds raised  TRIAL COURT ACTED IN EXCESS OF IT JURIS-

DICTION, NO EVIDENCE, PROSECUTOR MISCONDUCT,

AO 241 (Rev. 5/85)

INEFFECTIVE ASSISTANCE OF TREAL AND
APPELLATE COUNSEL.

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☑

(5) Result _____ DENIED "ATTACH"

(6) Date of result _____ JUNE 8, 2007

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____ CALTF. SURPREME COURT

(2) Nature of proceeding _____ HABEAS CORPUS

(3) Grounds raised _____ TRIAL COURT ACTED IN EXCESS OF IT
JURISDICTION, NO EVIDENCE, PROSECUTOR MIS-
CONDUCT, INEFFECTIVE ASSISTANCE OF TRIAL
AND APPELLATE COUNSEL

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☑

(5) Result _____ DENIED

(6) Date of result _____ JAN 3, 2008

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1) First petition, etc.     Yes ☑ No ☐
(2) Second petition,          Yes ☑ No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____ N/A _____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.
CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(I) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: THE TRIAL COURT SENTENCE ON PETITIONER IS A MISCARRIAGE IN THE FORM OF VIOLATING THE SIXTH AND FOURTEEN'S AMENDMENTS.

Supporting FACTS (state *briefly* without citing cases or law) PETITIONER WAS SENTENCE UNDER A GENERIC STATUTE WHICH IS NOT AUTHORIZE BY LAW. THIS SENTENCE EXCEEDS THE JURISDICTION OF TRIAL COURT. THE DUE PROCESS COMMANDS THAT NO MAN SHALL LOSE HIS LIBERTY UNLESS THE GOUERMENT HAS BORNE THE BURDEN OF CONVENCING THE FACT FINDERS OF HIS GUILT. TO SUCH END, THE REASONABLE DOUBT STANDART IS INDISPENSABLE.

B. Ground two: NO EUIDENCE TO SUSTAIN A CONUICTION OF ATTEMPED MURDER OR THE USES OF A FIREARM.

Supporting FACTS (state *briefly* without citing cases or law): THE CRIME OF ATTEMP REQUIRE TWO ELEMENT. THE STATE FAILED TO PROUE - THE ELEMENT ARE "A SPECIFIC INTENT TO COMMIT THE CRIME. AND A DIRECT BUT INEFFECT-UAL ACT DONE TOWARD IT COMMISSION. MS WEBSTER THE SO CALLED VICTIM UNDER DIRECT EXAM STATED AT NO TIME DID SHE SEE A GUN IN PETITIONER HAND OR FIRE A GUN. THERE IS NO EUIDENCE THAT A GUN EUEN EXIST. NO EUIDENCE WAS PRESENT TO SHOW PETITIONER PURCHASE OR USED A GUN.

PC.1258                                    (5)                                    PC 1404

C. Ground three: PROSECUTOR MISCONDUCT, USES OF DECEPTIVE AND MISLEADING METHODS AND WELL AS SUPPRESSING EXCULPATORY EVIDENCE

Supporting FACTS (state *briefly* without citing cases or law): THE PETITIONER NIECE MS. SMITH TESTIFIED ON THE DAY AFTER THE ALLEDGE CRIME THAT THE PETITIONER TOLD HER THAT HE SHOT AT MS. WEBSTER. THIS IS THE ONLY EVIDENCE OFFED BY THE STATE TO LINK PETITIONER TO THE ALLEDGE CRIME. THE FAILED TO DISCLOSE MS SMITH DRUG HISTORY. THEY ALSO MISLEAD THE JURY BY PRESENTING A GUN THAT HAD NOTHING TO DO WITH THE CASE.

D. Ground four: INEFFECTIVE ASSESTANCE OF COUNSEL BY TRIAL AND APPLATE ATTORNEYS. BOTH FAILED TO RESEARCH A LEGAL DEFENSE BASE ON "INNOCENCE"

Supporting FACTS (state *briefly* without citing cases or law): PRIOR TO THE START OF PETITIONER TRIAL ON FEB 3, 2005. PETITIONER HAD SPOKE TO MR DEVOY ABOUT AN INNOCENCE DEFENSE AND THE NEED TO IMPEACH MS SMITH. MS SMITH WAS INCONSISTANCE WITH HER STATMENTS, MR DEVOY SAID HE WOULD THEN FAIL TO DO SO. PETITIONER THEN INFORMED APPLIATE ATTORNEY ROBERT DERHAM. HE REFUSE TO RAISE PETITIONER CLAIMS. (SEE WRIT 515482B EXHIBIT 'B') LETTER FROM TRIAL TO APPELLATE ATTORNEY.

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

N/A

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack? Yes ☐ No ☑

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing   MIKE DEVOY

401 BRADFORD ST. RWC. CA. 94063

(b) At arraignment and plea   MIKE DEVOY

401 BRADFORD ST. RWC, CA. 94063

(c) At trial    MIKE DEVOY

401 BRADFORD ST. RWC, CA. 94063

(d) At sentencing    MIKE DEVOY

401 BRADFORD ST. RWC, CA 94063

(e) On appeal    ROBERT DERHAM

1010 B ST. #212 SAN RAFAEL CA. 94960

(f) In any post-conviction proceeding    —

(g) On appeal from any adverse ruling in a post-conviction proceeding    —

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☑ No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☑
(a) If so, give name and location of court which imposed sentence to be served in the future:    —

(b) Give date and length of the above sentence:    —

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed

2/25/08
(date)

_____
Signature of Petitioner

(7)

S154820

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re RONALD DEAN JACKSON on Habeas Corpus

---

The petition for writ of habeas corpus is denied.  (See *In re Clark* (1993) 5 Cal.4th 750.)

Werdegar, J., was absent and did not participate.

SUPREME COURT
**FILED**

JAN - 3 2008

Frederick K. Ohlrich Clerk

_____

Deputy

_____
GEORGE
Chief Justice

## DECLARATION AND PROOF OF SERVICE BY MAIL

I, _RONALD JACKSON_, declare under the penalty of perjury that I am over the age of 18 years, ( ) and not a party, or (X) am a party to this action, and reside in Solano County, at P.O. Box 4000, (Cell # _103 U_ ) Vacaville, California, 95696-4000.

That on _FEB._ , _25_ , 200_8_, I deposited in the United States Mail at California State Prison – Solano, Vacaville, California a copy of the attached hereof:

_HABEAS CORPUS_

in a sealed envelope with postage fully prepaid, and addressed to: _OFFICE OF THE CLERK_
_US DISTRICT COURT NORTHERN_
_450 GOLDEN GATE AVE._
_SAN FRANCISCO, CA. 94102_

I declare under the penalty of perjury that the foregoing is true and correct. This declaration was executed on this _FEB._ , _25_ , 200_8_, at CSP-Solano, Vacaville, California, 95696-4000.

DECLARANT

MC–275

Name RONALD DEAN JACKSON

Address P.O. BOX 3030 A-2-118 UPPER

HIGH DESERT STATE PRISON

SUSANVILLE, CALIFORNIA 96127

CDC or ID Number J-70867

SUPREME COURT OF
CALIFORNIA
(Court)

**SUPREME COURT**
# FILED

JUL 27 2007

Frederick K. Ohlrich Clerk

Deputy

IN RE RONALD DEAN JACKSON
Petitioner

vs.

T. FELKER (WARDEN)
Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

No. # S154820

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

**RECEIVED**

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

JUL 27 2007

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

CLERK SUPREME COURT

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court [as amended effective January 1, 2007]. Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page 1 of 6

Form Approved for Optional Use
Judicial Council of California
MC-275 [Rev. January 1, 2007]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 8.380
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

**This petition concerns:**

☒ A conviction      ☐ Parole

☐ A sentence      ☐ Credits

☐ Jail or prison conditions      ☐ Prison Discipline

☐ Other *(specify):* _____

1. Your name: RONALD D. JACKSON

2. Where are you incarcerated? HIGH DESERT STATE PRISON, SUSANVILLE, CA 96127

3. Why are you in custody? ☒ Criminal Conviction   ☐ Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon")
ATTEMPTED MURDER, ASSAULT WITH FIREARM ON A PERSON, STALKING WHILE INDER TEMPORARY RESTRAINING ORDER.

b. Penal or other code sections: P.C. 664-187(a), P.C. 12022.53(c) P.C. 646.9(b)

c. Name and location of sentencing or committing court: SAN MATEO SUPERIOR COURT, 400 COUNTY CENTER, REDWOOD CITY, CALIFORNIA 94063

d. Case number: SC057334A

e. Date convicted or committed: FEBRUARY 8, 2005

f. Date sentenced: MARCH 8, 2005

g. Length of sentence: LIFE WITH POSSIBILITY, PLUS 20 YEARS

h. When do you expect to be released? I DON'T

i. Were you represented by counsel in the trial court? ☒ Yes. ☐ No. If yes, state the attorney's name and address:
MR MYKE DEVOY 401 BRADFORD ST REDWOOD CITY, CALIF 94063

4. What was the LAST plea you entered? *(check one)*

☒ Not guilty   ☐ Guilty   ☐ Nolo Contendere   ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

☒ Jury   ☐ Judge without a jury   ☐ Submitted on transcript   ☐ Awaiting trial

# TABLE OF CONTENTS

PAGE

PETITION FOR WRIT OF HABEAS CORPUS AND POINTS AND AUTHORITIES WITH EXHIBITS ..... 52

I

THE TRIAL COURT HAS ACTED IN EXCESS OF ITS JURISDICTION. ..... "6 TO 11"

II

THERE IS "NO EVIDENCE" TO SUSTAIN A CONVICTION. ..... "12 TO 16"

III

PROSECUTOR MISCONDUCT. ..... "17 TO 19"

IIII

INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL. ..... "20 TO 24"

II

EXHIBITS ..... "25 TO 40"

III

POINTS AND AUTHORITIES ..... "41 TO 43"

IIII

CONCLUSION ..... 44

IIIII

PRAYER FOR RELIEF ..... 45

IIIIII

VERIFICATION ..... 46

i

# TABLE OF AUTHORITIES

PAGE

BEAN v. CALDERON
(9TH CIR 1998) 163 F.3d 1073, 1079 — GROUND "4" P. 2

BRADY v. MARYLAND
(1963) 373 U.S. 83 — GROUND "3" P. 1

COLE v. STATE OF ARKANSAS
333 U.S. 196 — GROUND "2" P. 3

CULOMBE v. CONNECTICUT
367 U.S. 568, 621 — GROUND "3" P. 2

DIXON v. SNYDER
(7TH CIR 2001) 266 F.3d 693, 704 — GROUND "4" P. 2

EVITTS v. LUCEY
(1985) 469 U.S. 387, 394 — GROUND "4" P.1, P.4

HARRIS v. REED
(7TH CIR 1990) 894 F.2d 871, 878-79 — GROUND "4" P. 2

IN RE CLARK
(1993) 5 CAL. 4TH 750, 765 — GROUNDS "1", "4" P. 2, P. 3

IN RE CORDERO
(1988) 46 C.3d 161, 181 — GROUND "4" P. 1

IN RE ESTRADA
(1965) 63 CAL. 2d 740, 749 — GROUND "1" P. 2

IN RE HARRIS
(1993) 5 CAL. 4TH 813, 831 — GROUND "1" P. 2

IN RE JONES
(1994) 27 CAL. APP. 4th 1032 — GROUND "4" P. 4

IN RE OLIVER
(1948) 333 U.S. 257, 273 — GROUND "2" P. 3

# TABLE OF AUTHORITIES

PAGE

IN RE SMITH
(1970) 3 CAL 3d 192 ........................ GROUND "4" P.4

IN RE WALTREUS
(1965) 62 CAL 2d 218, 225 ................. GROUND "4" P.4

JACKSON V. VIRGINIA
(1979) 443 U.S. 307, 319 .................. GROUND "2" P.4

JOHNSON V. U.S.
(D.C. CIR 1966) 360 F.2d 844 ............. GROUND "4" P.2

MCCLESKEY V. ZANT
(1991) 499 U.S. 467 ....................... GROUND "1" P.3

MCMANN V. RICHARDSON
(1970) 397 U.S. 759, 771 ................. GROUND "4" P.1

MONROE V. ANGELONE
(4TH CIR 2003) 323 F.3d 286, 314 ........ GROUND "3" P.2

NEVIUS V. MCDANIEL
(9TH CIR 1996) 104 F.3d 1120 ............ GROUND "4" P.3

ONG WAN TUNG V. UNITED STATES
(9TH CIR) 245 F.2d 392, 394 ............. GROUND "2" P.4

PEOPLE V. BARTON
(1978) 21 CAL.3d 513 ..................... GROUND "4" P.2

PEOPLE V. BUFFUM
(1953) 40 CAL.2d 709, 718 ............... GROUND "2" P.1

PEOPLE V. HALL
(1964) 62 CAL.2d 104, 112 ............... GROUND "2" P.2

PEOPLE V. HAYS
(1992) 3 CAL. APP. 4TH 1238 ............. GROUND "3" P.2

# TABLE OF AUTHORITIES

PAGE

1
2
3  PEOPLE J. LEDESMA                              GROUND "4" P. 1
4  (1987) 43 C.3d 171, 216

5  PEOPLE J. LONELT                              GROUND "3" P. 2
6  (1993) 17 CAL. APP. 4TH 1169

7  PEOPLE J. NEAL                                GROUND "1" P. 3
8  (1993) 19 CAL. APP. 4TH 1114, 1120

9  ROGERS J. RICHMOND                            GROUND "3" P. 2
10 365 U.S. 545

11 STRICKLAND J. WASHINGTON                      GROUND "4" P. 1
12 (1984) 466 U.S. 668, 688                          P. 2, P. 4

13
14 SULLIVAN J. LOUISIANA                         GROUND "2" P. 3
   508 U.S. 275, 278
15
16 THOMPSON J. CALDERON                          GROUND "4" P. 2
17 (1995) 523 U.S. 538

18 THOMPSON J. LOUISVILLE                        GROUND "2" P. 1
19 362 U.S. 199                                      P. 3

20 U.S. J. GAUDIN                                GROUND "2" P. 3
21 (1995) 515 U.S. 506

22 UNITED STATES J. GRAY                         GROUND "4" P. 2
23 (3Rd CIR 1989) 878 F.2d 702, 712

24 WIGGINS J. SMITH                              GROUND "4" P. 2
25 (2003) 539 U.S. 50

26 WINSHIP                                       GROUND "2" "3"
27 (1970) 397 U.S. 358                               P. 1, P. 2
28

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

THE TRIAL COURT HAS ACTED IN EXCESS OF ITS
JURISDICTION BY IMPOSING A SENTENCE ON PETITIONER,
WHICH HAS NOW CAUSED PETITIONER TO SUFFER A FUNDAMENTAL
MISCARRIAGE OF JUSTICE, IN THE FORM OF VIOLATING (CONT)

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where).* *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

PETITIONER STATES THAT THIS COURT HAS HELD THAT THE
CONSTITUTIONALITY OF LEGISLATION IS ALWAYS OPEN TO
CHALLENGE ON HABEAS CORPUS, EVEN IF PREVIOUSLY RAISED
ON APPEAL. THE WRIT WILL ALSO LYE TO CORRECT A
MISINTERPRETATION OF A STATUTE, RESULTING IN A
CONFINEMENT IN EXCESS OF THE TIME ALLOWED BY LAW. THE
FOURTEENTH AMENDMENT PROHIBITS THE DEPRIVATION OF LIBERTY
"WITHOUT DUE PROCESS OF LAW" THAT GUARANTEE IS THE SOURCE
OF THE FEDERAL RIGHT TO CHALLENGE STATE CRIMINAL
CONVICTIONS THAT RESULT FROM FUNDAMENTALLY UNFAIR TRIAL
PROCEEDINGS. THE COURT HAS CHARACTERIZED AS "STRUCTURAL"
DEFECTS, THOSE THAT MAKE A TRIAL FUNDAMENTALLY UNFAIR,
EVEN IF THEY DO NOT AFFECT THE OUTCOME OF THE PROCEEDING

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

"SEE POINTS AND AUTHORITIES"

1  GROUND "4" CONT): PETITIONER'S SIXTH AND
2  FOURTEENTH AMENDMENTS.
3
4
5
6  A). SUPPORTING FACTS CONT): ARE AT THE OUTER END OF THE
7  SPECTRUM. THERE IS A FUNDAMENTAL PRINCYPLE WHICH REQUIRES
8  THAT JUSTICE MUST BE ADMINISTERED TO ALL PERSONS
9  EQUALLY, AND THE CONCEPT OF THE EQUAL PROTECTION OF THE
10 COMPELS RECOGNITION OF THE PROPOSITION, THAT PERSONS
11 SIMILARY SITUATED WITH RESPECT TO THE LEGITIMATE
12 PURPOSE OF THE LAW RECEIVE LIKE TREATMENT. PETITIONER NOW
13 PRESENT'S THIS PETITION ONLY FOR THE PURPOSE OF AVOIDING A
14 DEMONSTRATED MISCARRIAGE OF JUSTICE, WHICH NO CIVILIZED
15 SOCIETY WOULD TOLERATE. THIS PETITION WILL REVEAL THAT
16 PETITIONER HAS BEEN SENTENCE UNDER A GENERIC STATUTE,
17 WHICH IS NOT AUTHORIZED BY LAW. THIS SENTENCE EXCEEDS
18 THE JURISDICTION OF THE TRIAL COURT. PETITIONER WILL
19 ALSO PRESENT FACTS IN THIS PETITION, WHICH IF THIS COURT
20 WOULD ENTERTAIN ON ITS MERITS, WOULD ESTABLISH, THAT A
21 FUNDAMENTAL MISCARRIAGE OF JUSTICE HAS OCCURRED AS A
22 RESULT OF PETITIONER'S SENTENCE. THE DUE PROCESS
23 COMMANDS THAT NO MAN SHALL LOSE HIS LIBERTY UNLESS
24 THE GOVERNMENT HAS BORNE THE BURDEN OF CONVINCING
25 THE FACT FINDER OF HIS GUILT: TO SUCH END, THE REASONABLE
26 -DOUBT STANDARD IS INDISPENSABLE. FOR IT IMPRESSES ON
27 THE TRIER OF FACT THE NECESSITY OF REACHING A SUBJECTIVE
28 STATE OF CERTITUDE ON THE FACTS IN ISSUE, AND THE USE
   OF SUCH STANDARD IS INDISPENSABLE TO COMMAND THE

P.C. 1258            -1-.            P.C. 1404

A) SUPPORTING FACTS CONT): RESPECT AND CONFIDENCE OF
THE COMMUNITY IN APPLICATIONS OF THE CRIMINAL LAW. IT BEING
CRITICAL THAT THE MORAL FORCE OF THE CRIMINAL LAW NOT BE
DILUTED BY A STANDARD OF PROOF WHICH LEAVES PEOPLE
IN DOUBT WHETHER INNOCENT MEN ARE BEING CONDEMNED.
SEE IN RE WINSHIP, 397 U.S. 358 (1970), WHEN THE
GROUNDS FOR APPLICATION ARE EXCESSIVE SENTENCING OR
THERE IS A FUNDAMENTAL MISCARRIAGE OF JUSTICE, NO
JUSTIFICATION FOR DELAY IS NECESSARY "IN RE CLARK (1993)
5 CAL. 4TH 750, 774-775", IN RE HARRIS (1993) 5 CAL. 4TH 813.831",
IN RE ESTRADA (1965) 63 CAL. 2d 740, 749". PETITIONER IS NOW
SERVING A SENTENCE OF LIFE WITH POSSIBILITY, PLUS "20"
YEARS. THIS SENTENCE IS EXCESSIVE IN LIGHT OF THE OFFENSE
. THERE HAS BEEN A FUNDAMENTAL MISCARRIAGE OF JUSTICE IN
THIS MATTER IN LIGHT OF CURRENT SENTENCING VALUES IN THIS
COUNTY IN SIMILAR CASES IN LIGHT OF LONG STANDING
DISTRICT ATTORNEY SENTENCING POLICY, AS WELL AS THE
EIGHT AMENDMENT OF THE UNITED STATES CONSTITUTION. THE
CALIFORNIA SUPREME COURT HELD THAT ANY SENTENCE MAY BE
ATTACKED ON PROPORTIONALITY GROUNDS, THE PROVISION
OF THE BILL OF RIGHTS, WHICH IS FUNDAMENTAL AND
ESSENTIAL TO A FAIR TRIAL "IS MADE OBLIGATORY UPON
THE STATE BY THE FOURTEENTH AMENDMENT. AND THIS COURT
WILL NOT BE ABLE TO IGNORE THAT PETITIONER HAS
BEEN DENIED "DUE PROCESS" OF THE LAW, AS WELL AS
"EQUAL PROTECTION" OF THE LAW, BEING THAT PETITIONER
IS NOW SERVING A UNAUTHORIZE SENTENCE, WHICH IS NOT
SUBJECTED TO A HARMLESS ERROR, NOR DOES IT RIPEN

P.C. 1258                    - 2 -                    P.C. 1404

1  A). SUPPORTING FACTS CONT): INTO A SENTENCE AUTHORIZE BY
2  THE LAW WITH THE PASSAGE OF TIME (PEOPLE J. NEAL (1993) 19
3  CAL. APP. 4TH 1114, 1120). PETITIONER HAS PREVIOUS FILED THIS
4  PETITION WITH THE SAN MATEO COUNTY SUPERIOR COURT ON 04/
5  26/2007. WHICH WAS DENIED ON 06/11/2007. THE COURT HELD
6  THAT PETITIONER'S PETITION WAS BEING DENIED BECAUSE
7  PETITIONER COULD HAVE RAISED THESE CLAIMS IN HIS
8  APPEAL AND FAILED TO DO SO (SEE EXHIBIT "A") A COPY OF
9  THE SAN MATEO COUNTY SUPERIOR COURTS RULING. PETITIONER
10 HAD INFORMED HIS APPELLATE ATTORNEY. ROBERT DERHAM.
11 PRIOR TO FILING PETITIONER'S APPEAL. THAT PETITIONER
12 WANTED HIM TO RAISE THESE CLAIMS. WHICH PETITIONER
13 NOW PRESENTS IN THIS PETITION. BUT MR DERHAM. REFUSED
14 TO RAISE THEM (SEE EXHIBIT "B") A COPY OF A LETTER
15 FROM PETITIONER'S APPELLATE ATTORNEY. MR ROBERT DERHAM.
16 THE REASON FOR PETITIONER NOT PRESENTING THESE CLAIMS ON
17 DIRECT APPEAL IS OF "NO" FAULT OF PETITIONER'S. MR DERHAM.
18 PETITIONER'S APPELLATE ATTORNEY FAILURE TO RAISE THESE
19 IN THIS PETITION HAS PREJUDICE PETITIONER. IN THE FORM
20 OF PETITIONER SUFFERING A RESTRAINT OF PHYSICAL
21 LIBERTY. A FUNDAMENTAL MISCARRIAGE OF JUSTICE HAS
22 RESULTED FROM THE TRIAL COURT'S REFUSAL TO HEAR THE
23 CLAIMS THAT PETITIONER NOW PRESENTS. (MC CLESKEY J.
24 ZANT (1991) 499 U.S. 467. 113 L. ED. 2d 517, 111 S. CT. 1454).
25 THIS PETITION WILL REVEAL ERRORS THAT WERE COMMENTED
26 BY PETITIONER'S TRIAL ATTORNEY. MR DE JOY. THE STATE
27 PROSECTOR MR MORRIS MAYA. AND THE TRIAL JUDGE
28 HONORABLE BARBARA J. MALLACH. OF DEPARTMENT "22"

P.C. 1258                    -3-                    P.C. 1404

1  A). SUPPORTING FACTS CONT): AND HAD IT NOT BEEN FOR THESES
2  ERRORS. NO REASONABLE FACTFINDER WOULD HAVE FOUND
3  PETITIONER GUILTY." (NEVILS J. MC DANIEL (9TH CYR 1996) 104
4  F.3d 1120" PETITIONER NOW PRAYS THAT THIS COURT WOULD
5  ENTERTAIN PETITIONERS PETITION .BECAUSE IF IT DOES .THE
6  FACTS PRESENTED IN PETITIONERS PETITION WILL ESTABLISH
7  THAT A FUNDAMENTAL MISCARRIAGE OF JUSTICE HAS
8  OCCURRED AS A RESULT OF PETITIONERS SENTENCE.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28  P.C. 1258            -4-            P.C.1404

**7. Ground 2 or Ground** _____ *(if applicable)*:

PETITIONER CONTENDS THAT HIS CONVICTION MUST NOW BE
VACATED, BECAUSE THERE WAS NO EVIDENCE TO SUSTAIN
A CONVICTION OF ATTEMPTED MURDER OR THE USE OF THE
FIREARM. PETITIONER BASED THIS ON THE CRYTERYON OF (cont)

a. Supporting facts:

PETITIONER APPEARED BEFORE THE HONORABLE JUDGE BARBARA
J. MALLACH, IN DEPARTMENT "22" OF SAN MATEO SUPERIOR COURT
OF CALYFORNIA, IN THE COUNTY OF SAN MATEO. ON FEBRUARY 8, 2005
, PETITIONER WAS FOUND GUILTY BY A JURY TRIAL OF ATTEMPTED
MURDER, ASSAULT WITH A FIREARM ON A PERSON AND STALKING
WHILE UNDER TEMPORARY RESTRAINING ORDER. PETITYONER
WAS SENTENCE ON MARCH 8, 2005, TO LYFE WITH THE POSSIBILITY,
PLUS "20" ADDYTIONAL YEARS. THE EVIDENCE ADDIED DURING
PETITIONER'S TRIAL PROCEEDYNG'S WAS "NO EVIDENCE" AT ALL,
THE STATE OFFERED THE TESTIMONY OF THE ALLEGED VICTIM
MS JANE WEBSTER AND ERYCA SMYTH. PETITIONER'S NYECE.
THERE WAS NEVER ANY EVIDENCE PRESENTED DURING PETITIONER'S
THAT INDYCATED THAT PETITIONER ATTEMPTED TO MURDER MS WEBSTER
, OTHER THAN THE TESTIMONY OF MS SMYTH, AND HER ALLEGEDLY
ACCOUNT OF THIS EVENT IS CONTRARY TO THAT OF THE ALLEGED
VICTIM MS WEBSTER. MS SMYTH, HAS CLAIMED THAT PETITIONER
HAD CONFESS TO TRYING TO MURDER MS WEBSTER TO HER, BUT
PETITYONER WILL PRESENT IN THIS PETITION THAT NOT ONLY IS
MS SMYTH, ACCOUNT UNTRUE BUT ALSO THAT THERE WAS NEVER ANY
ATTEMPT ON MS WEBSTER'S LYFE. THE STATE FAILED TO
ESTABLYSH THE EXISTENCE OF THE CORPUS DELYCTY OF THE (cont)

b. Supporting cases, rules, or other authority:

"SEE PAINTS AND AUTHORITIES"

**PETITION FOR WRIT OF HABEAS CORPUS**

1  GROUND "2" CONT: THOMPSON V. LOUISVILLE, 362 U.S. 199, 4L.
2  Ed.2d 654, 80 S. CT. 624.

3
4  A SUPPORTING FACTS "2" CONT: CRIME, WHICH WAS REQUIRED OF
5  THE STATE. THE ONLY THING THAT THE STATE PROVED DURING THE
6  COURSE OF PETITIONERS TRIAL WAS, THAT MS WEBSTER AND
7  PETITIONER WERE ONCE IN A RELATIONSHIP AND THAT DURING
8  THE COURSE OF THIS RELATIONSHIP, A RESTRAINING ORDER
9  WAS PLACED ON PETITIONER. MS WEBSTER, TESTIFIED DURING
10  DIRECT EXAMINATION ON PAGE "323, LINES 10 TO 15" THAT
11  AT NO TIME DURING HER OBSERVATION OF PETITIONER, DID
12  SHE SEE A GUN IN PETITIONER'S HAND NOR DID MS WEBSTER,
13  SEE PETITIONER FIRE A GUN. THE MOST COMPELLING ISSUE IN THIS
14  APPEAL, WHETHER PETITIONERS ACTS DIRECTLY PRECEDING HIS
15  ARREST REPRESENTED ONLY PREPARATION FOR THE INTENDED
16  OFFENSE OR AN ACTUAL ATTEMPT TO COMMIT IT. THE CRIME OF
17  ATTEMPT REQUIRES TWO ELEMENTS WHICH THE STATE FAILED
18  TO PROVE IN PETITIONERS CASE. THE ELEMENTS ARE "A
19  SPECIFIC INTENT TO COMMIT THE CRIME, AND A DIRECT BUT
20  INEFFECTUAL ACT DONE TOWARD ITS COMMISSION". MERE
21  ACTS IN PREPARATION FOR A CRIME HAS EVER CONSTITUTED AN
22  ATTEMPT TO COMMIT A CRIME "(PEOPLE V. BUFFUM (1953) 40 CAL.2d
23  709, 718 (256 P.2d 317). MS WEBSTER, OWN TESTIMONY CLEARLY
24  SHOWS THAT SHE WAS NOT SURE WHAT PETITIONER INTENTIONS
25  WERE. SHE ONLY STATES THAT PETITIONER CALLS HER BY
26  NAME. PETITIONER NEVER MAKES ANY THREATENING REMARKS
27  TO MS WEBSTER. NOR DOES PETITIONER RUN AFTER MS
28  WEBSTER, WHEN SHE TAKES OFF RUNNING, BASED ON
   MS WEBSTERS ACCOUNT OF THIS EVENT. SHE ISN'T EVEN
   SURE THAT A CRIME WAS ABOUT TO HAPPEN.

P.C. 1258                      -1-                    P.C. 1404

1  A). SUPPORTING FACTS "2" CONT): BASED ON MS. WEBSTER'S TESTIMONY,
2  SHE STATES THAT SHE SEES THE DOOR OPEN AND THE PETITIONER
3  LEFT THROUGH THE DOOR. MS. WEBSTER'S SEES THIS BEFORE
4  SHE HEARS WHAT SOUNDS LIKE A GUN OR FIRE CRACKERS. MS.
5  WEBSTER NEVER STATES THAT SHE SEES PETITIONER REENTER
6  THE STAIRWELL (SEE EXHIBIT "A" PAGES 321 AND 322) COPY OF
7  TRIAL TRANSCRIPT. THE STATE HAS ONLY OFFERED TESTIMONY TO
8  PROVE PETITIONER'S GUILT. THERE WAS NEVER ANY PHYSICAL
9  EVIDENCE OFFERED TO CONNECT PETITIONER TO THIS ALLEGE
10 CRIME. AND PETITIONER'S PRESENCE'S IN THE STAIRWELL,
11 WITHOUT MORE CANNOT ESTABLISH PROOF BEYOND A REASONABLE
12 OF PETITIONER'S GUILT (PEOPLE V. HALL (1964) 62 CAL. 2d 104, 112.41
13 CAL. R.P.T.R. 284, 396 P. 2d 700). REASONABLE DOUBT IS NOT A
14 MERE POSSIBLE DOUBT. BECAUSE EVERYTHING RELATING TO
15 HUMAN AFFAIRS AND DEPENDING ON MORAL EVIDENCE, IS OPEN
16 TO SOME POSSIBLE OR IMAGINARY DOUBT. THE STANDARD OF
17 PROOF BEYOND A REASONABLE DOUBT PLAYS A VITAL ROLE IN
18 THE AMERICAN SCHEME OF CRIMINAL PROCEDURE. BECAUSE
19 IT OPERATES TO GIVE "CONCRETE SUBSTANCE" TO THE
20 PRESUMPTION OF INNOCENCE. TO ENSURE AGAINST UNJUST
21 CONVICTIONS, AND TO REDUCE THE RISK OF FACTUAL ERROR
22 IN A CRIMINAL PROCEEDING (IN RE WINSHIP, 397 U.S.,
23 AT 363.) AS IN PETITIONER'S CASE. THE STATE FAILED TO
24 PROVE THAT PETITIONER USED A GUN OR IF ONE WAS
25 EVER USED DURING THE COMMISSION OF THIS ALLEGED
26 CRIME. DEPUTY WOOLUM. TESTIFIED THAT DURING HIS
27 INVESTIGATION OF THE STAIRWELL WERE THE ALLEGE
28 SHOOTING TOOK PLACE. THAT HE DISCOVER'S THAT THERE

P.C. 1258                    - 2 -.                    P.C. 1404

A). SUPPORTING FACTS "2" CONT): ARE NOT ANY BULLET HOLES IN THE STAIRWELL NOR WERE ANY SHELL CASINGS FOUND IN THE STAIRWELL (SEE EXHIBIT "B" PAGES 191. AND 192) OF TRIAL TRANSCRIPT. DEPUTY WOOLUM. FINDINGS ARE CONSISTENT WITH THE TESTIMONY OF MS WEBSTERS. WHEN ASKED DURING DIRECT EXAMINATION, IF SHE EVER SAW PETITIONER WITH A GUN OR FIRE A GUN(SEE EXHIBIT "C" PAGE 323, LINES 10 TO 15). COPY OF TRIAL TRANSCRIPT. THERE WAS ONLY PURE SPECULATION AS TO WHETHER PETITIONER POSSESSED A GUN. THE STATE HAS FAILED TO ADDUCE EVIDENCE SPECIFICALLY LINKING PETITIONER TO A GUN OR USEING A GUN. THERE IS NO EVIDENCE WHATEVER IN THE RECORD TO SUPPORT THESE CONVICTIONS. JUST AS "CONVICTION UPON A CHARGE NOT MADE WOULD BE SHEER DENIAL OF DUE PROCESS (COLE V. STATE OF ARKANSAS, 333 U.S. 196, 201, 68 S. CT. 514, 517, 92 L.Ed .644); IN RE OLIVER, 333 U.S. 257, 273, 68 S. CT. 499. 507. 92 L.Ed. 682 (1948). SO IS IT A VIOLATION OF DUE PROCESS TO CONVICT AND PUNISH A MAN WITHOUT EVIDENCE OF HIS GUILT. THE DUE PROCESS ALSO PROTECTS PETITIONER AGAINST CONVICTIONS EXCEPT UPON PROOF BEYOND A REASONABLE DOUBT OF EVERY FACT NECESSARY TO CONSTITUTE THE CRIME WITH WHICH PETITIONER HAS BEEN CHARGED(UNITED STATES V. GAUDIN, 515 U.S. 506, 510, 115 S. CT. 2310, 132 L.Ed. 2 d 444 (1995); SULLIVAN V. LOUISIANA, 508 U.S. 275, 278, 113 S. CT. 2078). FAILURE TO ENTERTAIN PETITIONER'S CLAIM OF "NO EVIDENCE" BASED ON THE CRITERION OF "THOMPSON V. LOUISVILLE" WOULD

P.C. 1258                    - 3 -                    P.C. 1404

1. A). SUPPORTING FACTS "2" CONT): RESULT IN A COMPLETE
2. MISCARRIAGE OF JUSTICE. KEEP IN MIND THAT CONSTITUTIONAL
3. VIOLATIONS BY THEIR VERY NATURE CAST SO MUCH DOUBT
4. ON THE FAIRNESS OF THE TRIAL PROCESS THAT AS A MATTER
5. OF LAW THEY CAN NEVER BE CONSIDERED HARMLESS.
6. PETITIONER PRESENTS (EXHIBITS "D", "E" AND "F") COPIES
7. OF THE SAN MATEO POLICE DEPARTMENT INVESTIGATIVE
8. REPORT. TO ALSO SHOW THAT PETITIONER IS NOT ONLY
9. INNOCENT OF THIS ALLEGE CRIME BUT ALSO TO PROVE
10. THAT THERE WAS NEVER A CRIME IN THE FIRST. NOR IS
11. THERE ANY EVIDENCE OF A CRIME. PETITIONER'S GUILT
12. CAN NOT BE INFERRED FROM BY THE MERE ASSOCIATION
13. WITH MS WEBSTERS "ONG WAN JUNG J. UNITED STATES
14. (9TH CIR) 245 F.2 d 392, 394" ANY EVIDENCE THAT IS
15. RELEVANT. THAT HAS ANY TENDENCY TO MAKE THE EXISTENCE
16. OF AN ELEMENT OF A CRIME SLIGHTLY MORE PROBABLE THAN
17. IT WOULD BE WITHOUT THE EVIDENCE (FEDERAL RULE OF
18. EVIDENCE 401). COULD BE DEEMED A "MERE MODICUM"
19. BUT IT COULD NOT SERIOUSLY BE ARGUED THAT SUCH A
20. "MODICUM" OF EVIDENCE COULD BY ITSELF SUPPORT A
21. CONVICTION BEYOND A REASONABLE DOUBT. TO JUSTIFY
22. A CONVICTION ON CIRCUMSTANTIONAL EVIDENCE. THE
23. FACTS AND CIRCUMSTANCES MUST NOT ONLY BE
24. ENTIRELY CONSISTENT WITH THE THEORY OF GUILT BUT
25. MUST BE INCONSISTENT WITH ANY OTHER REASONABLE
26. CONCLUSION." JACKSON J. VIRGINIA, 443 U.S. 307, 319,
27. 995, CT 2781, 61 L. Ed. 2 d 560 (1979)."
28. P.C. 1258                    — 4 —                    P.C. 1404

7. Ground 2 or Ground __3__ (if applicable):

THE STATE'S PROSECUTOR CONDUCT HAS RENDERED PETITIONER'S TRIAL FUNDAMENTALLY UNFAIR, BY THE USE OF DECEPTIVE AND REPREHENSIBLE METHODS, BY MISLEADING THE JURY, AS WELL AS SUPPRESSING (CONT)

a. Supporting facts:

PETITIONER APPEARED BEFORE THE HONORABLE JUDGE BARBARA J. MALLACH, IN DEPARTMENT "22" IN SAN MATEO SUPERIOR COURT IN THE COUNTY OF SAN MATEO FOR TRIAL ON FEBRUARY 3, 2005. THE STATE PROSECUTOR MR. MORRIS MAYA, CALLED MS ERICA SMYTH TO TESTIFY ON BEHALF OF THE STATE. MS SMYTH, IS THE PETITIONER'S NIECE. MS SMYTH, TESTIFYED THAT ON JUNE 29, 2004, A DAY AFTER THIS ALLEGED CRIME TOOK PLACE, THAT PETITIONER HAD TOLD HER THAT HE HAD SHOT AT MS WEBSTER. MS SMYTH'S TESTIMONY WAS THE ONLY EVIDENCE OFFERED BY THE STATE WHICH DIRECTLY LINKED PETITIONER TO THIS ALLEGE CRIME, AND THE PROSECUTION VIOLATED ITS OBLIGATIONS UNDER "BRADY V. MARYLAND. 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. CT. 1194 (1963), BY FAILING TO DISCLOSE MATERIAL THAT WOULD HAVE UNDERMINED MS SMYTH'S, CREDIBILITY. THE STATE, WITHHELD EVIDENCE, THAT MS SMYTH, HAD A CRIMINAL RECORD. THE PROSECUTION'S FAILURE TO DISCLOSE EVIDENCE FAVORABLE TO PETITIONER "VIOLATES" PETITIONER'S DUE PROCESS, AND IRRESPECTIVE OF THE GOOD FAITH OR BAD FAITH OF THE PROSECUTION. THE STATE HAS DEPRIVED PETITIONER OF HIS "DUE PROCESS". THE

b. Supporting cases, rules, or other authority:

"SEE POINTS AND AUTHORITIES"

GROUND "3" CONT): EXCULPATORY EVIDENCE, VIOLATING
PETITIONER'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS.


A). SUPPORTING FACTS "3" CONT): PROSECTION'S DUTY TO
DISCLOSE FAVORABLE EVIDENCE TO PETITIONER ENCOMPASSES
BOTH IMPEACHMENT MATERIAL AND EXCULPATORY EVIDENCE
, AND MS SMYTH. CRIMINAL ARREST REPORT WAS VERY
FAVORABLE TO PETITIONER, ESPECIALLY IN LIGHT OF THE
WEAKNESS OF THE STATE'S CASE. THE STATE RELIED
HEAVILY ON MS SMYTH. TESTIMONY TO MAKE IT'S CASE.
BEING THAT THERE WAS NO OTHER EVIDENCE LINKING
PETITIONER TO THIS ALLEGED CRIME. CONSIDERING THE
CONTEXT OF THE ENTIRE TRIAL. THE FAILURE OF THE
PROSECTION TO PROVIDE PETITIONER WITH MS SMYTH.
CRIMINAL ARREST REPORT. DEPRIVED PETITIONER OF A
FAIR TRIAL. IT STILL REMAINS "A FUNDAMENTAL VALUE
DETERMINATION OF OUR SOCIETY, THAT IT IS FAR WORSE
TO CONVICT AN INNOCENT MAN THAN TO LET A GUILTY MAN GO
FREE "(IN RE WINSHIP, 397 U.S. 358, 372 (1970). THE EVIDENCE
IN PETITIONER'S CASE WAS FAR FROM CONCLUSIVE (NO
GUN WAS EVERY DISCOVERED. NO SHELL CASINGS WERE
LOCATED AT THE SCENE. NOR WAS THERE ANY BULLET
HOLES FOUND. NOT TO MENTION. MS WEBSTER'S. TESTIMONY
AND STATEMENTS TO THE POLICE. WHICH CLEARLY STATES.
THAT SHE NEVER SEES PETITIONER WITH A GUN AND ISN'T
EVEN SURE. WHERE THE GUNSHOTS CAME FROM) AND THE
POSSIBILITY THAT THE EVIDENCE DENIED TO PETITIONER

P.C. 1258                    -1-                    P.C. 1404

1  A). SUPPORTING FACTS "3" CONT): WOULD HAVE REFLECTED ON
2  MS SMYTH'S CREDIBILITY "PEOPLE U. HAYS (1992) 3 CAL APP.
3  4TH 1238; PEOPLE U. LOMELT (1993) 17 CAL. APP. 4TH 1169;
4  MONRON U. ANGELONE, 323 F.3d 286, 314 (4TH CYR 2003).
5  PETITIONER HAS BEEN DENIED DUE PROCESS OF THE LAW
6  WHICH ULTIATED THE VERDICT AND PETITIONER'S
7  SENTENCE "(ROGERS U. RICHMOND, 365 U.S. 534, 545) AND
8  THIS VERDICT IS NOT SAVE BECAUSE OTHER COMPETENT
9  EVIDENCE WOULD SUPPORT IT "CULOMBE U. CONNECTICUT,
10 367 U.S. 568, 621". PETITIONER NOW PRAYS THAT THIS
11 COURT WOULD ENTERTAIN PETITIONER'S PETITION, BECAUSE
12 IF IT DOES, THE FACTS PRESENTED IN PETITIONER'S
13 PETITION WILL ESTABLISH THAT A FUNDAMENTAL
14 MISCARRIAGE OF JUSTICE HAS OCCURRED AS A RESULT
15 OF THE STATE SUPPRESSING MS SMITH, CRIMINAL
16 RAP SHEET. THE SUPPRESSION OF MS SMITH, CRIMINAL
17 RAP SHEET, DEPRIVED PETITIONER OF A AFFIRMATIVE
18 DEFENSE, AND THIS COURT CAN NOT IGNORE THIS
19 FACT.
20
21
22
23
24
25
26
27
28 P.C.1258                    -2-                    P.C.1404

7. Ground ? or Ground ____4____ (if applicable):

PETITIONER HAS SUFFERED INEFFECTIVE ASSYSTANCE OF
COUNSEL BY TRIAL AND APPELLATE COUNSEL. PETITIONER'S
TRIAL COUNSELOR'S FAILURE TO INVESTIGATE, AND RESEARCH
THE RECORD FOR A LEGAL DEFENSE ON "INNOCENCE" PETITIONER'S
(CONT)

a. Supporting facts:

PETITIONER APPEARED BEFORE THE HONORABLE JUDGE BARBARA
J. MALLACH, IN DEPARTMENT "22" OF SAN MATEO SUPERIOR COURT.
PETITIONER'S TRIAL COUNSEL WAS MR MYKE DEJOY, AND PRIOR
TO TRIAL, WHICH COMMENCE ON FEBRUARY 3, 2005. PETITIONER
HAD SPOKEN WITH MR DEJOY, ABOUT A "INNOCENCE" DEFENSE AND
THE NEED TO IMPEACH ERICA SMITH. MR DEJOY, ASSURED
PETITIONER THAT HE WOULD RAISE THE INNOCENCE DEFENSE
AS WELL AS IMPEACH MS SMITH, BUT DURING THE COURSE
OF PETITIONER'S TRIAL, MR DEJOY, REFUSED TO RAISE THE
"INNOCENCE DEFENSE" NOR DID MR DEJOY, IMPEACH MS
SMITH. PETITIONER HAD INFORMED MR DEJOY, THAT MS SMITH
HAD BEEN INCONSISTENT IN HER STATEMENTS REGARDING
PETITIONER ALLEGEDLY CONFESSING SHOOTING AT MS WEBSTER,
PETITIONER ALSO HAD INFORMED MR DEJOY, THAT MS SMITH, HAD A
CRIMINAL RECORD. PETITIONER'S TRIAL COUNSEL, MR DEJOY,
PERFORMANCE HAS FELL "BELOW AN OBJECTIVE STANDARD OF
REASONABLENESS UNDER PREVAILING PROFESSIONAL NORMS"
(PEOPLE V. LEDESMA (1987) 43 C.3d 171, 216, 233 CAL.RPTR. 404, 432,
QUOTING STRICKLAND V. WASHINGTON (1984) 466 U.S. 668, 688. 80 L.Ed
2d 674, 693, 104 S.CT. 2052, 2065). AND THERE IS A REASONABLE
PROBABILITY THAT BUT FOR MR DEJOY, UNPROFESSIONAL ERRORS (CONT)

b. Supporting cases, rules, or other authority:

"SEE POINTS AND AUTHORITIES"

1 GROUND "4" CONT): APPELLATE COUNSEL WAS INEFFECTIVE BY
2 FAILING TO RAISE ALL ARGUABLE ISSUES ON APPEAL WHICH
3 DEPRIVED PETITIONER OF A MEANINGFUL AND ADEQUATE
4 REVIEW ON APPEAL.

5
6 A) SUPPORTING FACTS "4" CONT): THE RESULT OF THE PROCEEDING
7 WOULD HAVE BEEN DIFFERENT" (PEOPLE V. LEDESMA (1987) 43 C.3d
8 171, 216, 233 CAL. RPTR. 404, 432, QUOTING STRICKLAND V.
9 WASHINGTON (1984) 466 U.S. 668, 688, 80 L.ED. 2d 674, 693, 1045.
10 CT. 2052, 2067). MR. DEJOY. WAS REQUIRED TO EXPLORE
11 POTENTIALLY MERITOROUS DEFENSES. EVEN IF THERE WERE
12 LEGITIMATE TACTICAL REASONS FOR INTRODUCING NO
13 EVIDENCE "(IN RE CORDERO (1988) 46 C.3d 161, 181, 249 CAL. RPTR.
14 342. PETITIONER HAS NOW BEEN CONVICTED IN VIOLATION OF THE
15 SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, WHICH VESTS
16 PERSONS CHARGED WITH CRIMES WITH THE RIGHT TO THE ASSISTANCE
17 OF COUNSEL". THE RIGHT TO "ASSISTANCE OF COUNSEL" ENCOMPASSES
18 THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL (MCMANN V.
19 RICHARDSON, 397 U.S. 759, 771 N, 14, 90 S.CT. 1441, 25 L.ED. 2d 763 (1970)
20 AND APPLIES TO THE STATES AS A COMPONENT OF THE RIGHT TO
21 "DUE PROCESS OF LAW" SECURED BY THE FOURTEENTH AMENDMENT TO
22 THE UNITED STATES CONSTITUTION (EVITTS V. LUCEY, 469 U.S. 387,
23 394, 105 S.CT. 830, 83 L.ED. 2d 821 (1985). MR. DEJOY. DECISION
24 NOT TO PREPARE A INNOCENCE DEFENSE FOR PETITIONER SOLELY
25 BECAUSE HE FELT THAT THE JURY WAS GOING TO CONVICT
26 PETITIONER AND MR DEJOY. FELT BEING CONVICTED OF ASSAULT
27 WAS BETTER THAN BEING CONVICTED FOR ATTEMPTED MURDER.
28 MR. DEJOY. OPTED NOT TO PREPARE THE INNOCENCE DEFENSE

P.C 1258                    - 1 -                    P.C. 1404

1 A). SUPPORTING FACTS "4" cont): BASED ENTIRELY ON THIS
2 RATIONALE MYLITATES STRONGLY IN FAVOR OF THE CONCLUSION.
3 THAT BEING, PETITIONER WAS SENTENCE TO LIFE, PLUS "20" YEARS
4 WAS CONSTITUTIONALLY DEFICIENT." HARRIS V. REED, 894 F.2d
5 871, 878-79 (7TH CYR 1990). MR DEVOY'S, DECISION CANNOT BE
6 CHARACTERIZED AS" STRATEGIC" (BEAN V. CALDERON, 163 F.
7 3d 1073, 1079 (9TH CYR 1998). MR DEVOY'S, BEHAVIOR WAS ALSO
8 NOT COLORABLE BASED ON TACTICAL CONSIDERATIONS BUT
9 MERELY UPON A LACK OF DILIGENCE."(UNITED STATES V.
10 GRAY, 878 F.2d 702, 712 (3Rd CYR 1989.). MR DEVOY'S, FAILURE
11 TO ALSO INPEACH MS SMYTH, THE STATE'S WITNESS, WHICH
12 STATEMENTS WERE THE ONLY DIRECT EVIDENCE CONNECTING
13 PETITIONER TO THE ALLEGED CRIME PREJUDICED PETITIONER
14 , BY DEPRIVING PETITIONER OF A EFFECTIVE ASSISTANCE
15 OF COUNSEL, WHICH PETITIONER IS GUARANTEED UNDER
16 THE UNITED STATES CONSTITUTION. THE STATE ALSO
17 RELIED STRONGLY ON MS SMYTH. TESTIMONY TO OBTAIN THE
18 CONVICTION." (THOMPSON V. CALDERON, 523 U.S. 538 (1995);
19 DIXON V. SNYDER, 266 F.3d 693, 704 (7TH CYR 2001); WYGGING
20 V. SMYTH, 539 U.S. 50, 123 S. CT. 250 (2003). THERE WERE
21 MANY ISSUES THAT WERE POTENTIALLY VULNERABLE TO
22 LEGITIMATE AND PROVOCATIVE APPELLATE CONTENTIONS,
23 THAT SHOULD HAVE BEEN MANIFESTED TO AN ALERT AND
24 RESPONSIVE ATTORNEY. MR ROBERT DERHAM, PETITIONER'S
25 APPELLATE COUNSEL FAILED TO RAISE THE INNOCENCE
26 CLAIM AS WELL AS THE INEFFECTIVE ASSISTANCE COUNSEL
27 CLAIM DEPRIVED PETITIONER OF HIS CONSTITUTIONAL RIGHT
28 TO A COMPETENT ADVOCATE." (PEOPLE V. BARTON (1978) 21 CAL.

P.C. 1258                    -2-                    P.C. 1404

1  A). SUPPORTING FACTS "4" CONT): 3d 513, 146 CAL. RPTR. 727).

2  CLEARLY THE ISSUES MENTIONED WERE GROUNDS OF POSSIBLE

3  DEFICIENCY IN THE TRIAL PROCEEDINGS THAT SHOULD HAVE

4  BEEN ADDRESSED ON APPEAL. PETITIONER ASKED MR DERHAM,

5  APPELLATE COUNSEL TO RAISE SEVERAL ISSUES (SEE EXHIBIT

6  "B" ON GROUNDS "1"), YET MR DERHAM, FAILED TO CHALLENGE

7  THOSE CONTENTIONS. IT IS THE APPELLATE COUNSEL'S DUTY

8  TO PRESENT WHATEVER THERE IS TO BE SAID ON BEHALF OF

9  PETITIONER HOWEVER MEAGER HIS CLAIMS COULD HAVE BEEN

10 SO THAT THE COURT CAN MAKE AN INFORMED APPRAISAL"(Johnson

11 V. U.S. (D.C. CYR 1966) 360 F. 2d 844). PETITIONER'S APPELLATE

12 COUNSEL REFUSAL TO HONOR PETITIONER'S REQUEST. THE

13 SUPERIOR COURT IN ITS RULING DATED FEBRUARY 8, 2005,

14 (SEE EXHIBIT "A" ON GROUND "1") STATED THAT THE ISSUES

15 ARE ONES THAT SHOULD HAVE AND COULD HAVE BEEN RAISED

16 ON DIRECT APPEAL. AND THEREFORE ATTEMPTS TO CIRCUMVENT

17 PETITIONER BY ASSERTING THAT THE CLAIMS ARE PROCEDURALLY

18 BARRED ON STATE HABEAS WHEN THE CLAIMS COULD HAVE

19 BEEN BUT WERE NOT RAISED ON APPEAL. WITH CITATION TO

20 (IN RE CLARK (1993) 5 CAL. 4TH 750, 765; IN RE WALTREIS (1965) 62

21 CAL. 2d 218, 225). MR DERHAM. FAILURE TO RAISE THE

22 ISSUES MENTIONED NOW SERVES AS A BASIS TO HEAR

23 PETITIONER'S CLAIMS. PETITIONER WAS NOT PRO-PER DURING

24 APPEAL PROCESS AND CAN NOT BE HELD ACCOUNTABLE AND

25 PUNISHED DUE TO APPELLATE COUNSEL'S LACK OF COMPETENCY.

26 PETITIONER'S CLAIMS ARE NOT FRIVOLOUS. THE SUPERIOR COURTS

27 RULING MAKE REFERENCE TO THE FACT THAT THESE CLAIMS

28 SHOULD HAVE BEEN RAISED ON APPEAL. PETITIONER HAD NO

P.C. 1258                    -3-                    P.C. 1404

A). SUPPORTING FACTS "N" CONT): CONTROL AS TO WHAT WAS OR WHAT
WAS NOT RAISED ON APPEAL, ESPECIALLY WHEN PETITIONER
HAD ASKED MR. DERHAM, PETITIONER'S APPELLATE COUNSEL
TO CHALLENGE CERTAIN CLAIMS WHICH WERE TOTALLY IGNORED
. ANY PROCEDURAL BAR HAS TO BE ATTRIBUTABLE TO APPELLATE
COUNSEL. MOREOVER, PETITIONER'S CLAIMS QUALIFY FOR AN
EXCEPTION TO THE PROCEDURAL BAR ON THE BASIS THAT THE
CLAIMS ARE BASED ON CONSTITUTIONAL ERRORS THAT ARE BOTH
CLEAR AND FUNDAMENTAL, AND STRIKES AT THE HEART OF THE
TRIAL PROCESS. THE DUE PROCESS OF THE FOURTEENTH AMENDMENT
GUARANTEES THE RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE
COUNSEL ON APPEAL. (EVITTS V. LUCEY (1985) 469 U.S. 387.).
REPRESENTATION THAT LOSES ONE'S RIGHT TO RAISE A SUBSTANTIAL
ISSUE CANNOT BE DEEMED EFFECTIVE (STRICKLAND V.
WASHINGTON (1984) 466 U.S. 668.). FAILURE TO ENTERTAIN
PETITIONER'S CLAIMS WILL RESULT IN A COMPLETE
MISCARRIAGE OF JUSTICE. KEEPING IN MIND THAT SOME
CONSTITUTIONAL VIOLATIONS BY THEIR VERY NATURE CAST SO
MUCH DOUBT ON THE FAIRNESS OF THE TRIAL PROCESS THAT AS
A MATTER OF LAW THEY CAN NEVER BE CONSIDERED HARMLESS.
PETITIONER HAS DEMONSTRATED THAT TRIAL AND APPELLATE
COUNSEL WERE INEFFECTIVE AND FAILED TO SET FORTH ALL
MATERIAL FACTS RELEVANT TO PETITIONER'S POSITION.
MR. DERHAM, PETITIONER'S APPELLATE COUNSEL WAS REQUIRED
TO RAISE ALL MATERIAL ISSUES ON DIRECT APPEAL AND THE
SUPERIOR COURT HAS INDICATED THE ISSUES WARRANTED
REVIEW ON APPEAL. (IN RE JONES (1994) 27 CAL. APP. 4TH 1032',
IN RE SMITH (1970) 3 CAL. 3d 192.

P.C. 1258                    —4.—                    P.C. 1404

## PROOF OF SERVICE BY PERSON IN STATE CUSTODY

I the undersigned, hereby declare that I am over the age of eighteen (18), and that I am incarcerated at High Desert State Prison in Susanville, California, that [X] I am [ ] am not a party to this action, and that on the 24 day of JULY , 200 7, I served a true and complete copy of the following:

(        WRIT OF HABEAS CORPUS           )
(                                      )
(                                      )
(                                      )
(                                      )
( _____ )

by handing it to institutional staff with First Class Postage prepaid in full for mailing to the following address(s):

( CALIF. SURPREME CT.      STATE ATTORNEY GENERAL )
( 350 MCALLISTER ST.      1300 I ST. )
( SAN FRAN, CA. 94102      SAC. CA. 95814 )
(                                      )
(                                      )
(                     /                  )
( _____ )

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON JULY 24, 2007 , in Susanville, California.

RONALD D. JACKSON
(Print Name)

(Signature)

EXHIBYTS GROUND

" 1 "

SYX PAGES OF SAN MATEO COUNTY
SUPERIOR COURT RULYNG TO PETITION
FILED ON JUNE 11, 2007 (EXHIBYT "A")

TWO PAGE LETTER FROM APPELLATE ATTORNEY
(EXHIBYT "B")

TOTAL PAGES OF EXHIBTS
ON GROUND "1" ARE "8"

EXHIBIT A

AFFIDAVIT OF MAILING

SC57334A
HC 1895

(ENDORSED)
**FILED** SAN MATEO COUNTY

JUN 1 1 2007

Clerk of the Superior Court
By ___GRACE LACEY___
DEPUTY CLERK

IN RE: PEOPLE **VS RONALD DEAN JACKSON**

DOCUMENT: ORDER OF DENIAL ON PETITION FOR WRIT OF HABEAS CORPUS

I DECLARE UNDER PENALTY OF PERJURY THAT ON THE FOLLOWING DATE I DEPOSITED IN THE UNITED STATES POST OFFICE MAIL BOX AT REDWOOD CITY A TRUE COPY OF THE FOREGOING DOCUMENT, ENCLOSED IN AN ENVELOPE WITH THE PROPER AND NECESSARY POSTAGE PREPAID THEREON, AND ADDRESSED TO THE FOLLOWING:

RONALD DEAN JACKSON V70867
HIGH STATE PRISON
P.O. BOX 3030  B4-126
SUSANVILLE, CA  96130-3030

OFFICE OF THE DISTRICT ATTORNEY
(VIA COUNTY MAIL)

**JUN 1 1 2007**

EXECUTED ON _____
AT REDWOOD CITY, CALIFORNIA
SUPERIOR COURT CLERK

**GRACE LACEY**

BY: _____
GRACE LACEY
LEAD DEPUTY COURT CLERK

( EXHIBIT " A " )

FILED
SAN MATEO COUNTY

JUN 1 1 2007

Clerk of the Superior Court

By _____
DEPUTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

|  | |
|---|---|
| In re: | Case No. SC-57334A<br>HC-1895 |
| RONALD DEAN JACKSON | |
| On Habeas Corpus. | **ORDER OF DENIAL** |

The Court has received and reviewed the Petition for Writ of Habeas Corpus filed by the Petitioner, Ronald Dean Jackson, on April 26, 2007.

The grounds for relief alleged in the petition are: (1) ineffective assistance of trial counsel for failing to obtain a racially diverse jury, and (2) three claims related to sufficiency of the evidence. The Petitioner acknowledges that he raised numerous claims on appeal and filed in conjunction with his appeal a petition for writ of habeas corpus claiming ineffective assistance of counsel, but his conviction was affirmed and his petition for writ of habeas corpus was denied. He states that these additional claims were not raised because his appellate counsel refused to do so.

//

//

1

(EXHIBIT "A")

**PROCEDURAL HISTORY**

On February 8, 2005, the Petitioner was found guilty by a jury of violations of Penal Code sections 664/187(a) (attempted murder), 245(a)(2) (assault with a firearm on a person), 646.9(b) (stalking while under temporary restraining order), 646.9(c)(2) (stalking with prior stalking), 166(c)(4)(1) (contempt of court with prior within seven years), 12021(a)(1) (possession of a firearm by a felon), 12021(g)(1) (receiving firearm while under a protective order), and 12021(c)(1) (possession of a firearm by a narcotics addict). In addition, numerous special allegations were admitted or found true.

On March 8, 2005, the Petitioner was sentenced to a term of life with the possibility of parole with a consecutive term of 20 years.

The Defendant timely appealed and filed a simultaneous petition for writ of habeas corpus. His conviction was affirmed and his petition was denied. The California Supreme Court denied his petition for review.

**DISCUSSION**

**I.    The claims are not cognizable in a habeas petition because the Petitioner could have raised them in his appeal but did not. Furthermore, he has not established a prima facie case of ineffective assistance of trial counsel.**

Defendants are not permitted to seek writ relief as a substitute for their appellate remedy. (In re Clark (1993) 5 Cal.4th 750, 765; In re Waltreus (1965) 62 Cal. 2d 218, 225.) Here, the Petitioner's claims as to the sufficiency of the

2

(EXHIBIT "A")

1  evidence could have been raised in the appeal, but were not. They
2  are not now cognizable in a habeas petition.

3      The Petitioner also argues that his trial counsel was
4  ineffective for failing to obtain a racially diverse jury. First,
5  he should have raised his ineffective assistance claim in
6  conjunction with his appeal. (In re Harris (1993) 5 Cal.4th 813,
7  828 n.7 (a claim for ineffective assistance of counsel should be
8  filed as a habeas petition in conjunction with the appeal).)
9  Second, even if this Court were to consider that claim now, the
10  Petitioner has failed to establish a prima facie case of
11  ineffective assistance of counsel.

12      An ineffective assistance of counsel claim requires a
13  showing, not only that counsel's performance was deficient, but
14  also that the defense was prejudiced, i.e. that the errors were
15  so serious that the result of the trial is unreliable.
16  (Strickland v. Washington (1984) 466 U.S. 668, 687.) It is the
17  petitioner's burden to state with particularity the facts which
18  make this showing and to "include copies of reasonably available
19  documentary evidence supporting the claim, including pertinent
20  portions of trial transcripts and affidavits or declarations."
21  (In re Duvall (1995) 9 Cal.4th 464, 474.)

22      Here, the Petitioner has not attached documentary evidence
23  supporting his claim. Furthermore, he has not demonstrated what
24  trial counsel could have done to obtain a more racially diverse
25  jury.

26      In his petition, the Petitioner must state a prima facie
27  case for relief. (Id. at pp. 474-75.) Because he has not done so,
28  his claim for ineffective assistance of counsel is denied.

3

1    **II.    If the Petitioner's claims are construed as a claim for**
      **ineffective assistance of appellate counsel, he has not**
2    **established a prima facie case as to that claim.**

3        The Petitioner impliedly claims that his appellate counsel

4    was ineffective because counsel failed to raise on appeal the

5    above-described claims.

6        "An indigent appellant is entitled to counsel who acts as

7    an active advocate rather than as *amicus curiae*." (United

8    States v. Griffy (9th Cir. 1990) 895 F.2d 561, 562 (where

9    appellate counsel raised no issues but did not move to withdraw

10   on the grounds of a frivolous appeal).) However, appellate

11   counsel has no constitutional duty to raise every nonfrivolous

12   issue requested by a defendant. (Jones v. Barnes (1983) 463

13   U.S. 745, 754 (where appellate counsel raised several issues,

14   but not every issue urged by the defendant).) Such a

15   requirement would disserve the goal of vigorous and effective

16   advocacy because the number of claims would water down the

17   persuasiveness of the strongest argument. (Ibid.)

18       Here, the Petitioner's appellate counsel raised several

19   issues on appeal, briefed them, and argued them before the

20   court. Furthermore, he filed a petition for writ of habeas

21   corpus in conjunction with the appeal, claiming ineffective

22   assistance of counsel. Thus, appellate counsel acted as an

23   active advocate. The Petitioner is not entitled to more.

24       Accordingly, the Petitioner's claim as to ineffective

25   assistance of appellate counsel is denied.

26   //

27   //

28   //

4

(EXHYBYT "A")

1                              **CONCLUSION**

2         When a petition for writ of habeas corpus fails to reveal

3   sufficient facts which, if true, would establish a prima facie

4   case for relief, summary denial is appropriate.  (In re Clark,

5   supra, 5 Cal.4th at p. 769 n.9.) For the foregoing reasons, the

6   petition for writ of habeas corpus is denied.

7            **JUN 0 8 2007**

8   DATED: _____          _____

9                                   H. James Ellis
                                    Acting Presiding Judge, Criminal
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ROBERT DERHAM
ATTORNEY AT LAW
1010 B STREET, SUITE 212
SAN RAFAEL, CA
94960
TEL: 415-485-2945

September 21, 2005

Mr. Ronald D. Jackson
V-70867
State Prison
PO Box 3030
Susanville, CA 96127-3030

      Re:   *People v. Jackson*
           Court of Appeal No. A109508

Dear Mr. Jackson:

Regarding your letter of August 22: you claim your trial attorney was incompetent for (i) failing to impeach Erica Smith with a prior inconsistent statement, (ii) failing to call Cesar to establish the time he dropped you at Erica's house on the night of the alleged shooting, and (iii) failing to argue for your complete innocence at trial.

I spoke to Mr. Devoy about these matters. He said Erica Smith's statements were essentially consistent, that any inconsistency would have been very minor. He said she cooperated fully with the defense and did not want to testify against you. As to Cesar, Mr. Devoy said he was aware of Cesar and elected not to call him, probably because Cesar changed his story. Mr. Devoy said he would check with his investigator to establish exactly why he decided not to call Cesar. Finally, as to arguing for innocence, Mr. Devoy said there was no doubt the jury was going to convict you of a crime, the only question was which crime -- assault or attempted murder. Attempted murder is far more serious because it carries the 25-to-life firearm enhancement with it, whereas assault does not. Therefore, he argued that if you in fact committed the crime, the crime committed was assault, not attempted murder.

I have tried twice to reach Cesar at the numbers you provided. He does not answer and has not returned my calls, although I have left messages asking him to do so.

Based on my review of the record and my interview of Mr. Devoy, I do not see any grounds for a habeas petition based on ineffective assistance of counsel. He performed

Mr. Ronald Jackson
September 21, 2005
Page 2

a reasonable investigation, was aware of the facts of the case, and made reasonable
tactical decisions based on the information he had. Therefore, I will not be filing a
habeas petition. If you wish to file a petition, you must do so on your own.

Sincerely,

Robert Derham
Attorney at Law

EXHLBLTS    GROUND
"2"

FLUE PAGES OF TRIAL TRANSCRIPTS
PAGES 321, 322, 191, 192, 323, EXHLBLTS "A" "B"
AND "C"

THREE PAGES OF POLYCE REPORT
EXHLBLTS "D" "E" AND "F"

TOTAL PAGES OF EXHLBLTS
ON GROUND "2" ARE "8"

1     Q.   With regards to your seeing the Defendant, at

2  some point later you were contacted by the police --

3  I'm skipping ahead a little bit. Were you able to give

4  the police a description of the Defendant?

5     A.   Yes.

6     Q.   Were you able to not just describe his

7  physical characteristics but what he was wearing that

8  day?

9     A.   Yes.

10     Q.   And what was he wearing?

11     A.   He was wearing -- I couldn't depict the

12  color, but it was shorts and dark -- they were dark,

13  dark T-shirt and shorts.

14     Q.   And when you turned to see the Defendant, was

15  that the last time you saw the Defendant that day, when·

16  that one glance over your -- over your shoulder?

17     A.   Well, no.

18     Q.   Can you describe for us sort of your

19  observations of the Defendant from that point on.

20     A.   Well, the only thing that I saw is after I

21  got to the top of the landing, it's -- I saw the door

22  open and close again.

23     Q.   Did you see him go through it?

24     A.   I saw a figure but I couldn't because the

25  light -- the sun was right on that door and I couldn't

26  see. I could see shadows and the door when the door

```
 1    opened and light came through and I could see, you

 2    know, that he had left through the door.

 3         Q.   Okay.  With regards to your initial view of

 4    the Defendant, at that point when you -- that initial

 5    view when you first heard your name, were you able to

 6    make out the Defendant's features?

 7         A.   Yes.

 8         Q.   And are you certain that it was the Defendant

 9    that you saw?

10         A.   Yes.

11         Q.   You have said that you began to run up the

12    stairs.

13         A.   Yes.

14         Q.   At some point during the course of your

15    flight from that particular area, did you hear a noise?

16         A.   Yes.

17         Q.   Can you describe the noise that you heard.

18         A.   Like two pops, pop, pop.

19         Q.   And was -- could you determine or could you

20    figure out sort of where the noise was coming from?

21         A.   Yes.

22         Q.   Where was the noise coming from?

23         A.   The stairwell.

24         Q.   What did you think was happening?

25         A.   I didn't know.  I just -- I didn't know what

26    it was.  And, I mean, in my mind I thought it might be
```

1     Q.   Deputy Woollum, as it relates to your duty or

2  your responsibilities during the course of that

3  investigation, was one of them to look for evidence of

4  gunfire in a stairwell that runs sort of down the center

5  near 4191 George Avenue?

6     A.   Yes, it was.

7     Q.   I want to show you some photographs.  First off,

8  let's start with People's No. 4 for identification.

9          With regards to People's No. 4, does that depict

10  at least a portion of the stairwell that you were asked to

11  take a look at and inspect for any evidence of gunfire?

12     A.   Yes, it does.

13     Q.   Okay.  As it relates to evidence of gunfire,

14  would one of the things that you would be looking for is

15  bullet holes?

16     A.   Yes.

17     Q.   And did you find any holes?

18     A.   No, we did not.

19     Q.   Was one of the things you might look for is

20  expended shell casings?

21     A.   Yes.

22     Q.   Did you find any expended shell casings?

23     A.   Not at all.

24     Q.   Okay.  And did you find a gun?

25     A.   No.

26     Q.   Okay.  Deputy Woollum, as it relates to the

191

1    evidence, did you find any evidence that a gun had been

2    fired from that location?

3         A.    No, I did not.

4         Q.    I am going to ask you kind of a strange question

5    here.  Deputy Woollum, as it relates to firecracker usage,

6    had you found any evidence whatsoever that firecrackers

7    had been lit from that area?

8         A.    No, not at all.

9         Q.    Did you find any firecracker paper?

10        A.    No.

11        Q.    Did you find any matches?

12        A.    No.

13        Q.    Deputy Woollum, as it relates to your

14   investigation, did you look -- did you just limit your

15   examination of the scene to that stairway or did you look

16   in surrounding areas for evidence of firearm discharge?

17        A.    Officer Shabatura and I conducted a search of

18   the entire complex at 4191 George Avenue, completed the

19   front of the complex, the stairwell, the carport area

20   adjacent to the stairwell and the parking area behind it.

21        Q.    And did you examine any of the trees out in

22   front of 4191 George Avenue to see if maybe a bullet had

23   lodged itself in the tree?

24        A.    Yes, we did.

25        Q.    Did you find any evidence that the bullet had

26   lodged itself in the tree?

192

04-0628-031

San Mateo Police Department
Narrative Supplement

Report No. 04-0628-031

| Code Section | Time | Date | Original Investigating Officer | Original | ☒ |
|---|---|---|---|---|---|
| 166(c)(1)PC | 1725 hrs | 06-28-04 | Klein | Supplement | ☐ |

18  **INVESTIGATION:**
19
20  On this date (06-28-04) I responded to ▓▓▓▓▓▓▓▓▓▓▓ on the reports of shots fired and a
21  woman screaming. When I arrived, I met with Gregorio Pablo Farron. When asked if he had
22  seen anything, Gregorio said, "No." When asked he did see, Gregorio said that he heard what
23  sounded like two gunshots and then he heard a female yelling, "Help" and "Call the police."
24  Gregorio said when he went outside, he was a female subject on the ground, directly in front of
25  the stairs to ▓▓▓▓▓▓▓ venue. When he approached the female subject, Gregorio said she
26  told him that her ex-boyfriend had shot at her. Gregorio said the female subject appeared to be
27  agitated and when he asked her if her ex-boyfriend was still in the area, she told him that she
28  believed her ex-boyfriend had left out the back of the complex.
29
30  After speaking to Gregorio, I contacted and spoke to Jane Carol Webster. When asked what
31  had happened, Jane said she had arrived home at approximately 1730 hrs. Jane said after she
32  parked her vehicle in the carport, she started towards the stairs, which led her to her apartment.
33  Jane said while she was climbing the stairs, she heard someone say her name. Jane said when
34  she looked behind her, she saw her ex-boyfriend, who she verbally identified as Ronald
35  Jackson, standing against the stairwell wall.
36
37  Jane said when she saw him, she started to run up the rest of the stairs and towards the street.
38  Jane said as she was running up the stairs she was screaming and asking for someone to call
39  the police. Jane said when she got outside of the apartment complex, she ran down the stairs
40  towards the street. Jane said she was approaching the street, she heard what she believed
41  to be gunshots. Jane said she did not know where the gunshots came from or if in fact Jackson
42  had a firearm in possession. Jane said when she heard what she described as a "Popping"
43  noise, she "Hit the deck" and laid flat on the sidewalk, which caused an abrasion to her left
44  elbow and the inside web of her right thumb. Jane also complained of pain to her left shoulder.
45  When asked if she wished to be treated for her injuries, Jane said, "No." Jane said she would
46  see her doctor the next day if she was still having any pain or discomfort. Fourteen photographs
47  were later taken by CSO Wylie to document Jane's injuries. When asked, Jane said she did not
48  where Jackson had gone or if he had driven away in a vehicle
49
50  When asked to describe the male subject, Jane said Jackson had short dark hair, a mustache,
51  and was wearing a dark colored T-shirt and shorts. When asked if Jackson had any tattoos or
52  scars that she saw or remembered, Jane said, "No."
53
54  I asked Jane when the last time she had contact with Jackson. Jane said that it had been a
55  couple of months since she had been in contact with him. When asked for details about it, Jane
56  said she believes Jackson tried contacting by telephone and when she did answer it, Jackson
57  said "Jane." After hearing her name, Jane said she hung up the telephone.
58

| Ref SMPD Rpt | | | Reports to | | |
|---|---|---|---|---|---|
| O/S Rpt | | | | | |
| Reporting Officer C. Klein | | ID # 153 | DOJ Entry | BOL | Initial Process |
| Supervisor | Badge # | Date 06-28-04 | Scan Initial | Scan Date | |

San Mateo Police Department
Narrative Supplement

Report No. 04-0628-031

04-0628-031

| Code Section | Time | Date | Original Investigating Officer | Original Supplement |
|---|---|---|---|---|
| 166.4 PC  245 PC | 1729 | 06-29-04 | Officer Klein #153 | X |

40  I met with Webster on the stairway and she was crying, and she was obviously upset. I asked
41  Webster if she needed medical attention and if she had been shot. Webster said she only
42  scuffed her left elbow and she did not need medical attention. Webster said she believed that
43  she was shot at by her ex-boyfriend, Ronald Jackson.
44

45

46  Jackson showed up at her apartment building at the lower level of the stairs near the entrance to
47  the carport and scared her. Webster said she ran away from Webster and she heard at least one
48  or two loud pops, which sounded like gunshots.
49

50  Webster said she did not see Jackson with a gun and she believed that the noise she heard
51  were possibly gunshots, although she couldn't be sure. Webster said when she heard the first
52  loud pop she fell on the walkway on the west side of the building. Webster said when she turned
53  around to look for Jackson, he was gone and she did not know which direction he left or if he
54  was in a car. Webster said she does have an active domestic violence restraining order against
55  Jackson and he was not supposed to be near her.
56

57  Webster said she did not know of any cars that were associated to Jackson or where he was
58  currently living. Jackson said she believed that Jackson was wearing dark clothing and she
59  could not provide a detailed description of his clothing.
60

61

62  Officer Klein and Officer Woollum arrived at the scene and Sergeant Kruger assigned Officer
63  Klein as the investigating officer. Refer to Officer Klein's original report for further details
64  regarding this investigation. Officer Woollum and I checked the area for any possible evidence
65  that was associated to the gunshots with negative results. An area check was made for Jackson
66  with negative results. We checked the area for witnesses and I talked to witness, Anne Cota,
67  who lives at ▓▓▓▓▓▓▓▓▓▓▓▓ Cota gave me the following statement in summary.
68

69  **WITNESS ANNE COTA'S STATEMENT:**
70

71  Cota said she was in her apartment, which is located above Webster's unit. Cota said she was in
72  her living room when she heard two consecutive loud pops or bangs that sounded like gunshots
73  coming from the westside of her apartment building. Cota said she has never heard gunshots so
74  she couldn't be sure sure if the noises that she heard were actually gunshots. Cota said she also
75  thought the two loud sounded like a piece of metal striking another piece of metal.
76

77

78                                                          METAL
79

80

| Ref SMPD Rpt | | Reports to | | |
|---|---|---|---|---|
| O/S Rpt | | | | |
| Reporting Officer S. Shabatura | ID # 119 | DOJ Entry | BOL | Initial Process |
| Supervisor | Badge # | Date 06-29-04 | Scan Initial | Scan Date |

**SAN MATEO POLICE DEPARTMENT**
**NARRATIVE SUPPLEMENT**

Page 1    1    Report No.    04-0628-031

| Code Violation | Date | Original Investigating Officer | |
|---|---|---|---|
| 166(a)(4) PC | 6-28-04 | Klein | Original Supplement ☒ |

1   ADDENDUM: On 6-28-04 at 1735 hr I was dispatched to 4▓▓▓▓▓▓▓▓▓ for a restraining order
2   violation with possible gunshots involved. The suspect, Ronald Jackson, had left the scene prior to police
3   arrival. Officer Klein was assigned as the primary investigator. Victim Webster said Jackson had possibly
4   fired a gun towards her from the bottom of the staircase leading from the carport to her apartment. Other
5   witnesses and an adjacent neighbor also stated hearing gunshots from the same area. I searched the
6   staircase area for any expended shell casings. I did not find any.
7
8   I interviewed Gabriela Nocito, a neighbor residing next door to Webster in apartment ▓. She was in her
9   apartment caring for her 19-month daughter when she heard what clearly sounded like two gunshots in
10   succession coming from the stairwell. The stairwell is directly out her front door. Gabriela immediately
11   called 9-1-1 as she looked out through her front door. She heard Webster scream something as she was
12   getting up from the sidewalk about 20' from Gabriela's door. Webster's purse and some contents were
13   laying on the ground by her feet. Webster yelled, "call the police". Other people began approaching
14   Webster. Gabriela remained in her apartment talking to the police dispatcher. She did not see Jackson at all.
15   She has seen him on previous occasions at Webster's apartment but doesn't know him.
16
17   DISPOSITION:    Attach to Original report.
18
19

| Ref SMPD Report: | | | | O/S Report: | | | |
|---|---|---|---|---|---|---|---|
| Reporting Officer: Dennis Woollum | | | Badge #: 114 | Reports to: D.A. | | | |
| Supervisor | Badge #: S-38 | Date: 6-29-04 | | DOJ Entry: | BOL: | | Initial Process: |
| | | | | Scan Initial: | | Scan Date: | |

SMPD: CR2 (6/97)

POINTS AND AUTHORITIES
THREE PAGES

## POINTS AND AUTHORITIES

2. THE REQUIREMENT OF PROOF BEYOND A REASONABLE
3. DOUBT HAS THIS VITAL ROLE IN OUR CRIMINAL
4. PROCEDURE FOR COGENT REASONS. THE ACCUSED DURING
5. A CRIMINAL PROSECUTION HAS AT STAKE INTERESTS OF
6. IMMENSE IMPORTANCE, BOTH BECAUSE OF THE POSSIBILITY
7. THAT HE MAY LOSE HIS LIBERTY UPON CONVICTION AND
8. BECAUSE OF THE CERTAINTY THAT HE WOULD BE
9. STIGMATIZED BY THE CONVICTION. ACCORDINGLY, A
10. SOCIETY THAT VALUES THE GOOD NAME AND FREEDOM
11. OF EVERY INDIVIDUAL SHOULD NOT CONDEMN A MAN FOR
12. COMMISSION OF A CRIME WHEN THERE IS REASONABLE
13. DOUBT ABOUT HIS GUILT.
14.
15. (PEOPLE V. AYALA (2000) 23 CAL. 4TH 225, 270, 277.) DUE
16. PROCESS CLAUSE CREATES A DUTY IN THE PROSECUTION
17. TO DISCLOSE CERTAIN EVIDENCE TO A DEFENDANT.
18. THE EVIDENCE, HOWEVER, MUST BE BOTH FAVORABLE TO
19. THE DEFENDANT AND MATERIAL TO EITHER GUILTY OR
20. PENALTY U.S.C.A. CONSTITUTION AMENDMENT "14".
21. FAVORABLE EVIDENCE WHICH THE DUE PROCESS
22. CLAUSE REQUIRES PROSECUTORS TO DISCLOSE IS
23. EVIDENCE THAT THE DEFENSE COULD USE EITHER TO
24. IMPEACH THE STATE'S WITNESS OR TO EXCULPATE
25. THE ACCUSED.
26.
27. (PEOPLE V. RUTHFORD (1975) 14 C.3d 399, 406, 121 CAL.
28. R.P.T.R. 261.). THE DUTY TO DISCLOSE EVIDENCE

-1-

## POINTS AND AUTHORITYES

FAVORABLE TO THE ACCUSED EXTENDS TO EVIDENCE THAT MAY REFLECT ON THE CREDYBYLYTY OF A MATERIAL WITNESS.

(UNITED STATES v. AGUES (1976) 427 U.S. 97, 108, 49 L.Ed.2d 342, 352, 96 S.CT. 2392). THE FAILURE OF THE PROSECUTION TO DYSCLOSE BRADY MATERIALS. CERTAINLY WHEN INTENTIONAL, BUT EVEN WHEN NEGLIGENT CAN RESULT IN REVERSAL.

(UNITED STATES v. FISHER (5TH CYR 1997), 106 F.3d 622, 635.) BRADY VIOLATION IN BELATED DYSCLOSURE OF REPORT CONTAINING IMPEACHMENT EVIDENCE OF GOVERNMENTS KEY WITNESS.

JAMISON v. COLLINS (6TH CYR 2002) 291 F.3d 380, 384-91) DUE PROCESS VIOLATED BY FAILURE OF PROSECUTOR TO TURN OVER EVIDENCE THAT COULD HAVE BEEN USED TO IMPEACH KEY WITNESS.

(CRYVENS v. ROTH (7TH CYR 1999) 172 F.3d 991, 997-98) BRADY VIOLATION IN FAILURE TO DYSCLOSE WITNESS'S CRIMINAL HISTORY.

-2-

<u>POINTS AND AUTHORITIES</u>

THE UNITED STATES SUPREME COURT ESTABLISHED IN (STRICKLAND U. WASHINGTON, 466 U.S. 668 (1985), THAT DUE PROCESS WAS VIOLATED BY TRIAL COUNSELOR'S FAILURE TO INVESTIGATE, AND RESEARCH THE ADEQUATE CRIME LABEL DEFECTIVE RECORDS FOR A LEGAL DEFENSE ON.

(THOMPSON U. CALDERON (1998) 523 U.S. 538.) A DEFENSE LAWYER FAILURE TO EFFECTIVELY IMPEACH GOVERNMENT WITNESS IS PREJUDICIAL PARTICULARLY WHEN THE GOVERNMENT IS RELYING STRONGLY ON A WITNESS TESTIMONY TO OBTAIN A CONVICTION. ALSO (DIXON U. SNYDER (7TH CIR 2001) 266 F.3d 693,704).

(BANKS U. REYNOLDS (10TH CIR 1995) 54 F.3d 1508,1515-16.) WHEN APPELLATE COUNSEL FAILED TO RAISE ISSUES OF TRIAL COUNSEL'S CONFLICT OF INTEREST AND PROSECUTION'S FAILURE TO PROVIDE EXCULPATORY BRADY MATERIAL TO DEFENDANT BECAUSE CLAIMS WERE "CLEARLY MERITORIOUS" AND DEFENDANT WAS PREJUDICED BY COUNSEL'S ERROR.

APPELLATE COUNSEL'S FAILURE TO RAISE DUE PROCESS CLAIMS ON APPEAL WAS CONSTITUTIONALLY DEFICIENT AND PREJUDICED PETITIONER (DELGADO U. LEWIS (9TH CIR 2000) 223 F.3d 976,980,982)

<u>CONCLUSION</u>

1
2 PETITIONER RESPECTFULLY CONCLUDES THAT
3 THIS COURT SHOULD GRANT REVIEW OF THIS CASE
4 TO DETERMINE WHETHER THE PROCEDURES UTILIZED
5 BY THE SUPERIOR COURT ARE COGNIZANT OF THOSE
6 EXPECTATIONS GUARANTEED BY THE CONSTITUTION.
7
8 THE OUTCOME OF THIS CASE UNDERMINES THE ACCURACY
9 OF THE APPEAL PROCESS. PETITIONER IS ENTITLED
10 TO EFFECTIVE REPRESENTATION. REGARDLESS OF
11 THE SHORTCOMINGS OF HIS COUNSEL. AND AS
12 STATED. PETITIONER'S APPELLATE COUNSEL'S
13 FAILURE TO PURSUE THE CLAIMS MENTION
14 CANNOT BE USED TO BAR PETITIONER FROM HAVING
15 THE MERITS OF HIS CLAIMS ADDRESSED.
16
17
18 DATED: July 24, 2007
19
20
21 RESPECTFULLY SUBMITTED BY:
22
23
24
25
26
27
28

-44-

## PRAYER FOR RELIEF

PETITIONER IS WITHOUT REMEDY SAVE BY THIS WRIT OF HABEAS CORPUS;

WHEREFORE, PETITIONER PRAYS THE COURT;

1). ISSUE THE WRIT OF HABEAS CORPUS;

2). DECLARE THE RIGHTS OF THE PETITIONER;

3). GRANT ANY OTHER AND FURTHER RELIEF THE COURT DEEMS PROPER;

4). PETITIONER ASKS THE COURT TO PLEASE FORGIVE ALL MISTAKES THAT PETITIONER HAS MADE.

DATED: JULY 24, 2007

RESPECTFULLY SUBMITTED BY:

RONALD BEAN JACKSON

-45-

VERIFICATION

1

2  I, RONALD DEAN JACKSON, V-70867, STATES: I AM THE

3  PETITIONER IN THIS ACTION. AND THAT I HAVE READ THE

4  FOREGOING WRIT AND MEMORANDUM OF POINTS AND

5  AUTHORITIES AND THE FACTS STATED THEREIN ARE TRUE

6  OF MY OWN KNOWLEDGE, EXCEPT AS TO MATTERS THAT ARE

7  THEREIN STATED ON MY OWN INFORMATION AND BELIEF, AND

8  AS TO THOSE MATTERS I BELIEVE THEM TO BE TRUE ...

9

10

11

12

13

14  I, DECLARE UNDER PENALTY OF PERJURY THAT THE

15  FOREGOING IS TRUE AND CORRECT AND THAT THIS

16  DECLARATION WAS EXECUTED AT SUSANVILLE, CALIFORNIA

17  96127 ON JULY 24, 2007 ...

18

19

20

21                        PETITIONER PRO SE

22

23                        V-70867

24                        (PRISON NUMBER)

25

26

27

28                    -46-

8. Did you appeal from the conviction, sentence, or commitment?  ☒ Yes.  ☐ No. If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
FIRST APPELLATE DISTRICT . DUVISION FIVE

b. Result AFFIRM    c. Date of decision: MARCH 13, 2007

d. Case number or citation of opinion, if known: A 109508

e. Issues raised: (1) JURY INSTRUCTIONS

(2) INSUFFYCIENT EVIDENCE

(3) _____

f. Were you represented by counsel on appeal?  ☒ Yes.  ☐ No. If yes, state the attorney's name and address, if known:

ROBERT DERHAM 1010 B STREET, SUITE 212 SAN RAFAEL, CA 94960

9. Did you seek review in the California Supreme Court?  ☒ Yes  ☐ No. If yes, give the following information:

a. Result DENIED    b. Date of decision: MAY 17, 2006

c. Case number or citation of opinion, if known: S 142608

d. Issues raised: (1) JURY INSTRUCTIONS

(2) INSUFFICIENT EVIDENCE

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:
BECAUSE APPELLATE COUNSEL REFUSED TO RAISE THEM (EXHIBIT "B") on
CARONO "I" SHOWS THAT PETITIONER ASKED HIM TO RAISE THESE CLAIMS

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

N/A

b. Did you seek the highest level of administrative review available?  ☐ Yes.  ☒ No.
Attach documents that show you have exhausted your administrative remedies.

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, **MC-275**
commitment, or **issue** in any court?  ☒ Yes. If yes, continue with number 13.  ☐ No. If no, skip to number 15.

13. a. (1) Name of court: SUPREME COURT OF CALYFORNIA

(2) Nature of proceeding (for example, "habeas corpus petition"): PETITION FOR REVIEW

(3) Issues raised: (a) JURY INSTRUCTIONS

(b) INSUFFICIENT EVIDENCE

(4) Result (Attach order or explain why unavailable): DENIED (ATTACHED)

(5) Date of decision: MAY 17, 2006

b. (1) Name of court: SAN MATEO SUPERIOR COURT

(2) Nature of proceeding: HABEAS CORPUS

(3) Issues raised: (a) TRIAL COURT ACTED IN EXCESS OF IT'S JURISDICTION, NO

(b) EVIDENCE, PROSECUTOR MYSCONDUCT INEFFECTIVE ASSISTANCE OF TRIAL
AND APPELLATE COUNSEL,
(4) Result (Attach order or explain why unavailable): DENIAL ORDER (ATTACHED (SEE EXHIBYT "A" M
GROUND "I")
(5) Date of decision: JUNE 8, 2007

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

N/A

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

N/A

16. Are you presently represented by counsel?  ☐ Yes.  ☒ No. If yes, state the attorney's name and address, if known:

N/A

17. Do you have any petition, appeal, or other matter pending in any court?  ☐ Yes.  ☒ No. If yes, explain:

N/A

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

THE LOWER COURT SEEMS TO ALLOW PETITIONER TO SUFFER
IN JEOPARDY

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: JULY 24, 2007

▶ _____
(SIGNATURE OF PETITIONER)

COPY

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## IN AND FOR THE
## FIRST APPELLATE DISTRICT
## DIVISION FIVE

In re RONALD D. JACKSON on Habeas Corpus.

**FILED**

FEB 15 2006

Court of Appeal - First App. Dist.
DIANA HERBERT

By_____

Court of Appeal No. A112908
San Mateo Co. Super. Ct. No. SC057334A

BY THE COURT:*

The petition for writ of habeas corpus is denied. (*In re Swain* (1949) 34 Cal.2d 300, 303-304 [Ground 1]; *In re Lindley* (1947) 29 Cal.2d 709, 723 [Ground 2].)

Date   **FEB 15 2006**          **JONES, P.J.**   P.J.

* ✓ Jones, P.J. _ Stevens, J. ✓ Simons, J. ✓ Gemello, J.

Court of Appeal, First Appellate District, Div. 1 - No. A109508
**S142608**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

RONALD DEAN JACKSON, Defendant and Appellant.

Petition for review DENIED.

**SUPREME COURT**
**FILED**

MAY 1 7 2006

Frederick K. Ohlrich Clerk

DEPUTY

**GEORGE**

Chief Justice

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT, DIVISION FIVE

| | | |
|---|---|---|
| People of the State of California, | ) | No. A109508 |
| | ) | |
| Plaintiff and respondent, | ) | |
| | ) | Superior Court |
| v. | ) | (San Mateo) |
| | ) | No. SC57334 |
| Ronald D. Jackson, | ) | |
| | ) | |
| Defendant and appellant. | ) | |
| | ) | |

## APPELLANT'S OPENING BRIEF

---------------------------

Appeal from the Judgment of the Superior Court
County of San Mateo
The Honorable Barbara J. Mallach, Judge

Robert Derham
Attorney at Law
State Bar No. 99600
1010 B Street, Suite 212
San Rafael, CA 94901
Tel: 415-485-2945

Attorney for defendant
and appellant Ronald
Jackson

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION FIVE

| | | |
|---|---|---|
| People of the State of California, | ) | No. A109508 |
| | ) | |
| Plaintiff and respondent, | ) | |
| | ) | Superior Court |
| v. | ) | (San Mateo) |
| | ) | No. SC57334 |
| Ronald D. Jackson, | ) | |
| | ) | |
| Defendant and appellant. | ) | |
| | ) | |

## APPELLANT'S OPENING BRIEF

----------------------------

Appeal from the Judgment of the Superior Court
County of San Mateo
The Honorable Barbara J. Mallach, Judge

Robert Derham
Attorney at Law
State Bar No. 99600
1010 B Street, Suite 212
San Rafael, CA 94901
Tel: 415-485-2945

Attorney for defendant
and appellant Ronald
Jackson

# Table of Contents

Statement of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of the Facts  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

I.     The Court Erred In Failing To Instruct As Requested On Attempted
       Voluntary Manslaughter As A Lesser Offense To Attempted Murder
       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

II.    The Conviction Violates The Due Process Clause Of The Fourteenth
       Amendment Of The United States Constitution Because The Evidence
       Is Insufficient To Support The Finding That Defendant Acted With
       Intent To Kill  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Table of Authorities

CASES

*Beardslee v. Woodford* (9th Cir. 2002) 358 F.3d 560 . . . . . . . . . . . . . . . .  18

*In re Winship* (1970)  397 U.S. 358 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*In Thomas C.* (1986) 183 Cal.App.3d 786 . . . . . . . . . . . . . . . . . . . . . . . .  15

*Jackson v. Virginia* (1979) 443 U.S. 307 . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Mathews v. United States* (1988) 485 U.S. 58 . . . . . . . . . . . . . . . . . . . . .  18

*People v. Barnes* (1986) 42 Cal.3d 284 . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*People v. Barton* (1995) 12 Cal.4th 186 . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*People v. Berry* (1976) 18 Cal.3d 509 . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*People v. Borchers* (1958) 50 Cal.2d 321 . . . . . . . . . . . . . . . . . . . . . . . . .  16

*People v. Breverman* (1998) 19 Cal.4th 142 . . . . . . . . . . . . . . . . . . . . . . .  13

*People v. Brown* (1989) 216 Cal.App.3d 596 . . . . . . . . . . . . . . . . . . . . . .  19

*People v. Chinchilla* (1997) 52 Cal.App.4th 683 . . . . . . . . . . . . . . . . . . .  20

*People v. Dixon* (1995) 32 Cal.App.4th 1547 . . . . . . . . . . . . . . . . . . . . . .  14

*People v. Fields* (1996) 13 Cal.4th 289 . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*People v. Johnson* (1980) 26 Cal.3d 557 . . . . . . . . . . . . . . . . . . . . . . . . .  19

*People v. Lashley* (1991) 1 Cal.App .4th 938 . . . . . . . . . . . . . . . . . . . . . .  21

*People v. Lujan* (2001) 92 Cal.App.4th 1389 . . . . . . . . . . . . . . . . . . . . . . .  15

*People v. Montes* (2003) 112 Cal.App.4th 1543 . . . . . . . . . . . . . . . . . . . .  14

*People v. Morales* (1992) 5 Cal.App.4th 917 . . . . . . . . . . . . . . . . . . . . . . .  14

*People v. Rios* (2000) 23 Cal.4th 450 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*People v. Valentine* (1946) 28 Cal.2d 121 . . . . . . . . . . . . . . . . . . . . . . . . .  16

*People v. Waidla* (2000) 22 Cal.4th 690 . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*People v. Wickersham* (1982) 32 Cal.3d 307 . . . . . . . . . . . . . . . . . . . . . . .  15

*People v. Wilson* (1967) 66 Cal.2d 749 . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*United States v. Escobar de Bright* (9th Cir. 1984) 742 F.2d 1196 . . . . . .  18

*United States v. Hairston* (9th Cir. 1995) 64 F.3d 491 . . . . . . . . . . . . . . .  18

*United States v. Zuniga* (9th Cir. 1993) 6 F.3d 569 . . . . . . . . . . . . . . . . . .  18

STATUTES

Penal Code

Section 1202.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Section 1202.45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Section 12021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Section 12022.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Section 12022.53 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Section 1237 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

iii

Section 166 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Section 187 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Section 245 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Section 2933.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Section 646.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Section 664 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION FIVE

People of the State of California,    )    No. A109508
                                      )
    Plaintiff and respondent,         )
                                      )    Superior Court
        v.                            )    (San Mateo)
                                      )    No. SC57334
Ronald D. Jackson,                    )
                                      )
    Defendant and appellant.          )
_____   )

Statement of Appeal

This appeal is from a final judgment following a jury trial and is
authorized by Penal Code section 1237.

Statement of the Case

An eight-count information filed on October 26, 2004, charged

1

defendant Ronald Jackson with the attempted murder of Jane Webster on June 28, 2004, in violation of Penal Code section 664/187. It was further alleged that the attempted murder was willful, deliberate and premeditated (§ 664), and that defendant personally used a firearm (§ 12022.53, subd. (c)). (CT 2.) In the alternative, the incident was charged as assault with a firearm, in violation of section 245, subdivision (a)(2). It was further alleged as to this count that defendant personally used a firearm within the meaning of section 12022.5. (CT 3.)

In addition, the information charged two counts of stalking Jane Webster, in violation of section 646.9, subdivision (c), one count of violating a stay-away order in violation of section 166, subdivision (c)(4)(1), and three counts of being a felon in possession of a firearm, charged under different subdivisions (§ 12021, subds. (a)(1), (g)(1), & (c)(1). (CT 6-8.)

On February 8, 2005, a jury convicted defendant exactly as charged. (CT 381-394.) The jury also found true the allegation that the attempted murder was willful, deliberate and premeditated, and that defendant personally discharged a firearm in the commission of the attempted murder. (CT 381-394.)

Thereafter, the court sentenced defendant to a term of life with the

2

possibility of parole for attempted murder, plus a consecutive term of 20 years under section 12022.53, subdivision (c). (RT 552; CT 417.) The court stayed punishment on the remaining counts (Counts 2-8) under section 654. (CT 417.) The court imposed a restitution fine of $200 under sections 1202.4 and 1202.45. (CT 417.) Finally, the court awarded pre-sentence credit of 183 actual days plus 27 credit days under section 2933.1 for a total of 210 days. (CT 419.)

Defendant filed a timely notice of appeal. (CT 422.)

## Statement of the Facts

### The Prosecution Case

Jane Webster has known defendant for about 20 years and dated him for 10 to 15 years. (RT 286.) He lived with her in her apartment on George Avenue for about 8 years. (RT 287.) During that time, she typically arrived home from work at 5:30 p.m. (RT 288.)

The relationship began to deteriorate and in December 2001 Webster asked defendant to leave the apartment. Defendant was not working at that

3

time, and asked if he could leave when he found a new job. (RT 289.)
Webster allowed this; she felt threatened by the defendant. (RT 291.)

On August 7, 2002, Webster returned very tired from a trip to Tahoe to
learn that defendant had accidentally broken the shower door while attempting
to caulk the stall. (RT 292.) This situation lead to an argument, during which
defendant grabbed her by the throat and choked her, then threw her to the
floor. (RT 293.) Webster tried to call the police; defendant grabbed the
phone from her. (RT 294.) Webster ran from the house, then ran back
inside. She told defendant to leave, which he did, and she called the police.
(RT 295.)

Webster obtained a temporary restraining order against defendant the
next day. (RT 298.) She did not return to her apartment but stayed in hotels
and friend's houses for several days on the advice of the police. (RT 299.)
Later, she obtained a 3-year restraining order after a court hearing at which
defendant was present. (RT 305.)

Webster reluctantly pressed charges against defendant after she
received numerous telephone calls from him over the next few months. (RT
302.) However, although defendant was convicted of the charges, he did not
stop calling her. (RT 302.) Webster again felt threatened. (RT 302.)

After a period of time, she called the police and played the new messages defendant had left on her voice mail. (RT 306.) New charges were brought against defendant and he was convicted on these charges in June 2003. (RT 312.) After that, Webster heard almost nothing from defendant; he called her only twice over the next year.

On June 28, 2004, Webster returned home at her usual time of 5:30 p.m. (RT 317.) She was in the stairwell walking to her apartment from the parking lot when she heard defendant call her name. (RT 318.) She glanced toward him; she saw him standing behind a door, wearing shorts and a t-shirt. (RT 321.) She ran up the stairs and as she did she heard two pops. (RT 322.) She wasn't sure what the sound was; at first she thought it was firecrackers in the stairwell. (RT 323.) She stumbled at the top of the stairs, cutting her hand and elbow. (RT 324.) She did not see a gun in defendant's hands. (RT 324.)

Anne Marie Cota lives in Webster's apartment building. On June 28, 2004, she was at home around 5:30 p.m. when she heard what she thought were gunshots or "rocks being thrown on a door." (RT 142.) She has no experience with firearms but believed the sounds she heard were like gunshots she had heard on television. (RT 143.) She was either just outside her door,

5

on the way to her mailbox, or in her living room, when she heard the noise. (RT 143.) The sound was "loud and sharp" and there was more than one. (RT 144.) She heard people yelling and then she saw Webster on the ground, face down. (RT 143-146.) She was at the landing at the top of the stairs. She was hysterical and crying. (RT 147.)

Greg Farron was two buildings away at the same time, visiting his brother. (RT 157.) He heard two "loud reports" that he "assumed" were gun shots. (RT 158.) He owns a gun and has fired it many times and believed the sounds he heard that evening were gunshots. (RT 159.) The shots were fired one right after the other. He then heard a woman screaming. (RT 161.) He ran outside and saw Webster on the ground, with a bloody elbow. (RT 162.) On cross-examination, he admitted he told an investigator before trial that he first thought the sounds were fireworks, and it was not until he heard the woman scream that he suspected the sounds were gunshots. (RT 169.)

Another of Webster's neighbors, Gabriela Nocito, also heard two loud bangs and a woman scream. (RT 178.) She thought the bangs were gunshots. (RT 178.) She ran out and saw Webster lying on the ground. (RT 187.)

The investigating officers found no shell casings or bullet holes at the

6

scene; nor did they find any evidence of firecrackers. (RT 191-192.)

Brett Banbury, a friend of defendant's, saw the defendant sometime in late June 2004, between 5:00 p.m. and 6:30 p.m., when defendant visited Banbury's apartment in San Mateo. (RT 210.) Defendant appeared "nervous" or "apprehensive." (RT 212.) Banbury could not remember if defendant was out of breath. (RT 212-213.) Defendant's leg was scraped; he told Banbury he hurt it climbing a fence. (RT 214.) After defendant entered Banbury's apartment he sat for 15 minutes without saying anything. When he did speak, he said words to the effect that "things were now worse than before." (RT 215.) Defendant stayed at Banbury's that night. (RT 216.)

When interviewed on July 15, two weeks later, Banbury told the police that defendant seemed confused and out of breath. (RT 240.) Defendant said he had run from his brother's house. (RT 240.)

Banbury's roommate at that time, Jennifer Bright, recalled that defendant arrived at their apartment at about 6:00 or 7:00 p.m. (RT 225.) Defendant walked in, said hello, then went to Banbury's room. (RT 226.) She did not notice anything remarkable about his behavior. (RT 226.) The next morning, defendant asked if he could stay in the apartment another day;

7

Bright said no. (RT 227.) He tried hard to talk her into letting him stay but she was equally insistent that he leave and he did. (RT 229.)

Erica Smith, defendant's niece, saw defendant at her house on Poplar Avenue on June 29, 2004, at about 9 a.m. (RT 252.) Defendant seemed very tired and he wanted to stay at Smith's house. (RT 254.) However, Smith's father did not allow defendant to stay. (RT 256.) Smith invited defendant to go with her on an errand. He agreed. (RT 257.)

Smith noticed a cut on defendant's calf. (RT 257.) She could not recall if he said how he got it. (RT 257.) After the errand was done, Smith dropped defendant off at the bus stop. (RT 259.) They parked and talked for a bit before defendant got out of the car. He seemed very sad. (RT 260.) He was crying and he told Smith this was probably the last time she would see him and that he had done something bad. (RT 261.) He said he "visited Jane" and "took two shots at her." (RT 261.) He did not know "if she [was] dead or alive." (RT 261.)

There was substantial evidence presented regarding defendant's relationship with Jane Webster. The parties stipulated to the following:

(1) A restraining order was issued on August 29, 2002, ordering defendant to keep away from Jane Webster. (RT 345.) In addition, the order

8

specified that defendant was prohibited from owning or possessing firearms. (RT 345.)

(2) On January 23, 2003, defendant was convicted of battery upon a person with whom he had a dating relationship, Jane Webster, under Penal Code section 243, subdivision (e). (RT 346.)

(3) On January 23, 2003, defendant was convicted of misdemeanor stalking of Jane Webster under Penal Code section 646.9, subdivision (a). (RT 346.)

(4) On June 16, 2003, defendant was convicted of felony stalking of Jane Webster under Penal Code section 646.9, subdivision (b). (RT 347.)

(5) On July 29, 2003, defendant was placed on felony probation for three years for the felony stalking violation and was once again ordered to keep away from and not have any contact with Jane Webster. (RT 347.)

There was also testimony regarding the involvement of the police in the prior domestic disputes between defendant and Jane Webster. On August 7, 2002, San Mateo Police Officer Bill Schroeder was dispatched to a residence regarding a report of domestic violence. (RT 86.) At the residence he met Jane Webster and took a report from her. (RT 88-89.) Webster was not interested in prosecuting the case but wanted to obtain a restraining order

9

against defendant. (RT 90.) The next day, Officer Schroeder was at Webster's residence when the restraining order was served on defendant personally. (RT 90.)

Defendant appeared to be upset at being served with the restraining order. (RT 92.) He was agitated and "speaking wildly." (RT 92.) Defendant claimed he was not the aggressor, that Webster was, and that he grabbed her by the neck only after she pushed him first. (RT 93.)

Officer Schroeder spoke to Webster again on November 19, 2002, when she played for him an audio tape of voice messages left by defendant on Webster's answering machine. (RT 96.) Officer Schroeder listed to approximately 43 messages. (RT 97.) The first message was left on August 9, 2002. (RT 97.) In it, defendant accused Webster of "fucking with me for no reason" and he stated, among other things, "I'm going to find you, put it that way." (RT 98.) Several other messages were left over the following days. (RT 98-112.)

Sheriff's Detective Matthew Powers served the temporary restraining order on defendant on August 8, 2002. (RT 121.) As Detective Powers explained the nature of the restraining order, defendant was "extremely hostile and verbally belligerent." (RT 122.) Defendant stood close to the detective,

10

as close as 12 inches and yelled and cursed about the restraining order. (RT 124.)

Defendant also left numerous messages on Webster's answering machine in January and February 2003. (RT 231-237.)

## The Defense Case

Defendant testified. He began seeing Jane Webster approximately 15 years ago. (RT 349.) He admitted that on August 7, 2002, the two argued and he assaulted her as she described. (RT 349.) He also admitted that he received the restraining order the next day but in spite of that he made the telephone calls to her that were recorded on her answering machine. (RT 350.)

On June 28, 2004, defendant was in San Jose until approximately 4:00 p.m. (RT 351.) He returned to San Mateo and went to hsi niece's house on Poplar Avenue, arriving there at about 5:00 or 5:15 p.m. (RT 351.) No one was home so he walked to the apartment of hsi friends Brett Banbury and Jennifer Bright. (RT 352.) He stopped at Central Park along the way and rested. (RT 352.) He arrived at Banbury's apartment at about 9:00 p.m. (RT

11

353.)

Defendant's right leg was injured on the calf; he hurt it while at Central Park when he climbed a fence to take a shortcut to Banbury's apartment. (RT 354.)

The next day he returned to his niece's house. (RT 355.) He denied that he told Erica Smith that he had been at Jane Webster's residence the night before. (RT 355.) He was not crying when he spoke to her although he was upset and concerned about his probation status because he had not visited his probation officer as he was required to do. (RT 356.) He was also referring to hsi probation status when he told Banbury the night before that hsi life was "worse now than it's ever been." (RT 356.)

He told Erica that she might not see him again because he anticipated that he would have to flee in order to avoid being apprehended for a probation violation. (RT 359.) He denied completely that he owned or possessed a firearm. (RT 359.) He denied that he shot at Jane Webster on June 28, 2004. (RT 359.)

12

## Argument

I. The Court Erred In Failing To Instruct As Requested On Attempted Voluntary Manslaughter As A Lesser Offense To Attempted Murder.

A. Defense Counsel Requested An Instruction On Attempted Voluntary Manslaughter, An Offense Supported By The Evidence.

Defense counsel requested that the court instruct the jury on the crime of attempted voluntary manslaughter on the theory that the shooting arose out of a heat of passion generated by the long and tumultuous relation ship between defendant and Jane Webster. (RT 407.) The court denied that request. (RT 407.)

A trial court has a duty to instruct on a lesser included offense when there is evidence that the offense was less than that charged. (*People v. Breverman* (1998) 19 Cal.4th 142, 148-149, 154, 162.) In this context, substantial evidence means evidence from which a reasonable trier of fact could conclude that the lesser offense, and not the greater, was committed. (*Id.* at p. 162.) Attempted voluntary manslaughter is a lesser included offense

13

to the crime of attempted murder. (*People v. Fields* (1996) 13 Cal.4th 289,

304.) Murder is the unlawful killing of a human being with malice

aforethought. (*People v. Rios* (2000) 23 Cal.4th 450, 460.) To prove

attempted murder, the prosecution must show substantial evidence of the

intent to kill and a direct but ineffectual act toward the killing. (*People v.

Morales* (1992) 5 Cal.App.4th 917, 925.)

Voluntary manslaughter, in contrast, is the unlawful killing of a human

being without malice. (*People v. Rios, supra,* 23 Cal.4th at p. 460.) An

unlawful killing is committed without malice if it is committed upon a "

'sudden quarrel or heat of passion,' " or if it is committed in " 'unreasonable

self-defense' "--the unreasonable but good faith belief in having to act in self-

defense. (*People v. Rios, supra,* 23 Cal.4th at p. 460.) Attempted voluntary

manslaughter, like attempted murder, requires an intent to kill. (*People v.

Montes* (2003) 112 Cal.App.4th 1543, 1549-1550.)

Heat of passion has both a subjective and an objective component:

"The [defendant must] be under the actual influence of a strong passion at the

time of the homicide" and heat of passion "requires provocation that is

adequate to arouse a reasonable person [to make a homicidal attack]."

(*People v. Dixon* (1995) 32 Cal.App.4th 1547, 1552, internal quotation marks

14

omitted; *People v. Waidla* (2000) 22 Cal.4th 690, 740, fn. 17.) In addition,
the provocation must be from the victim. (*People v. Lujan* (2001) 92
Cal.App.4th 1389, 1411-1412; *In Thomas C.* (1986) 183 Cal.App.3d 786,
798.)

"No specific type of provocation is required, and the passion aroused
need not be anger or rage, but can be any [v]iolent, intense, high-wrought or
enthusiastic emotion [citations] other than revenge [citation]." (*People v.
Montes, supra,* 112 Cal.App.4th at p. 1548, internal quotation marks omitted.)
As the Supreme Court explained in *People v. Wickersham* (1982) 32 Cal.3d
307, disapproved on other grounds in *People v. Barton* (1995) 12 Cal.4th
186, 200-201, " ' "[T]his heat of passion must be such a passion as would
naturally be aroused in the mind of an ordinary reasonable person under the
given facts and circumstances, and ... consequently, no defendant may set up
his own standard of conduct and justify or excuse himself because in fact his
passions were aroused, unless ... the facts and circumstances were sufficient
to arouse the passions of the ordinarily reasonable man.... For the
fundamental of the inquiry is whether or not the defendant's reason was, at the
time of his act, so disturbed or obscured by some passion ... to such an
extent as would render ordinary men of average disposition liable to act rashly

15

or without due deliberation and reflection, and from this passion rather than from judgment." ' " (*Wickersham, supra,* at p. 326, quoting *People v. Valentine* (1946) 28 Cal.2d 121, 139.)

Moreover, provocation may be based on a series of events that occur over a considerable period of time. (*People v. Berry* (1976) 18 Cal.3d 509, 515 ["two-week period of provocatory conduct" by the defendants wife was sufficient to justify an instruction on voluntary manslaughter based on heat of passion]; *People v. Borchers* (1958) 50 Cal.2d 321, 329.)

Any doubt as to the sufficiency of the evidence to support a particlur instruction should be resolved in the defendant's favor. (*People v. Wilson* (1967) 66 Cal.2d 749, 762.)

Here, the prosecution case provided substantial evidence to support a finding that the defendant acted in the heat of passion. The parties had a long relationship that ended bitterly when Webster grew tired of defendant and asked him to leave the apartment they shared. Defendant was out of work at the time and had nowhere to live. As his numerous calls to Webster show, defendant was devastated by the end of the relationship, and angry at Webster for causing him to leave when he had nowhere to go.

Although defendant had limited contact with Webster immediately

16

before the shooting, the jury could reasonably infer that the sudden act of shooting at Webster was borne of the same passion that defendant exhibited in the days, weeks, and months following the break-up of the relationship. Indeed, defendant's passionate and over-wrought response to the dissolution of the romantic relationship appears to be the only motive present for the crime. Given that provocation and passion can be "long-simmering," the court erred in failing to instruct the jury on attempted voluntary manslaughter.

B. The Failure To Instruct On A Defense Theory Of The Case Violates Defendant's Right To Present A Defense Under The Sixth Amendment And The Right Due Process Of Law Under The Fourteenth Amendment; Reversal Is Required.

Defense counsel expressly requested an instruction on the lesser offense of attempted voluntary manslaughter under the Sixth Amendment and the right to due process under the United States Constitution. (RT 407.) The court's failure to instruct on a requested instruction violates due process and the right to present a defense. "The right to have the jury instructed as to defendant's theory of the case is one of those rights 'so basic to a fair trial' that failure to instruct where there is evidence to support the instruction can

17

never be considered harmless error." (*United States v. Escobar de Bright* (9th Cir. 1984) 742 F.2d 1196, 1201; *United States v. Zuniga* (9th Cir. 1993) 6 F.3d 569, 571-572; *United States v. Hairston* (9th Cir. 1995) 64 F.3d 491, 494; see *Mathews v. United States* (1988) 485 U.S. 58, 63 [defendant entitled to instruction as to any recognized defense for which there exists sufficient evidence].)

In two other cases, the Ninth Circuit has rejected a rule of per se reversal and required harmless-error analysis. (See *Duckett v. Godinez* (9th Cir. 1995) 67 F.3d 734 & *Beardslee v. Woodford* (9th Cir. 2002) 358 F.3d 560, 578.) These cases, however, did not involve a complete withdrawal of a defense theory of the case because the theory was communicated to the jury under other instructions. (*Duckett, supra*, 67 F.3d at pp. 744-45 & *Beardslee, supra*, 358 F.3d at pp. 577-579.)

Reversal is required under any standard of prejudice. It is reasonably likely that a properly-instructed jury would have found defendant guilty of less than attempted murder. The shooting was quite obviously directly related to and precipitated by the break-up of a long-term relationship. A reasonable juror could have found that defendant was still acting under the passion of the highly-charged emotions that accompany the unwanted end of a romantic

18

relationship. No other motive appears in the record. The conviction must be reversed.

II.   The Conviction Violates The Due Process Clause Of The Fourteenth Amendment Of The United States Constitution Because The Evidence Is Insufficient To Support The Finding That Defendant Acted With Intent To Kill.

In evaluating the sufficiency of the evidence, a reviewing court first "must resolve the issue in the light of the whole record . . . and second, . . . must judge whether the evidence of each of the essential elements . . . is substantial." (*People v. Brown* (1989) 216 Cal.App.3d 596, 600 (quoting *People v. Barnes* (1986) 42 Cal.3d 284, 303).) "Substantial evidence" of guilt is evidence of "ponderable legal significance . . . reasonable in nature, credible and of solid value." (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (*In re Winship* (1970) 397 U.S. 358, 364.) If no rational trier of fact could have found all the essential elements of the charged crime, beyond a reasonable doubt, the judgment violates due process and cannot stand. (*Jackson v. Virginia* (1979) 443 U.S.

19

307, 319.)

Although the court must view the evidence in a light most favorable to the judgment and presume in support of the judgment the existence of those facts the trier of fact could reasonably deduce from the evidence, it cannot limit its review to the evidence favorable to the respondent, and it cannot affirm a judgment based on speculation or unwarranted inference. (*People v. Johnson, supra,* 26 Cal.3d at p. 576-577 (citations omitted).) When the "proven facts give equal support to two inconsistent inferences, neither is established." (*People v. Brown, supra,* 216 Cal.App.3d at p. 600.)

Penal Code section 187, subdivision (a), states, "Murder is the unlawful killing of a human being ... with malice aforethought." To prove attempted murder, "there must be sufficient evidence of the intent to commit the murder plus a direct but ineffectual act toward its commission." (*People v. Chinchilla* (1997) 52 Cal.App.4th 683, 690.) Because specific intent is a requisite element of an attempted murder charge, a conviction cannot be based upon a finding of implied malice. (*Ibid .*) Therefore, "the evidence must demonstrate a deliberate intention unlawfully to kill a fellow human being." (*Ibid.*) A person who intentionally attempts to kill another does not often declare his state of mind either before, at, or after the moment he shoots

20

at the victim. *(People v. Lashley* (1991) 1 Cal.App .4th 938, 945.) Absent direct evidence, the defendant's intent must be derived from all the circumstances of the attempt, including his actions and words. *(Id.* at pp. 945-946.) Whether the defendant possessed the requisite intent to kill is a question for the trier of fact. *(Id.* at p. 946.)

Here, there is no direct evidence of defendant's state of mind. Erica Smith claimed that defendant said he took two shots at Webster, but she did not testify that defendant said he intended to kill Webster. The circumstantial evidence does not prove beyond a reasonable doubt that defendant intended to kill. No one, not even Webster, saw the shooting. Thus, there is no evidence that the gun was even pointed at Webster. No casings or projectiles were recovered, so there is no evidence that the gun even discharged live ammunition. The record just as easily supports a finding that the gun fired blanks.

In sum, although the record supports a conviction for assault with a firearm, it does not support a conviction for attempted murder. The conviction must be reversed.

21

Conclusion

For the reasons stated above, the conviction must be reversed.

Date: 7/18/2005

Respectfully submitted,

Robert Derham

Attorney for defendant and appellant
Ronald Jackson

Word Count Certificate

I certify that this computer-generated appellant's opening brief is in 14
point Times New Roman and contains 4,253 words.

22

## CERTIFICATE OF SERVICE

I, Robert Derham, am over 18 years of age. My business address is 1010 B Street, Suite 212, San Rafael, CA 94901. I am not a party to this action. On July 19, 2005, I served the:    **Appellant's Opening Brief**

upon the parties and persons listed below by depositing a true copy in a United States mailbox in San Rafael, CA, in a sealed envelope, postage prepaid, and addressed as follows:

Office of the Attorney General
455 Golden Gate Avenue
San Francisco, CA 94102-3664

First District Appellate Program
730 Harrison Street
San Francisco, CA 94107

San Mateo Superior Court
400 County Center
Redwood City, CA 94063

San Mateo District Attorney
400 County Center, 4th Floor
Redwood City, CA 94063

Mr. Ronald D. Jackson
V-70867
San Quentin State Prison
San Quentin, CA 94974

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 19, 2005, in San Rafael, California.

Robert Derham

Filed 3/13/06

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

#### FIRST APPELLATE DISTRICT

#### DIVISION FIVE



MAR 1 3 2006

Court of Appeal - First App. Dist.
DIANA HERBERT
By_____

| | |
|---|---|
| **THE PEOPLE,**<br><br>    **Plaintiff and Respondent,**<br><br>v.<br><br>**RONALD DEAN JACKSON,**<br><br>    **Defendant and Appellant.** | **A109508**<br><br>**(San Mateo County<br>Super. Ct. No. SC057334)** |

Defendant Ronald Dean Jackson appeals from the judgment following his conviction for attempted premeditated murder and other crimes. He contends that the trial court erred in refusing to instruct the jury regarding the lesser included offense of attempted voluntary manslaughter and that the jury's finding that he intended to kill the victim is not supported by substantial evidence. We disagree and affirm.

### PROCEDURAL BACKGROUND

The San Mateo County District Attorney charged defendant with attempted murder (Pen. Code, §§ 187, subd. (a), 664)[1] and alleged premeditation (§ 189) and the personal and intentional discharge of a firearm (§ 12022.53, subd. (c)). The information further charged defendant with one count of assault with a firearm (§ 245, subd. (a)(2)), two counts of stalking (§ 646.9, subds. (b), (c)(2)), one count of violating a protective

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

1

order (§ 166, subd. (c)(4)(1)), and three counts related to defendant's possession of a firearm (§ 12021, subds. (a)(1), (c)(1), (g)(1)).

On February 8, 2005, a jury found defendant guilty as charged, and found the premeditation and firearm use allegations true. Defendant admitted allegations that he was on probation, that he had a prior conviction for stalking, and that he had a prior misdemeanor conviction. The trial court denied probation and imposed an indeterminate term of life with the possibility of parole, imposed a consecutive 20-year term for the intentional discharge of a firearm allegation, and stayed terms on the remaining counts pursuant to section 654.

### FACTUAL BACKGROUND

The victim, Jane Webster, dated defendant for over 10 years, and she lived with him for about eight of those years. Their relationship deteriorated and at the end of 2001 Webster asked defendant to leave her residence. Defendant did not move out and in August 2002 defendant choked Webster during an argument. He left the residence while Webster was on the phone with the police and she sought a restraining order the next day.

During August and September 2002, defendant left numerous voice mail messages for Webster. In mid-November, Webster turned over to the police a tape with recordings of 43 messages left by defendant. Many of the messages were angry and threatening; a number of the messages complained that Webster had taken away his life and left him nowhere to go. One message threatened that he would find Webster and another threatened that "nothing is going to save your ass from me" if Webster invaded defendant's privacy (presumably by going through his mail or belongings at the residence).

In February 2003, Webster saw defendant drive up to her home, then heard pounding on her door. Defendant left numerous voice mail messages that Webster played for the officer who responded to her report of a restraining order violation. In one message, defendant called Webster a "backstabbing bitch." Another message threatened that he would "have to come over for a face-to-face." Another message complained that

2

and Fourteenth Amendments to the United States Constitution.

Defendant was charged with shooting his former girlfriend. There was substantial evidence of a tumultuous and intense personal relationship between the two. A reasonable juror could have inferred from the evidence that the shooting arose out of a heat of passion, and there was no malice aforethought. The court refused to instruct on attempted voluntary manslaughter.

2. Whether the conviction violates due process under the Fourteenth Amendment to the United States Constitution because it is unsupported by substantial evidence. .

## Statement of the Case

An eight-count information filed on October 26, 2004, charged defendant Ronald Jackson with the attempted murder of Jane Webster on June 28, 2004, in violation of Penal Code section 664/187. It was further alleged that the attempted murder was willful, deliberate and premeditated (§ 664), and that defendant personally used a firearm (§ 12022.53, subd. (c)). (CT 2.) In the alternative, the incident was charged as assault with a firearm, in violation of section 245, subdivision (a)(2). It was further alleged as to this count that defendant personally used a firearm within the meaning of

3

section 12022.5. (CT 3.)

In addition, the information charged two counts of stalking Jane Webster, in violation of section 646.9, subdivision (c), one count of violating a stay-away order in violation of section 166, subdivision (c)(4)(1), and three counts of being a felon in possession of a firearm, charged under different subdivisions (§ 12021, subds. (a)(1), (g)(1), & (c)(1). (CT 6-8.)

On February 8, 2005, a jury convicted defendant exactly as charged. (CT 381-394.) The jury also found true the allegation that the attempted murder was willful, deliberate and premeditated, and that defendant personally discharged a firearm in the commission of the attempted murder. (CT 381-394.)

Thereafter, the court sentenced defendant to a term of life with the possibility of parole for attempted murder, plus a consecutive term of 20 years under section 12022.53, subdivision (c). (RT 552; CT 417.) The court stayed punishment on the remaining counts (Counts 2-8) under section 654. (CT 417.) The court imposed a restitution fine of $200 under sections 1202.4 and 1202.45. (CT 417.) Finally, the court awarded pre-sentence credit of 183 actual days plus 27 credit days under section 2933.1 for a total of 210 days. (CT 419.)

4

Defendant filed a timely notice of appeal. (CT 422.)

## Statement of Facts

Defendant adopts the statement of the facts as set forth in the opinion of the Court of Appeal.

## Reasons for Granting Review

I.    Review Should Be Granted Because The Court Erred In Refusing To Instruct On The Lesser-Included Offenses Of Voluntary Manslaughter.

Defense counsel requested that the court instruct the jury on the crime of attempted voluntary manslaughter on the theory that the shooting arose out of a heat of passion generated by the long and tumultuous relation ship between defendant and Jane Webster. (RT 407.) The court denied that request. (RT 407.)

A trial court has a duty to instruct on a lesser included offense when there is evidence that the offense was less than that charged. (*People v. Breverman* (1998) 19 Cal.4th 142, 148-149, 154, 162.) In this context, substantial evidence means evidence from which a reasonable trier of fact could conclude that the lesser offense, and not the greater, was committed. (*Id.* at p. 162.) Attempted voluntary manslaughter is a lesser included offense to the crime of attempted murder. (*People v. Fields* (1996) 13 Cal.4th 289, 304.)

5

Murder is the unlawful killing of a human being with malice aforethought. (*People v. Rios* (2000) 23 Cal.4th 450, 460.) To prove attempted murder, the prosecution must show substantial evidence of the intent to kill and a direct but ineffectual act toward the killing. (*People v. Morales* (1992) 5 Cal.App.4th 917, 925.)

Voluntary manslaughter, in contrast, is the unlawful killing of a human being without malice. (*People v. Rios, supra,* 23 Cal.4th at p. 460.) An unlawful killing is committed without malice if it is committed upon a " 'sudden quarrel or heat of passion,' " or if it is committed in " 'unreasonable self-defense' "--the unreasonable but good faith belief in having to act in self-defense. (*People v. Rios, supra,* 23 Cal.4th at p. 460.) Attempted voluntary manslaughter, like attempted murder, requires an intent to kill. (*People v. Montes* (2003) 112 Cal.App.4th 1543, 1549-1550.)

Heat of passion has both a subjective and an objective component: "The [defendant must] be under the actual influence of a strong passion at the time of the homicide" and heat of passion "requires provocation that is adequate to arouse a reasonable person [to make a homicidal attack]." (*People v. Dixon* (1995) 32 Cal.App.4th 1547, 1552, internal quotation marks omitted; *People v. Waidla* (2000) 22 Cal.4th 690, 740, fn. 17.) In addition, the provocation

6

must be from the victim. (*People v. Lujan* (2001) 92 Cal.App.4th 1389, 1411- 1412; *In Thomas C.* (1986) 183 Cal.App.3d 786, 798.)

"No specific type of provocation is required, and the passion aroused need not be anger or rage, but can be any [v]iolent, intense, high-wrought or enthusiastic emotion [citations] other than revenge [citation]." (*People v. Montes, supra,* 112 Cal.App.4th at p. 1548, internal quotation marks omitted.) As the Supreme Court explained in *People v. Wickersham* (1982) 32 Cal.3d 307, disapproved on other grounds in *People v. Barton* (1995) 12 Cal.4th 186, 200-201, " ' "[T]his heat of passion must be such a passion as would naturally be aroused in the mind of an ordinary reasonable person under the given facts and circumstances, and ... consequently, no defendant may set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused, unless ... the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable man.... For the fundamental of the inquiry is whether or not the defendant's reason was, at the time of his act, so disturbed or obscured by some passion ... to such an extent as would render ordinary men of average disposition liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgment." ' " (*Wickersham, supra,* at p. 326, quoting *People v.*

7

*Valentine* (1946) 28 Cal.2d 121, 139.)

Moreover, provocation may be based on a series of events that occur over a considerable period of time. (*People v. Berry* (1976) 18 Cal.3d 509, 515 ["two-week period of provocatory conduct" by the defendants wife was sufficient to justify an instruction on voluntary manslaughter based on heat of passion]; *People v. Borchers* (1958) 50 Cal.2d 321, 329.)

Any doubt as to the sufficiency of the evidence to support a particular instruction should be resolved in the defendant's favor. (*People v. Wilson* (1967) 66 Cal.2d 749, 762.)

Here, the prosecution case provided substantial evidence to support a finding that the defendant acted in the heat of passion. The parties had a long relationship that ended bitterly when Webster grew tired of defendant and asked him to leave the apartment they shared. Defendant was out of work at the time and had nowhere to live. As his numerous calls to Webster show, defendant was devastated by the end of the relationship, and angry at Webster for causing him to leave when he had nowhere to go.

Although defendant had limited contact with Webster immediately before the shooting, the jury could reasonably infer that the sudden act of shooting at Webster was borne of the same passion that defendant exhibited in the

8

days, weeks, and months following the break-up of the relationship. Indeed, defendant's passionate and over-wrought response to the dissolution of the romantic relationship appears to be the only motive present for the crime. Given that provocation and passion can be "long-simmering," the court erred in failing to instruct the jury on attempted voluntary manslaughter.

Defense counsel expressly requested an instruction on the lesser offense of attempted voluntary manslaughter under the Sixth Amendment and the right to due process under the United States Constitution. (RT 407.) The court's failure to instruct on a requested instruction violates due process and the right to present a defense. "The right to have the jury instructed as to defendant's theory of the case is one of those rights 'so basic to a fair trial' that failure to instruct where there is evidence to support the instruction can never be considered harmless error." (*United States v. Escobar de Bright* (9th Cir. 1984) 742 F.2d 1196, 1201; *United States v. Zuniga* (9th Cir. 1993) 6 F.3d 569, 571-572; *United States v. Hairston* (9th Cir. 1995) 64 F.3d 491, 494; see *Mathews v. United States* (1988) 485 U.S. 58, 63 [defendant entitled to instruction as to any recognized defense for which there exists sufficient evidence].)

In two other cases, the Ninth Circuit has rejected a rule of per se reversal

9

and required harmless-error analysis. (See *Duckett v. Godinez* (9th Cir. 1995)

67 F.3d 734 & *Beardslee v. Woodford* (9th Cir. 2002) 358 F.3d 560, 578.)

These cases, however, did not involve a complete withdrawal of a defense

theory of the case because the theory was communicated to the jury under

other instructions. (*Duckett, supra*, 67 F.3d at pp. 744-45 & *Beardslee,*

*supra*, 358 F.3d at pp. 577-579.)

Reversal is required under any standard of prejudice. It is reasonably

likely that a properly-instructed jury would have found defendant guilty of

less than attempted murder. The shooting was quite obviously directly

related to and precipitated by the break-up of a long-term relationship. A

reasonable juror could have found that defendant was still acting under the

passion of the highly-charged emotions that accompany the unwanted end of

a romantic relationship. No other motive appears in the record. The

conviction must be reversed.

10

II. Review Should Be Granted Because The Conviction Violates The Due Process Clause Of The Fourteenth Amendment Of The United States Constitution; The Evidence Is Insufficient To Support The Finding That Defendant Acted With Intent To Kill.

In evaluating the sufficiency of the evidence, a reviewing court first "must resolve the issue in the light of the whole record . . . and second, . . . must judge whether the evidence of each of the essential elements . . . is substantial." (*People v. Brown* (1989) 216 Cal.App.3d 596, 600 (quoting *People v. Barnes* (1986) 42 Cal.3d 284, 303).) "Substantial evidence" of guilt is evidence of "ponderable legal significance . . . reasonable in nature, credible and of solid value." (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (*In re Winship* (1970) 397 U.S. 358, 364.) If no rational trier of fact could have found all the essential elements of the charged crime, beyond a reasonable doubt, the judgment violates due process and cannot stand. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.)

Although the court must view the evidence in a light most favorable to the judgment and presume in support of the judgment the existence of those facts the trier of fact could reasonably deduce from the evidence, it cannot limit its

11

review to the evidence favorable to the respondent, and it cannot affirm a judgment based on speculation or unwarranted inference. (*People v. Johnson, supra*, 26 Cal.3d at p. 576-577 (citations omitted).) When the "proven facts give equal support to two inconsistent inferences, neither is established." (*People v. Brown, supra*, 216 Cal.App.3d at p. 600.)

Penal Code section 187, subdivision (a), states, "Murder is the unlawful killing of a human being ... with malice aforethought." To prove attempted murder, "there must be sufficient evidence of the intent to commit the murder plus a direct but ineffectual act toward its commission." (*People v. Chinchilla* (1997) 52 Cal.App.4th 683, 690.) Because specific intent is a requisite element of an attempted murder charge, a conviction cannot be based upon a finding of implied malice. (*Ibid .*) Therefore, "the evidence must demonstrate a deliberate intention unlawfully to kill a fellow human being." (*Ibid.*) A person who intentionally attempts to kill another does not often declare his state of mind either before, at, or after the moment he shoots at the victim. (*People v. Lashley* (1991) 1 Cal.App .4th 938, 945.) Absent direct evidence, the defendant's intent must be derived from all the circumstances of the attempt, including his actions and words. (*Id.* at pp. 945-946.) Whether the defendant possessed the requisite intent to kill is a

12

question for the trier of fact. (*Id.* at p. 946.)

Here, there is no direct evidence of defendant's state of mind. Erica Smith claimed that defendant said he took two shots at Webster, but she did not testify that defendant said he intended to kill Webster. The circumstantial evidence does not prove beyond a reasonable doubt that defendant intended to kill. No one, not even Webster, saw the shooting. Thus, there is no evidence that the gun was even pointed at Webster. No casings or projectiles were recovered, so there is no evidence that the gun even discharged live ammunition. The record just as easily supports a finding that the gun fired blanks.

In sum, although the record supports a conviction for assault with a firearm, it does not support a conviction for attempted murder. The conviction must be reversed.

13

## Conclusion

For the foregoing reasons, review should be granted.

Dated:  4 - 12 - 2006

Respectfully submitted,

Robert Derham

Attorney for defendant and
appellant

## WORD COUNT CERTIFICATE

This petition for review is computer generated in 14 point font Times New
Roman and contains 3,045 words.

14

## IN THE SUPREME COURT OF THE

## STATE OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | No. |
| Plaintiff and respondent, | Court of Appeal No. A109508 |
| v. | |
| RONALD D. JACKSON, | |
| Defendant and appellant. | |

## PETITION FOR REVIEW

Appeal From The Judgment Of The Superior Court
Of The State Of California, County Of San Mateo
No. SC57334

Honorable Barbara J. Mallach, Judge

Robert Derham, SBN 99600
Attorney at Law
1010 B Street, Suite 212
San Rafael, CA 94901
Tel: 415-485-2945
Email: rhdlaw@sbcglobal.net

Attorney for defendant and
appellant

## IN THE SUPREME COURT OF THE

## STATE OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | ) ) |
| | ) |
| Plaintiff and respondent, | ) |
| | ) |
| v. | ) |
| | ) |
| RONALD D. JACKSON, | ) |
| | ) |
| Defendant and appellant. | ) |
| | ) |

No.

Court of Appeal
No. A109508

To the Honorable Chief Justice Ronald George, Chief Justice of the California Supreme Court, and to the Associate Justices:

Defendant Ronald Jackson petitions for review from the unpublished opinion of the Court of Appeal, First Appellate District, Division Five, filed on March 13, 2006, affirming in full the judgment of the superior court. The written decision of the Court of Appeal is attached to this petition.

### QUESTIONS PRESENTED

1. Whether the trial court's refusal to instruct the jury on attempted voluntary manslaughter violated defendant's right to present a defense and to have the jury instructed on his theory of the case as guaranteed by the Sixth

2

and Fourteenth Amendments to the United States Constitution.

Defendant was charged with shooting his former girlfriend. There was substantial evidence of a tumultuous and intense personal relationship between the two. A reasonable juror could have inferred from the evidence that the shooting arose out of a heat of passion, and there was no malice aforethought. The court refused to instruct on attempted voluntary manslaughter.

2. Whether the conviction violates due process under the Fourteenth Amendment to the United States Constitution because it is unsupported by substantial evidence. .

### Statement of the Case

An eight-count information filed on October 26, 2004, charged defendant Ronald Jackson with the attempted murder of Jane Webster on June 28, 2004, in violation of Penal Code section 664/187. It was further alleged that the attempted murder was willful, deliberate and premeditated (§ 664), and that defendant personally used a firearm (§ 12022.53, subd. (c)). (CT 2.) In the alternative, the incident was charged as assault with a firearm, in violation of section 245, subdivision (a)(2). It was further alleged as to this count that defendant personally used a firearm within the meaning of

3

section 12022.5. (CT 3.)

In addition, the information charged two counts of stalking Jane Webster, in violation of section 646.9, subdivision (c), one count of violating a stay-away order in violation of section 166, subdivision (c)(4)(1), and three counts of being a felon in possession of a firearm, charged under different subdivisions (§ 12021, subds. (a)(1), (g)(1), & (c)(1). (CT 6-8.)

On February 8, 2005, a jury convicted defendant exactly as charged. (CT 381-394.) The jury also found true the allegation that the attempted murder was willful, deliberate and premeditated, and that defendant personally discharged a firearm in the commission of the attempted murder. (CT 381-394.)

Thereafter, the court sentenced defendant to a term of life with the possibility of parole for attempted murder, plus a consecutive term of 20 years under section 12022.53, subdivision (c). (RT 552; CT 417.) The court stayed punishment on the remaining counts (Counts 2-8) under section 654. (CT 417.) The court imposed a restitution fine of $200 under sections 1202.4 and 1202.45. (CT 417.) Finally, the court awarded pre-sentence credit of 183 actual days plus 27 credit days under section 2933.1 for a total of 210 days. (CT 419.)

4

Defendant filed a timely notice of appeal. (CT 422.)

## Statement of Facts

Defendant adopts the statement of the facts as set forth in the opinion of the Court of Appeal.

## Reasons for Granting Review

I.    Review Should Be Granted Because The Court Erred In Refusing To Instruct On The Lesser-Included Offenses Of Voluntary Manslaughter.

Defense counsel requested that the court instruct the jury on the crime of attempted voluntary manslaughter on the theory that the shooting arose out of a heat of passion generated by the long and tumultuous relation ship between defendant and Jane Webster. (RT 407.) The court denied that request. (RT 407.)

A trial court has a duty to instruct on a lesser included offense when there is evidence that the offense was less than that charged. (*People v. Breverman* (1998) 19 Cal.4th 142, 148-149, 154, 162.) In this context, substantial evidence means evidence from which a reasonable trier of fact could conclude that the lesser offense, and not the greater, was committed. (*Id.* at p. 162.) Attempted voluntary manslaughter is a lesser included offense to the crime of attempted murder. (*People v. Fields* (1996) 13 Cal.4th 289, 304.)

5

Murder is the unlawful killing of a human being with malice aforethought. (*People v. Rios* (2000) 23 Cal.4th 450, 460.) To prove attempted murder, the prosecution must show substantial evidence of the intent to kill and a direct but ineffectual act toward the killing. (*People v. Morales* (1992) 5 Cal.App.4th 917, 925.)

Voluntary manslaughter, in contrast, is the unlawful killing of a human being without malice. (*People v. Rios, supra,* 23 Cal.4th at p. 460.) An unlawful killing is committed without malice if it is committed upon a " 'sudden quarrel or heat of passion,' " or if it is committed in " 'unreasonable self-defense' "--the unreasonable but good faith belief in having to act in self-defense. (*People v. Rios, supra,* 23 Cal.4th at p. 460.) Attempted voluntary manslaughter, like attempted murder, requires an intent to kill. (*People v. Montes* (2003) 112 Cal.App.4th 1543, 1549-1550.)

Heat of passion has both a subjective and an objective component: "The [defendant must] be under the actual influence of a strong passion at the time of the homicide" and heat of passion "requires provocation that is adequate to arouse a reasonable person [to make a homicidal attack]." (*People v. Dixon* (1995) 32 Cal.App.4th 1547, 1552, internal quotation marks omitted; *People v. Waidla* (2000) 22 Cal.4th 690, 740, fn. 17.) In addition, the provocation

6

must be from the victim. (*People v. Lujan* (2001) 92 Cal.App.4th 1389, 1411- 1412; *In Thomas C.* (1986) 183 Cal.App.3d 786, 798.)

"No specific type of provocation is required, and the passion aroused need not be anger or rage, but can be any [v]iolent, intense, high-wrought or enthusiastic emotion [citations] other than revenge [citation]." (*People v. Montes, supra,* 112 Cal.App.4th at p. 1548, internal quotation marks omitted.) As the Supreme Court explained in *People v. Wickersham* (1982) 32 Cal.3d 307, disapproved on other grounds in *People v. Barton* (1995) 12 Cal.4th 186, 200-201, " ' "[T]his heat of passion must be such a passion as would naturally be aroused in the mind of an ordinary reasonable person under the given facts and circumstances, and ... consequently, no defendant may set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused, unless ... the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable man.... For the fundamental of the inquiry is whether or not the defendant's reason was, at the time of his act, so disturbed or obscured by some passion ... to such an extent as would render ordinary men of average disposition liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgment." ' " (*Wickersham, supra,* at p. 326, quoting *People v.*

7

*Valentine* (1946) 28 Cal.2d 121, 139.)

Moreover, provocation may be based on a series of events that occur over a considerable period of time. (*People v. Berry* (1976) 18 Cal.3d 509, 515 ["two-week period of provocatory conduct" by the defendants wife was sufficient to justify an instruction on voluntary manslaughter based on heat of passion]; *People v. Borchers* (1958) 50 Cal.2d 321, 329.)

Any doubt as to the sufficiency of the evidence to support a particular instruction should be resolved in the defendant's favor. (*People v. Wilson* (1967) 66 Cal.2d 749, 762.)

Here, the prosecution case provided substantial evidence to support a finding that the defendant acted in the heat of passion. The parties had a long relationship that ended bitterly when Webster grew tired of defendant and asked him to leave the apartment they shared. Defendant was out of work at the time and had nowhere to live. As his numerous calls to Webster show, defendant was devastated by the end of the relationship, and angry at Webster for causing him to leave when he had nowhere to go.

Although defendant had limited contact with Webster immediately before the shooting, the jury could reasonably infer that the sudden act of shooting at Webster was borne of the same passion that defendant exhibited in the

8

days, weeks, and months following the break-up of the relationship. Indeed,

defendant's passionate and over-wrought response to the dissolution of the

romantic relationship appears to be the only motive present for the crime.

Given that provocation and passion can be "long-simmering," the court erred

in failing to instruct the jury on attempted voluntary manslaughter.

Defense counsel expressly requested an instruction on the lesser offense

of attempted voluntary manslaughter under the Sixth Amendment and the

right to due process under the United States Constitution. (RT 407.) The

court's failure to instruct on a requested instruction violates due process and

the right to present a defense. "The right to have the jury instructed as to

defendant's theory of the case is one of those rights 'so basic to a fair trial'

that failure to instruct where there is evidence to support the instruction can

never be considered harmless error." (*United States v. Escobar de Bright* (9th

Cir. 1984) 742 F.2d 1196, 1201; *United States v. Zuniga* (9th Cir. 1993) 6

F.3d 569, 571-572; *United States v. Hairston* (9th Cir. 1995) 64 F.3d 491,

494; see *Mathews v. United States* (1988) 485 U.S. 58, 63 [defendant entitled

to instruction as to any recognized defense for which there exists sufficient

evidence].)

In two other cases, the Ninth Circuit has rejected a rule of per se reversal

9

and required harmless-error analysis. (See *Duckett v. Godinez* (9th Cir. 1995) 67 F.3d 734 & *Beardslee v. Woodford* (9th Cir. 2002) 358 F.3d 560, 578.) These cases, however, did not involve a complete withdrawal of a defense theory of the case because the theory was communicated to the jury under other instructions. (*Duckett, supra*, 67 F.3d at pp. 744-45 & *Beardslee, supra*, 358 F.3d at pp. 577-579.)

Reversal is required under any standard of prejudice. It is reasonably likely that a properly-instructed jury would have found defendant guilty of less than attempted murder. The shooting was quite obviously directly related to and precipitated by the break-up of a long-term relationship. A reasonable juror could have found that defendant was still acting under the passion of the highly-charged emotions that accompany the unwanted end of a romantic relationship. No other motive appears in the record. The conviction must be reversed.

10

II. Review Should Be Granted Because The Conviction Violates The Due
Process Clause Of The Fourteenth Amendment Of The United States
Constitution; The Evidence Is Insufficient To Support The Finding That
Defendant Acted With Intent To Kill.

In evaluating the sufficiency of the evidence, a reviewing court first "must

resolve the issue in the light of the whole record . . . and second, . . . must

judge whether the evidence of each of the essential elements . . . is

substantial." (*People v. Brown* (1989) 216 Cal.App.3d 596, 600 (quoting

*People v. Barnes* (1986) 42 Cal.3d 284, 303).) "Substantial evidence" of guilt

is evidence of "ponderable legal significance . . . reasonable in nature,

credible and of solid value." (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)

The Due Process Clause "protects the accused against conviction except

upon proof beyond a reasonable doubt of every fact necessary to constitute

the crime with which he is charged." (*In re Winship* (1970) 397 U.S. 358,

364.) If no rational trier of fact could have found all the essential elements of

the charged crime, beyond a reasonable doubt, the judgment violates due

process and cannot stand. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.)

Although the court must view the evidence in a light most favorable to the

judgment and presume in support of the judgment the existence of those facts

the trier of fact could reasonably deduce from the evidence, it cannot limit its

11

review to the evidence favorable to the respondent, and it cannot affirm a

judgment based on speculation or unwarranted inference. (*People v.

Johnson, supra*, 26 Cal.3d at p. 576-577 (citations omitted).) When the

"proven facts give equal support to two inconsistent inferences, neither is

established." (*People v. Brown, supra*, 216 Cal.App.3d at p. 600.)

Penal Code section 187, subdivision (a), states, "Murder is the unlawful

killing of a human being ... with malice aforethought." To prove attempted

murder, "there must be sufficient evidence of the intent to commit the murder

plus a direct but ineffectual act toward its commission." (*People v.

Chinchilla* (1997) 52 Cal.App.4th 683, 690.) Because specific intent is a

requisite element of an attempted murder charge, a conviction cannot be

based upon a finding of implied malice. (*Ibid* .) Therefore, "the evidence

must demonstrate a deliberate intention unlawfully to kill a fellow human

being." (*Ibid.*) A person who intentionally attempts to kill another does not

often declare his state of mind either before, at, or after the moment he shoots

at the victim. (*People v. Lashley* (1991) 1 Cal.App .4th 938, 945.) Absent

direct evidence, the defendant's intent must be derived from all the

circumstances of the attempt, including his actions and words. (*Id.* at pp.

945-946.) Whether the defendant possessed the requisite intent to kill is a

12

question for the trier of fact. (*Id.* at p. 946.)

Here, there is no direct evidence of defendant's state of mind. Erica Smith claimed that defendant said he took two shots at Webster, but she did not testify that defendant said he intended to kill Webster. The circumstantial evidence does not prove beyond a reasonable doubt that defendant intended to kill. No one, not even Webster, saw the shooting. Thus, there is no evidence that the gun was even pointed at Webster. No casings or projectiles were recovered, so there is no evidence that the gun even discharged live ammunition. The record just as easily supports a finding that the gun fired blanks.

In sum, although the record supports a conviction for assault with a firearm, it does not support a conviction for attempted murder. The conviction must be reversed.

13

## Conclusion

For the foregoing reasons, review should be granted.


Dated: ___4-12-2006___


                                    Respectfully submitted,

                                    _____

                                    Robert Derham

                                    Attorney for defendant and
                                    appellant


## WORD COUNT CERTIFICATE

This petition for review is computer generated in 14 point font Times New Roman and contains 3,045 words.


14

## CERTIFICATE OF SERVICE

I, Robert Derham, am over 18 years of age. My business address is 1010 B Street, Suite 212, San Rafael, CA 94901. I am not a party to this action. On April 12, 2006, I served the **Petition for Review** upon the parties and persons listed below by depositing a true copy in a United States mailbox in San Rafael, CA, in a sealed envelope, postage prepaid, and addressed as follows:

Office of the Attorney General
455 Golden Gate Avenue
San Francisco, CA 94102-3664

First District Appellate Program
730 Harrison Street
San Francisco, CA 94107

Mr. Ronald D. Jackson
V-70867
State Prison
PO Box 3030
Susanville, CA 96127-3030

Court of Appeal
350 McAllister Street
San Francisco, CA 94102-3600
 San Mateo District Attorney
400 County Center, 4th Floor
Redwood City, CA 94063

San Mateo Superior Court
400 County Center
Redwood City, CA 94063

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 12, 2006, in San Rafael, California.

Robert Derham

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION FIVE

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA,**<br><br>Plaintiff and Respondent,<br><br>v.<br><br>**RONALD DEAN JACKSON,**<br><br>Defendant and Appellant. | A109508 |

## STATEMENT OF THE CASE

By information the San Mateo County District Attorney charged appellant with attempted premeditated murder (Pen. Code, §§ 187, subd. (a), 189, 664) and alleged the intentional discharge of a firearm (Pen. Code, § 12022.53, subd. (c)), and the infliction of great bodily injury (Pen. Code, § 1192.7, subd. (c)(8)). (CT 1-2.) The information further charged appellant with one count of assault with a firearm (Pen. Code, § 245, subd. (a)(2)), two counts of stalking (Pen. Code, § 646.9, subds. (b), (c)(2)), one count of violating a protective court order (Pen. Code, § 166, subd. (c)(4)(1)), and alleged with respect to the four counts the personal use of a firearm (Pen. Code, § 12022.5, subd. (a)), the infliction of great bodily injury (Pen. Code, § 1192.7, subd. (c)(8)), and the probation status of appellant at the time of the offenses (Pen. Code, § 1203, subd. (k)). (CT 2-8.) The information also charged three counts of unlawful possession of a firearm (Pen. Code, § 12021, subds. (a)(1), (g)(1), (c)(1)). (CT 2-9.)

On February 8, 2005, the jury returned verdicts finding appellant guilty as charged and finding true all weapon-use and great bodily injury enhancements. (CT 144-145, 381-394.) Appellant admitted allegations that he was on probation, that he had a prior conviction of stalking, and that he had a

1

prior misdemeanor conviction. (RT 539-544.)

On March 8, 2005, the trial court denied probation and imposed an indeterminate term of life with the possibility of parole, a consecutive 20-year term for the intentional discharge of a weapon allegation, and stayed terms on the remaining counts pursuant to Penal Code section 654. (CT 413-414, 417-419.)

Appellant timely appealed. (CT 422.)

## STATEMENT OF FACTS

### Prior Acts Of Domestic Violence

On August 7, 2002, San Mateo Police Officer Bill Schroeder was dispatched to investigate a domestic violence call. (RT 86.) Jane Webster reported the violence and was receptive to obtaining a temporary restraining order. (RT 88-89.) The next day, Officer Schroeder returned to Webster's residence and observed appellant being served with the restraining order. (RT 90-91.) Appellant used profanity and seemed "upset." (RT 92; RT 122 ["He was extremely hostile and verbally belligerent."].) Appellant reported that Webster had been the aggressor and pushed him, which caused him to grab her neck. (RT 93-94.) On September 23, 2002, Webster said that she did not want charges brought against appellant. (RT 95.)

On November 19, 2002, Officer Schroeder received from Webster 43 voicemail recordings left by appellant. (RT 96-97.) The first message warned Webster that appellant would find her. (RT 98.) The second message warned Webster that her acts were "piss[ing]" appellant off. (RT 99.) The third message reported that Webster's acts "screw" appellant. (RT 99.) The fourth message reported that appellant was now "in the street" with "no where to go." (RT 100.) The fifth message asked Webster for help. (RT 101.) The sixth message asked Webster to call appellant and complained that his "whole life"

2

had been taken away. (RT 102.) The seventh message complained that Webster had taken appellant's "personal stuff" and that he had "no where to go." (RT 104.) The eighth message warned that appellant would continue to call Webster "at work" and that Webster's choices were to send appellant to jail or give his life back. (RT 105.) The ninth message warned that appellant would start to call for Webster at her parent's home. (RT 105.) The tenth message complained that this "is fucking ridiculous" and asked to get into the house to get to his mail and complained about the restriction against contacting her. (RT 106-107.) In the eleventh message appellant denied that he possessed guns and asked that she "cut this shit out." (RT 107-208.) The twelfth message complained that Webster cut off appellant from everything that he owned, and warned that he would be seeing her in court. (RT 108.) The thirteenth message threatened Webster that "nothing is going to save your ass from me" if Webster invaded appellant's privacy. (RT 109.) The fourteenth message complained that appellant needed his clothes, his "paperwork," and his "personal things" out of the house. (RT 110.)

On February 19, 2003, Officer Roberto Gonzaelez responded to a report of a restraining order violation. (RT 230.) Webster played voice mail messages from a male identifying himself as "Ron." (RT 231-232.) One message called Webster a "backstabbing bitch." (RT 233.) Another message asked to retrieve mail before he got "locked up this week." (RT 234.) Another message threatened that he would "'have to come over for a face-to-face.'" (RT 235.) Another message complained that it was "'not okay, Jane, to end the relationship by putting me in jail.'" (RT 235.) In another message, appellant asked to talk to Webster because he was "'in serious love'" and complained about "'that hanging up shit has got to go.'" (RT 235-236.) A February 19 message asked Webster if she was proud of herself for putting appellant in jail, and threatened, "'You are not getting away with this, believe me. You are not

3

getting away with it. I don't give a fuck who you tell, you are not getting away with this.'" (RT 236.) A later February 19 message said, "'I expect a call from you.'" (RT 236.)

### June 28, 2004, Assault

On June 28, 2004, Anne Marie Cota was Webster's neighbor. (RT 137-138, 142.) At about 5:00 p.m., Cota heard the sound of "TV gunshots" or "rocks being thrown on a door" that echoed. (RT 142.) The noises were "loud" and "sharp." (RT 144.) One minute later, Cota went out and saw Webster on the ground, people standing about, and someone "yelling to call 911." (RT 144-145.) Webster was on her stomach with her legs spread out at the top of the stairway. (RT 146-147.) Webster was "hysterical." (RT 147.)

Greg Farron was visiting his brother in the same condominium complex when he heard "two loud reports" he assumed were "gunshots." (RT 157-158, 161.) Farron described himself as an "outdoors man" who had owned firearms and had discharged them "many times." (RT 158.) Farron told his brother about the gunfire. (RT 159.) Immediately after the gunfire, Farron "looked out on the patio" and saw Webster on the sidewalk bleeding and in the same general area that the gunfire came from. (RT 160.) About two hours before, Farron had heard the sound of fireworks outside. (RT 159.)

Gabriela Nocito heard "two loud bangs and a scream" coming from a nearby unit. (RT 178.) Nocito thought the bangs "were gunshots." (RT 179.) Nocito's had in the past heard gunshots. (RT 179.) Nocito opened the front door and looked out. (RT 183.) Nocito saw Webster, lying down, on the top of the stairs leading outside. (RT 184.) Webster was crying and asking that someone call the police. (RT 185.)

Deputy Sheriff Dennis Woollum was dispatched to the scene to investigate a possible shots fired report. (RT 189-190.) No bullet holes or shell

4

casings were found. (RT 191, 272.)

On an early evening in late June 2004, appellant contacted Brett Banbury at Branbury's home. (RT 207-208.) Appellant was "nervous," "agitated," and had a "deep scrape" on his leg. (RT 211, 214, 217.) Appellant said things were worse for him now than they were before. (RT 215.) Appellant complained that Webster had "ruined his life." (RT 223.) Appellant asked to spend the night and Branbury's house mate, Jennifer Bright, agreed. (RT 216.)

Jennifer Bright told appellant that he had to leave the residence in the morning. (RT 226.) The next morning, appellant asked to spend the day at the residence and Bright refused. (RT 227.) In the following 20 minutes, appellant tried to convince Bright to let him stay. (RT 228.) Appellant was "insistent." (RT 228.) Bright made sure appellant left the apartment before she left for work. (RT 228-229.)

On June 29, 2004, at 9:00 a.m., Erica Smith saw her uncle, appellant, arrive at her home. (RT 252-253.) He appeared "very exhausted" and had a cut on his calf. (RT 253, 257.) Appellant asked to stay. (RT 254.) Erica's father refused to allow appellant to stay. (RT 256.) Appellant agreed to accompany Erica on her errands. (RT 257.) Later, Erica dropped him off at a bus stop in Menlo Park. (RT 259.) As appellant left her car, he was "pretty sad." (RT 260.) Appellant cried and said that "this is probably the last time I would see him, and that he had done something bad." (RT 261.) Appellant said that "he visited Jane and Aunt Jane, and he doesn't know if she's dead or alive, he took two shots at her." (RT 261.) Shocked, Erica offered to take appellant to talk to somebody. (RT 262.) Appellant refused and said, "I am going back in there," and he got out of the car. (RT 262.) Later, Erica's family called the police to report the incident. (RT 263.)

5

### Jane Webster's Testimony

Jane Webster testified that she dated appellant for about 10 years of the 15 years of their acquaintance. (RT 286.) Appellant resided with Webster about eight years. (RT 287.) Their relationship deteriorated as appellant threatened her and became "scary." (RT 289.) He was unemployed and promised to leave when he got on his feet financially. (RT 289.) During the 2001 Christmas holidays, Webster insisted that appellant leave her residence. (RT 289.) Appellant stood 6 feet 4 inches tall, and weighed about 220 pounds. (RT 290.) Appellant yelled at Webster, pinned her, and threw things at her. (RT 290-291.) Webster felt threatened, scared, and tried not to set him off. (RT 291.)

In August 2002, the couple argued over appellant breaking a shower glass door he shattered while trying to caulk the tiling. (RT 292.) The argument became physical when appellant choked Webster before throwing her down in the hallway. (RT 293.) Appellant took the phone from Webster, took her keys and ran out of the home. (RT 294.) Later, appellant left the residence while Webster was on the phone with the police. (RT 295-296.) The next day, Webster petitioned for a restraining order. (RT 297.) Later, sheriff deputies reported the order had been served on appellant. (RT 298.) While Webster stayed away from her residence, appellant left voice mail messages on her answering machine. (RT 298-299.) At some point, the recorded messages were turned over to investigating officers. (RT 301.) Criminal proceedings were initiated against appellant for violating the restraining order, but the phone calls to Webster continued. (RT 302.) Webster later received a three-year restraining order. (RT 303-304.)

By January 2003, Webster, still scared, was in hiding. (RT 305.) Later, Webster turned over more phone recordings that became the basis for another hearing on alleged violations of the restraining order. (RT 306.) In

6

February 2003, Webster saw appellant drive up to her home then heard pounding on her front door. (RT 307.) In June 2003, appellant was convicted of violating the restraining order. (RT 309.) Over the ensuing nine months, Webster received just two phone calls from appellant. (RT 310.)

On June 28, 2004, Webster came home from work. (RT 312.) At about 5:30 p.m., Webster entered a stairwell. (RT 318.) Webster heard appellant call her name. (RT 318.) Webster turned to glance as she ran up the stairs. (RT 319.) Webster saw appellant. (RT 319.) Webster heard two pops as she reached the top of the landing. (RT 322-323.) Webster next saw the door into the stairwell open and close. (RT 321.) Webster fell and injured her elbow and right hand. (RT 324.) Webster screamed that somebody should call 911. (RT 324.)

By stipulation, the parties informed the jury the following: on August 29, 2002, a restraining order issued directing appellant not to "contact, molest, harass, attack, strike, threaten, sexually assault, batter, telephone, send any messages to, follow, stalk, destroy the personal property of, disturb the peace, keep under surveillance or block movement in public places or thoroughfares of Jane Webster" and he was ordered to stay 100 yards away from Webster's residence and not to own or possess firearms; on January 23, 2003, appellant was convicted of misdemeanor battery on Webster, and misdemeanor stalking of Webster; on June 16, 2003, appellant was convicted of felony stalking of Webster; on July 29, 2003, a trial court placed appellant on felony probation conditioned on appellant not contacting Webster. (RT 345-347.)

## Defense Case

Appellant admitted assaulting Webster on August 7, 2002. (RT 349.) He was served with a restraining order the following day. (RT 349.) On January 23, 3003, appellant pleaded guilty to misdemeanor battery and stalking.

7

(RT 350.) In February 2003, appellant drove by Webster's residence and knocked on her door. (RT 350.) Appellant pleaded guilty to stalking Webster as a result of that contact. (RT 350.)

On June 28, 2004, appellant traveled to see his niece. (RT 351.) He did not want to press the issue of staying with his niece because his brother-in-law was ill, so appellant went to Brett Branbury's home. (RT 351.) Along the way, appellant injured his leg at Central Park as he scaled a fence. (RT 353-354.) Appellant denied telling his niece that he had been at Webster's residence the night before. (RT 355.) Appellant had been upset while talking with his niece over the treatment received from his family and about the status of his probation grant. (RT 355-356.) Appellant may have told his niece that he did not care if Webster were alive or dead. (RT 357.) Appellant told his niece that she may never see him again because he intended to avoid the police and the probation office by absconding. (RT 358.) Appellant told Branbury that his life was worse and was referring to his failures to visit his probation officer. (RT 356.) Appellant got out of jail in September 2003, and he did not have any further contact with Webster through June 2004. (RT 357.) Appellant had "pretty much" let it go by then. (RT 357.) Appellant denied owning or possessing a gun. (RT 359.) Appellant denied going to Webster's residence on June 28, 2004, or discharging a firearm at her. (RT 359.)

8

## ARGUMENT

### I.

### ATTEMPTED VOLUNTARY MANSLAUGHTER INSTRUCTIONS WERE NOT REQUIRED BY THE EVIDENCE

Defense counsel asked for instructions on the lesser offense of attempted voluntary manslaughter in the heat of passion. (RT 407.) The trial court found the lesser-included offense unsupported. (RT 407 ["the evidence, as I recall it, was that the Defendant had not seen Ms. Webster and at least in many months, at least if not longer, and before this incident occur [*sic*], and so it was hard for the court to understand how there would be a provocation or the heat of passion or anything of those things that you see in typical manslaughter case since they had had no contact, as I understand it, for many months before this occurred so . . . and there was no discussion before this occurred from the evidence."].) Appellant argues that the evidence showed "long-simmering" heat of passion and that the trial court's error denied him his Sixth Amendment right to due process. (AOB at p. 17.) Not so.

"'[A] trial court must instruct on lesser included offenses, even in the absence of a request, whenever there is substantial evidence raising a question as to whether all of the elements of the charged offense are present.' [Citation.] Conversely, even on request, a trial judge has no duty to instruct on any lesser offense unless there is substantial evidence to support such instruction. [Citation.]  "'Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." [Citation.]' [Citation.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1008.)

"An intentional, unlawful homicide is 'upon a sudden quarrel or heat of passion' [citation], and is thus voluntary manslaughter [citation], if the

9

killer's passion aroused by a 'provocation' sufficient to cause an "'ordinary [person] of average disposition . . . to act rashly or without due deliberation and reflection, and from this passion rather than from judgment.'" [Citations.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 163.) "The test of adequate provocation is an objective one . . . . (*People v. Lee* (1999) 20 Cal.4th 47, 60.)" "'No defendant may set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused, unless further the jury believe that the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable man.'" [Citation.]" (*People v. Cole* (2004) 33 Cal.4th 1158, 1215.)

The trial court correctly found no substantial evidence of adequate provocation for a sudden-heat-of-passion shooting of Webster. Appellant testified that he got out of jail in September 2003, and did not have further contact with Webster through June 2004. (RT 357.) Appellant testified that he had "pretty much" let it go by then. (RT 357.) Webster testified that in the nine months preceding the aggravated assault, appellant's contact with her was limited to just two phone calls from him. (RT 310.) Further, the manner of the shooting indicated "a calculated design to ensure death rather than an unconsidered explosion of violence. [Citation.]" (*People v. Horning* (2004) 34 Cal.4th 871, 902-903.) After things had cooled over the preceding nine months, appellant struck after Webster arrived home from work. Appellant lay in wait for Webster in an enclosed condominium stairway. When she entered the stairway, he called out her name and in that enclosed stairway, he shot at her twice as she attempted to flee. Appellant told his niece that he had done something bad, that he took two shots at Webster, and he did not know if she was dead or alive.

There was no continuous provocation culminating in a heated argument. The record demonstrated a calculated act of revenge, not a

10

passionate response to an immediate provocation. These circumstances were insufficient to arouse the passion of an ordinarily reasonable person to the point where the person would "act rashly or without due deliberation and reflection, and from this passion rather than from judgment." (*People v. Breverman, supra,* 19 Cal.4th at p. 163, internal quotations omitted.)

Assuming, arguendo, instructional error, the error was not prejudicial. The California Supreme Court has held the failure of a trial court to instruct on a lesser included offense (in a noncapital case) does not violate the United States Constitution and constitutes mere trial error under California law, subject to the harmless error standard of prejudice set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Breverman, supra,* 19 Cal.4th 142, 165, 176-178.)

Here, the jury returned a verdict of attempted premeditated murder and found the intentional discharge of a firearm allegation true. (Pen. Code, §§ 664, 187, subd. (a), 12022.53, subd. (c).) Thus, the jury found that appellant had the requisite express malice or specific intent to kill Webster at the time he intentionally discharged his weapon. Further, the trial court instructed the jury with CALJIC No. 8.67, which required the jury to find appellant had not acted in the heat of passion in order to find deliberation and premeditation. (CT 202-203.) Thus, the jury necessarily resolved the factual question of attempted voluntary manslaughter adversely to appellant under other, properly given instructions. There is no reasonable probability the verdict would have been more favorable to appellant had the trial court instructed on attempted voluntary manslaughter. (*People v. Sedeno* (1974) 10 Cal.3d 703, 721; *People v. Breverman, supra,* 19 Cal.4th at p. 178.)

11

## II.

## SUBSTANTIAL EVIDENCE SUPPORTS THE ATTEMPTED PREMEDITATED MURDER COUNT

Appellant asserts that there was no substantial evidence of appellant's intent to kill Webster to support count one. Not so.

A judgment of conviction must be reversed if the record does not contain substantial evidence to support it. (*People v. Towler* (1982) 31 Cal.3d 105, 117-118; *People v. Johnson* (1980) 26 Cal.3d 557, 576.) *People v. Cuevas* (1995) 12 Cal.4th 252 described the substantial evidence standard of review set forth in *Johnson*:

> Under this standard, the court "must view the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] The focus of the substantial evidence test is on the whole record of evidence presented to the trier of fact, rather than on "'isolated bits of evidence.'" [Citation.]

(*People v. Cuevas, supra,* 12 Cal.4th at pp. 260-261.)

The same standard of review applies whether the conviction is based solely or primarily on circumstantial evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) In applying the substantial evidence standard of review, "an appellate court may not substitute its judgment for that of the jury. If the circumstances reasonably justify the jury's findings, the reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding. [Citations.]" (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139.)

An attempted murder was committed with deliberation and premeditation "if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse. [Citation.] However, the requisite

12

reflection need not span a specific or extended period of time. ""'Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . .""" [Citation.] [¶] Appellate courts typically rely on three kinds of evidence in resolving the question raised here: motive, planning activity, and manner of killing. [Citations.] These factors need not be present in any particular combination to find substantial evidence of premeditation and deliberation. [Citation.] However, 'when the record discloses evidence in all three categories, the verdict generally will be sustained.' [Citation.]" (*People v. Stitely* (2005) 35 Cal.4th 514, 543.)

Here, the record discloses that appellant had a motive to kill Webster. His numerous telephone calls warned that he would find her and that he was "piss[ed]." (RT 98-99.) Appellant blamed Webster for cutting off him from everything he owned. (RT 108.) Appellant warned Webster that "nothing is going to save your ass from me" if Webster invaded appellant's privacy. (RT 109.) Appellant called Webster a "backstabbing bitch" and warned that he would have to come over "for a face-to-face." (RT 235.) Appellant threatened that Webster was "not getting away with this, believe me. You are not getting away with it." (RT 236.)

The record also discloses planning activity. Appellant armed himself, struck after months of quiet had passed, and waited until Webster came home from a long day at work. Appellant loaded his weapon, and waited in a confined stairway for Webster. When Webster arrived, he caught her attention before firing. Thereafter, he slipped away and hid out among close friends and relatives.

Further, the manner of the shooting indicates "a calculated design to ensure death rather than an unconsidered explosion of violence. [Citation.]" (*People v. Horning, supra,* 34 Cal.4th at pp. 902-903.) Appellant shot twice at Webster as she fled in a confined stairway. Later, appellant told his niece that

he had done "something bad." (RT 261.) He reported that he took "two shots" at Webster and that he did not know whether she was alive or dead. (RT 261.) Thus, the record contains substantial evidence of premeditation and deliberation.

# CONCLUSION

Accordingly, respondent respectfully requests that the judgment be affirmed.

Dated:  October 18, 2005

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

ROBERT R. ANDERSON
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

LAURENCE K. SULLIVAN
Supervising Deputy Attorney General

RENÉ A. CHACÓN
Supervising Deputy Attorney General

Attorneys for Respondent

RAC:eaw
SF2005DA0575
40066901.wpd

15

RONALD DEAN JACKSON

Court Number SC057334A

| 12021(g)(1) PC | 16 months – 2 – 3 years |
| 12021(c)(1) PC | 16 months – 2 – 3 years |

## ENHANCEMENTS (CHARGED AND PROVED)

| 189 PC | Penalty – Life with the possibility of parole |
| 12022.53 PC | Penalty – Twenty years additional and consecutive |
| 12022.5(a) PC (four allegations) | Penalty – 3 – 4 – 10 years |
| 1203(k) PC (four allegations) | Penalty – Ineligible for probation |

## CHARGE AND PLEA STATUS

Original charges:
Count 1: 664/187(a) PC with special allegations per 189 PC, 12022.53(c) PC, 1192.7(c)(8) PC, 1192.7(c)(9) PC, and 1192.7(c)(40) PC;
Count 2: 245(a)(2) PC with special allegations per 12022.5(a) PC, 1192.7(c)(8) PC, 1192.7(c)(31) PC, and 1203(k) PC;
Count 3: 646.9(b) PC with special allegations per 12022.5(a) PC, 1192.7(c)(8) PC and 1203(k) PC;
Count 4: 646.9(c)(2) PC with special allegations per 12022.5(a) PC, 1192.7(c)(8) PC, and 1203(k) PC;
Count 5: 166(c)(4)(1) PC with special allegations per 12022.5(a) PC, 1192.7(c)(8) PC, and 1203(k) PC;
Count 6: 12021(a)(1) PC;
Count 7: 12021(g)(1) PC;
Count 8: 12021(c)(1) PC

Pled/Convicted:
Count 1 with special allegations per 189 PC and 12022.53(c) PC;
Count 2 with special allegations per 12022.5(a) PC and 1203(k) PC;
Count 3 with special allegations per 12022.5(a) PC and 1203(k) PC;
Count 4 with special allegations per 12022.5(a) PC and 1203(k) PC;
Count 5 with special allegations per 12022.5(a) PC and 1203(k) PC;
Counts 6, 7 & 8

Dismissed/Under submission:
Remaining special allegations

## EVALUATION

Ronald Dean Jackson appears for sentencing having been convicted by jury of attempted murder, assault with firearm on a person, stalking while under temporary restraining order, stalking with prior stalking, contempt of court, possession of firearm by a felon, buy/receive firearm under protective order, and possession of firearm by a felon/Narcotics Addict. In addition, special allegations of premeditated and deliberate murder, discharge

3