1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  JULIET B. HALEY
   Deputy Attorney General
5  RENÉ A. CHACÓN, State Bar No. 119624
   Supervising Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5957
    Fax:  (415) 703-1234
8   Email:  rene.chacon@doj.ca.gov

9  Attorneys for Respondent

10

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

15 | **RONALD D. JACKSON,** | No. C 08-1202 JSW (PR) |

16 Petitioner, | **ANSWER TO ORDER TO SHOW CAUSE**

17         **v.**

18 **D.K. SISTO, Warden,**

19 Respondent.

20        Respondent, D.K.Sisto, Warden at California State Prison at Vacaville, California,

21 provides this Answer to the Order to Show Cause.

22                              **I.**

23                           **CUSTODY**

24        Petitioner is lawfully confined in the custody of the California Department of Corrections

25 and Rehabilitation, pursuant to a judgment imposed by the San Mateo County Superior Court on

26 March 8, 2005.  A jury found petitioner guilty of one count of attempted premeditated murder, Cal.

27 Penal Code §§ 187(a), 189, 664, and found true the allegations of intentional discharge of a firearm,

28 Cal. Penal Code § 12022.53(c), and the infliction of great bodily injury, Cal. Penal Code §

1192.7(c)(8).   The jury further found petitioner guilty of one count of assault with a firearm, Cal.

Penal Code § 245(a)(2), two counts of stalking, Cal. Penal Code § 646.9(b), (c)(2), one count of

violating a protective court order, Cal. Penal Code § 166(c)(4)(1), and found true with respect to the

four counts the personal use of a firearm, Cal. Penal Code § 12022.5(a), the infliction of great bodily

injury, Cal. Penal Code § 1192.7(c)(8), and that petitioner was on probation at the time of the

offenses, Cal. Penal Code § 1203(k).   The jury also found petitioner guilty of three counts of

unlawful possession of a firearm, Cal. Penal Code § 12021(a)(1), (g)(1), (c)(1).   The trial court

sentenced petitioner to state prison for an indeterminate term of life with the possibility of parole

plus 20 years.   *See* Respondent's Exhibit A (hereinafter "CT") at 144, 45, 381-94, 413-14, 417-19.

## II.

## STATE PROCEDURAL HISTORY

By information the San Mateo County District Attorney charged petitioner with attempted

premeditated murder, Cal. Penal Code §§ 187(a), 189, 664, and alleged the intentional discharge of

a firearm, Cal. Penal Code § 12022.53(c), and the infliction of great bodily injury, Cal. Penal Code

§ 1192.7(c)(8).   *See* CT at 1-2.   The information further charged petitioner with one count of assault

with a firearm, Cal. Penal Code § 245(a)(2), two counts of stalking, Cal. Penal Code § 646.9(b),

(c)(2), one count of violating a protective court order, Cal. Penal Code § 166(c)(4)(1), and alleged

with respect to the four counts the personal use of a firearm, Cal. Penal Code § 12022.5(a), the

infliction of great bodily injury, Cal. Penal Code § 1192.7(c)(8), and that petitioner was on probation

at the time of the offenses, Cal. Penal Code § 1203(k).   CT at 2-8.   The information also charged

three counts of unlawful possession of a firearm, Cal. Penal Code § 12021(a)(1), (g)(1), (c)(1).   CT

at 2-9.

On February 8, 2005, the jury returned verdicts finding petitioner guilty as charged and

finding true all weapon-use and great bodily injury enhancements.   CT at 144-45, 381-94.   Petitioner

admitted allegations that he was on probation, that he had a prior conviction of stalking, and that he

had a prior misdemeanor conviction.   RT at 539-44.

On March 8, 2005, the trial court imposed an indeterminate term of life with the possibility

of parole, a consecutive 20-year term for the intentional discharge of a weapon allegation, and stayed

terms on the remaining counts pursuant to Cal. Penal Code section 654.  CT at 413-14, 417-19.

On February 15, 2006, the California Court of Appeal denied a petition for writ of habeas corpus citing *In re Swain*, 34 Cal.2d 300, 303-304 (1949), and *In re Lindley*, 29 Cal.2d 709, 723 (1947).  *See* Petn. Exh.

On March 13, 2006, the California Court of Appeal affirmed the judgment in an unpublished decision.  *See* Exhibit B.

On May 17, 2006, the California Supreme Court denied review.  *See* Exhibit C.

On June 11, 2007, the California Superior Court denied a habeas corpus petition.  *See* Petn. Exh.

On January 3, 2008, the California Supreme Court denied a habeas corpus petition citing *In re Clark*, 5 Cal.4th 750 (1993).  *See* Exhibit D.

### III.

### FEDERAL PROCEDURAL HISTORY

On February 28, 2008, petitioner filed the instant petition for writ of habeas corpus.  On May 8, 2008, the Court issued the Order to Show Cause.

### IV.

### CLAIMS FOR RELIEF

Respondent denies each of petitioner's claims, denies that any of petitioner's claims state a basis for federal habeas corpus relief, and affirmatively alleges that petitioner's convictions did not result from a violation of any federal constitutional right.  Respondent incorporates by reference the Points and Authorities filed in support of the Answer.  Respondent specifically responds to each claim as follows.

**Excessive Sentence Claim**

Petitioner has failed to show that the state court's disposition was "contrary to, or involved an unreasonable application" of Supreme Court precedent, or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *See* 28 U.S.C. § 2254(d)(1), (2).

**Sufficiency of Evidence Claim**

Petitioner has failed to show that the state court's disposition was "contrary to, or involved an unreasonable application" of *Jackson v. Virginia*, 433 U.S. 307 (1979), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(1), (2).

**Prosecutorial Misconduct Claim**

Petitioner has failed to show that the state court's disposition was "contrary to, or involved an unreasonable application" of Supreme Court precedent, or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(1), (2).

**Ineffective Assistance of Counsel Claim**

Petitioner has failed to show that the state court's disposition was "contrary to, or involved an unreasonable application" of *Strickland v. Washington*, 466 U.S. 668 (1984), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(1), (2).

**V.**

**EXHAUSTION**

Petitioner has exhausted his state remedies with respect to the federal claims in the instant petition. *Rose v. Lundy*, 455 U.S. 509 (1982); *see* Respondent's Exhibits C & D.

**VI.**

**AVAILABLE TRANSCRIPTS AND RECORD**

Respondent has lodged with the Clerk of the Court copies of the relevant state record: Exhibit A (Clerk's Transcript, 2 volumes); Exhibit B (California Court of Appeal Unpublished Opinion); Exhibit C (Petition for Review and Order Denying Petition for Review); Exhibit D (Petition for Writ of Habeas Corpus and Supreme Court Order Denying Petition); Exhibit E (Reporter's Transcript of Trial, pages 1-555).

## VII.

### EXPRESS AND IMPLIED FACTUAL FINDINGS

Respondent alleges that petitioner received a full and fair hearing on all of this claims in the state courts, and that all express and implied factual findings by the state courts are entitled to a presumption of correctness. 28 U.S.C. § 2254(d), (e)(1). Respondent denies that any claim made by petitioner requires an evidentiary hearing by this Court. 28 U.S.C. § 2254(e)(2).

## VIII.

### GENERAL DENIAL

Respondent denies each and every factual or procedural allegation in the petition affording a basis for relief that has not been expressly admitted in the Answer. Respondent incorporates by reference any statements of fact material to the issues herein which are contained in the accompanying memorandum of points and authorities or in the exhibits filed with this Court, to the extent not inconsistent with the respondent's factual allegations herein.

///

///

///

1

**CONCLUSION**

2          Accordingly, respondent respectfully requests that the Court deny the petition for writ of

3   habeas corpus.

4          Dated:  July 16, 2008

5                                    Respectfully submitted,

6                                    EDMUND G. BROWN JR.
                                     Attorney General of the State of California

7                                    DANE R. GILLETTE
                                     Chief Assistant Attorney General

8                                    GERALD A. ENGLER
                                     Senior Assistant Attorney General

9
                                     JULIET B. HALEY
10                                   Deputy Attorney General

11

12                                   /s/ René A. Chacón

13
                                     RENÉ A. CHACÓN
14                                   Supervising Deputy Attorney General
                                     Attorneys for Respondent

15

16   20124352.wpd
17   SF2008401662

18

19

20

21

22

23

24

25

26

27

28

Answer to Order to Show Cause                                         No.  C 08-1202 JSW (PR)

**DECLARATION OF SERVICE BY U.S. MAIL**

Case Name:    **Ronald D. Jackson v. D. K. Sisto, Warden**

No.:    **C 08-1202 JSW (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On July 22, 2008, I served the attached

**ANSWER TO ORDER TO SHOW CAUSE;**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER;**

**NOTICE OF LODGING OF, AND INDEX TO, EXHIBITS**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Ronald D. Jackson
CSP Solano
V70867
P.O. Box 4000
Vacaville, CA 95696

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on July 22, 2008, at San Francisco, California.

|                            |                     |
|----------------------------|---------------------|
| T. Nguyen                  | _(signature)_       |
| Declarant                  | Signature           |

20126497.wpd

1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GERALD A. ENGLER
    Senior Assistant Attorney General
4   JULIET B. HALEY
    Deputy Attorney General
5   RENÉ A. CHACÓN, State Bar No. 119624
    Supervising Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5957
     Fax:  (415) 703-1234
8    Email:  rene.chacon@doj.ca.gov

9   Attorneys for Respondent

10                  IN THE UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13

14  **RONALD D. JACKSON,**                      No. C 08-1202 JSW (PR)

                                    Petitioner,
15
          **v.**
16
    **D.K. SISTO, Warden,**
17
                                    Respondent.
18

19     **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3   INTRODUCTION                                                                1

4   STATEMENT OF THE CASE                                                       2

5   LEGAL STANDARDS                                                             3

6   STATEMENT OF FACTS                                                          4

7   ARGUMENT                                                                    9

8       I.    **THE TRIAL COURT DID NOT EXCEED ITS JURISDICTION BY IMPOSING A SENTENCE OF LIFE WITH POSSIBILITY OF PAROLE PLUS 20 YEARS**                9

9

10      II.    **SUFFICIENT EVIDENCE SUPPORTS ATTEMPTED MURDER WITH USE OF A FIREARM**                10

11

12      III.    **PETITIONER DOES NOT DEMONSTRATE PROSECUTORIAL MISCONDUCT**                13

13      IV.    **PETITIONER DOES NOT DEMONSTRATE INEFFECTIVE ASSISTANCE OF COUNSEL**                14

14  CONCLUSION                                                                  16

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Brecht v. Abrahamson*
507 U.S. 619 (1993)                                                    14

5

*Brown v. Myers*
6   137 F.3d 1154 (9th Cir. 1998)                                          15

7   *Bruce v. Terhune*
376 F.3d 950 (9th Cir. 2004)                                           11

8

*Darden v. Wainwright*
9   477 U.S. 168 (1986)                                                    13

10  *Donnelly v. DeChristoforo*
416 U.S. 637 (1974)                                                    13

11

*Edwards v.Lamarque*
12  476 F.3d 1121 (9th Cir. 2007)                                           3

13  *Ewing v. California*
123 S. Ct. 1179 (2003)                                                  9

14

*Gustave v. United States*
15  627 F.2d 901 (9th Cir. 1980)                                           15

16  *Harmelin v. Michigan*
501 U.S. 957 (1991)                                                    10

17

*In re Clark*
18  5 Cal.4th 750 (1993)                                                    3

19  *In re Lindley*
29 Cal.2d 709 (1947)                                                    3

20

*In re Swain*
21  34 Cal.2d 300 (1949)                                                    3

22  *In re Winship*
397 U.S. 358 (1970)                                                 10, 11

23  *Jackson v. Virginia*
24  443 U.S. 307 (1979)                                             10, 11, 13

25  *Jones v. Barnes*
463 U.S. 745 (1983)                                                    15

26  *LaMere v. Slaughter*
27  458 F.3d 878 (9th Cir. 2006)                                           11

28

*Lockyer v. Andrade*
538 U.S. 63 (2003)                                                      3, 10

*Mayle v. Felix*
545 U.S. 644 (2005)                                                         9

*Payne v. Borg*
982 F.2d 335 (9th Cir. 1992)                                               10

*Strickland v. Washington*
466 U.S. 668 (1984)                                                    14, 16

*Walters v. Maass*
45 F.3d 1355 (9th Cir. 1995)                                              11

*Weighall v. Middle*
215 F.3d 1058 (9th Cir. 2000)                                             15

*Wilson v. Henry*
185 F.3d 986 (9th Cir. 1999)                                              15

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                                         3


**Constitutions**

United States Constitution
        Sixth Amendment                                                9
        Eighth Amendment                                               9
        Fourteenth Amendment                                           9


**Statutes**

United States Code, Title 28
        § 2254                                                   2, 3, 15

Antiterrorism and Effective Death Penalty Act of 1996                      3

California Penal Code
        § 166(c)(4)(1)                                              1, 2
        § 187(a)                                                 1, 2, 9
        § 189                                                    1, 2, 9
        § 245(a)(2)                                                 1, 2
        § 646.9(b), (c)(2)                                          1, 2
        § 664                                                    1, 2, 9
        § 1192.7(c)(8)                                              1, 2
        § 12021(a)(1), (g)(1), (c)(1)                               1, 2
        § 12022.5(a)                                                   2
        § 12022.53(c)                                            1, 2, 9
        § 1203(k)                                                      2

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  JULIET B. HALEY
   Deputy Attorney General
5  RENÉ A. CHACÓN, State Bar No. 119624
   Supervising Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5957
    Fax:  (415) 703-1234
8   Email:  rene.chacon@doj.ca.gov

9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13
   | | |
   |---|---|
   | **RONALD D. JACKSON,** | No. C 08-1202 JSW (PR) |
   | Petitioner, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER** |
   | **v.** | |
   | **D.K. SISTO, Warden,** | |
   | Respondent. | |

                        **INTRODUCTION**

        Petitioner, Ronald Dean Jackson, is presently serving a judgment of life with the
possibility of parole plus 20 years for convictions of one count of attempted murder, Cal. Penal Code
§§ 187(a), 189, 664, with findings with respect to the attempted murder that petitioner intentionally
discharged a firearm, Cal. Penal Code § 12022.53(c), and inflicted great bodily injury, Cal. Penal
Code § 1192.7(c)(8); one count of assault with a firearm, Cal. Penal Code § 245(a)(2); two counts
of stalking, Cal. Penal Code § 646.9(b), (c)(2); one count of violating a protective order, Cal. Penal
Code § 166(c)(4)(1); and three counts of unlawful possession of a firearm, Cal. Penal Code §

1    12021(a)(1), (g)(1), (c)(1).  With respect to all counts save the attempted murder and unlawful

2    firearm possession counts, the jury found that petitioner personally used a firearm, Cal. Penal Code

3    § 12022.5(a), that he inflicted great bodily injury, Cal. Penal Code § 1192.7(c)(8), and that petitioner

4    was on probation at the time of the offenses, Cal. Penal Code § 1203(k).  On February 28, 2008,

5    petitioner filed the instant petition for writ of habeas corpus under 28 U.S.C. § 2254.  On May 8,

6    2008, the Court issued an Order to Show Cause finding four cognizable claims:  1) the sentence

7    violates his constitutional rights because he was sentenced pursuant to a statute that is not authorized

8    by state law; (2) there was no evidence to sustain his conviction for attempted murder or the use of

9    a firearm; (3) the prosecutor committed misconduct, including withholding exculpatory evidence;

10   and (4) he received ineffective assistance from both his trial and appellate counsel.  *See* Order to

11   Show Cause.

12                                      **STATEMENT OF THE CASE**

13                By information the San Mateo County District Attorney charged petitioner with attempted

14   premeditated murder, Cal. Penal Code §§ 187(a), 189, 664, and alleged the intentional discharge of

15   a firearm, Cal. Penal Code § 12022.53(c), and the infliction of great bodily injury, Cal. Penal Code

16   § 1192.7(c)(8).  *See* Respondent's Exhibit A at 1-2 (Clerk's Transcript hereinafter referred to as

17   "CT").  The information further charged petitioner with one count of assault with a firearm, Cal.

18   Penal Code § 245(a)(2), two counts of stalking, Cal. Penal Code § 646.9(b), (c)(2), one count of

19   violating a protective court order, Cal. Penal Code § 166(c)(4)(1), and alleged with respect to the

20   four counts the personal use of a firearm, Cal. Penal Code § 12022.5(a), the infliction of great bodily

21   injury, Cal. Penal Code § 1192.7(c)(8), and that petitioner was on probation at the time of the

22   offenses, Cal. Penal Code § 1203(k).  CT at 2-8.  The information also charged three counts of

23   unlawful possession of a firearm, Cal. Penal Code § 12021(a)(1), (g)(1), (c)(1).  CT at 2-9.

24                On February 8, 2005, the jury returned verdicts finding petitioner guilty as charged and

25   finding true all weapon-use and great bodily injury enhancements.  CT at 144-45, 381-94.  Petitioner

26   admitted allegations that he was on probation, that he had a prior conviction of stalking, and that he

27   had a prior misdemeanor conviction.  RT at 539-44.

28                On March 8, 2005, the trial court imposed an indeterminate term of life with the possibility

1    of parole, a consecutive 20-year term for the intentional discharge of a weapon allegation, and stayed

2    terms on the remaining counts pursuant to Cal. Penal Code section 654.  CT at 413-14, 417-19.

3         On February 15, 2006, the California Court of Appeal denied a petition for writ of habeas

4    corpus citing *In re Swain*, 34 Cal.2d 300, 303-304 (1949), and *In re Lindley*, 29 Cal.2d 709, 723

5    (1947).  *See* Petn. Exh.

6         On March 13, 2006, the California Court of Appeal affirmed the judgment in an

7    unpublished decision.  *See* Exhibit B.

8         On May 17, 2006, the California Supreme Court denied review.  *See* Exhibit C.

9         On June 11, 2007, the California Superior Court denied a habeas corpus petition.  *See*

10   Petn. Exh.

11        On January 3, 2008, the California Supreme Court denied a habeas corpus petition citing

12   *In re Clark*, 5 Cal.4th 750 (1993).  *See* Exhibit D.

13        On February 28, 2008, petitioner filed the instant petition for writ of habeas corpus.  On

14   May 8, 2008, the Court issued the Order to Show Cause.

15                              **LEGAL STANDARDS**

16        This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

17   (AEDPA), which imposes a "highly deferential" standard for evaluating state court rulings and

18   "demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537

19   U.S. 19, 24 (2002) (per curiam).  Under AEDPA, the federal court has no authority to grant habeas

20   relief unless the state court's ruling was "contrary to, or involved an unreasonable application of,"

21   clearly established Supreme Court precedent.  28 U.S.C. § 2254(d)(1).  A decision constitutes an

22   unreasonable application of Supreme Court law if the state court's application of law to the facts is

23   not merely erroneous, but "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

24   Thus, "[o]nly if the evidence is 'too powerful to conclude anything but' the contrary" should the

25   court grant relief.  *Edwards v.Lamarque*, 476 F.3d 1121, 1126 (9th Cir. 2007)(en banc).  The

26   petitioner bears the burden of showing that the state court's decision was unreasonable.  *Visciotti*,

27   537 U.S. at 25.

28

Memo. of Ps & As in Support of Answer-No. C 08-1202 JSW (PR)

1                                          **STATEMENT OF FACTS**

2          **Prior Acts Of Domestic Violence**

3                  On August 7, 2002, San Mateo Police Officer Bill Schroeder was dispatched to investigate

4    a domestic violence call.  RT at 86.  Jane Webster reported the violence and was receptive to

5    obtaining a temporary restraining order. RT at 88-89.  The next day, Officer Schroeder returned to

6    Webster's residence and observed petitioner being served with the restraining order.  RT at 90-91.

7    Petitioner used profanity and seemed "upset."  RT at 92; RT 122 ("He was extremely hostile and

8    verbally belligerent.").  Petitioner reported that Webster had been the aggressor and pushed him,

9    which caused him to grab her neck.  RT at 93-94.  On September 23, 2002, Webster said that she

10   did not want charges brought against petitioner.  RT at 95.

11                 On November 19, 2002, Officer Schroeder received from Webster 43 voicemail recordings

12   left by petitioner.  RT at 96-97.  The first message warned Webster that petitioner would find her.

13   RT at 98.  The second message warned Webster that her acts were "piss[ing]" petitioner off.  RT at

14   99.  The third message reported that Webster's acts "screw" petitioner.  RT at 99.  The fourth

15   message reported that petitioner was now "in the street" with "no where to go."  RT at 100.  The

16   fifth message asked Webster for help.  RT at 101.  The sixth message asked Webster to call

17   petitioner and complained that his "whole life" had been taken away.  RT at 102.  The seventh

18   message complained that Webster had taken petitioner's "personal stuff" and that he had "no where

19   to go." RT at 104.  The eighth message warned that petitioner would continue to call Webster "at

20   work" and that Webster's choices were to send petitioner to jail or give his life back.  RT at 105.

21   The ninth message warned that petitioner would start to call for Webster at her parent's home.  RT

22   at 105.  The tenth message complained that this "is fucking ridiculous" and asked to get into the

23   house to get to his mail and complained about the restriction against contacting her.  RT at 106-07.

24   In the eleventh message petitioner denied that he possessed guns and asked that she "cut this shit

25   out."  RT at 107-08.  The twelfth message complained that Webster cut off petitioner from

26   everything that he owned, and warned that he would be seeing her in court.  RT at 108.  The

27   thirteenth message  threatened Webster that "nothing is going to save your ass from me" if Webster

28   invaded petitioner's privacy. RT at 109. The fourteenth message complained that petitioner needed

1   his clothes, his "paperwork," and his "personal things" out of the house.  RT at 110.

2          On February 19, 2003, Officer Roberto Gonzaelez responded to a report of a restraining

3   order violation.  RT at 230.  Webster played voice mail messages from a male identifying himself

4   as "Ron."  RT at 231-32.  One message called Webster a "backstabbing bitch."  RT at 233.  Another

5   message asked to retrieve mail before he got "locked up this week."  RT at 234.  Another message

6   threatened that he would "'have to come over for a face-to-face.'"  RT at 235.  Another message

7   complained that it was "'not okay, Jane, to end the relationship by putting me in jail.'"  RT at 235.

8   In another message, petitioner asked to talk to Webster because he was "'in serious love'" and

9   complained about "'that hanging up shit has got to go.'"  RT at 235-36.  A February 19 message

10  asked Webster if she was proud of herself for putting petitioner in jail, and threatened, "'You are

11  not getting away with this, believe me.  You are not getting away with it.  I don't give a fuck who

12  you tell, you are not getting away with this.'"  RT at 236.  A later February 19 message said, "'I

13  expect a call from you.'"  RT at 236.

14  **June 28, 2004, Assault**

15         On June 28, 2004, Anne Marie Cota was Webster's neighbor.  RT at 137-138, 142.  At

16  about 5:00 p.m., Cota heard the sound of "TV gunshots" or "rocks being thrown on a door" that

17  echoed.  RT at 142.  The noises were "loud" and "sharp."  RT at 144.  One minute later, Cota went

18  out and saw Webster on the ground, people standing about, and someone "yelling to call 911."  RT

19  at 144-45.  Webster was on her stomach with her legs spread out at the top of the stairway.  RT at

20  146-47.  Webster was "hysterical."  RT at 147.

21         Greg Farron was visiting his brother in the same condominium complex when he heard

22  "two loud reports" he assumed were "gunshots."  RT at 157-58, 161.  Farron described himself as

23  an "outdoors man" who had owned firearms and had discharged them "many times."  RT at 158.

24  Farron told his brother about the gunfire.  RT at 159.  Immediately after the gunfire, Farron "looked

25  out on the patio" and saw Webster on the sidewalk bleeding and in the same general area that the

26  gunfire came from.  RT at 160.  About two hours before, Farron had heard the sound of fireworks

27  outside.  RT at 159.

28         Gabriela Nocito heard "two loud bangs and a scream" coming from a nearby unit.  RT at

Memo. of Ps & As in Support of Answer-No. C 08-1202 JSW (PR)

178. Nocito thought the bangs "were gunshots." RT at 179. Nocito's had in the past heard gunshots. RT at 179. Nocito opened the front door and looked out. RT at 183. Nocito saw Webster, lying down, on the top of the stairs leading outside. RT at 184. Webster was crying and asking that someone call the police. RT at 185.

Deputy Sheriff Dennis Woollum was dispatched to the scene to investigate a possible shots fired report. RT at 189-90. No bullet holes or shell casings were found. RT at 191, 272.

On an early evening in late June 2004, petitioner contacted Brett Banbury at Branbury's home. RT at 207-08. Petitioner was "nervous," "agitated," and had a "deep scrape" on his leg. RT at 211, 214, 217. Petitioner said things were worse for him now than they were before. RT at 215. Petitioner complained that Webster had "ruined his life." RT at 223. Petitioner asked to spend the night and Branbury's house mate, Jennifer Bright, agreed. RT at 216.

Jennifer Bright told petitioner that he had to leave the residence in the morning. RT at 226. The next morning, petitioner asked to spend the day at the residence and Bright refused. RT at 227. In the following 20 minutes, petitioner tried to convince Bright to let him stay. RT at 228. Petitioner was "insistent." RT at 228. Bright made sure petitioner left the apartment before she left for work. RT at 228-29.

On June 29, 2004, at 9:00 a.m., Erica Smith saw her uncle, petitioner, arrive at her home. RT at 252-53. He appeared "very exhausted" and had a cut on his calf. RT at 253, 257. Petitioner asked to stay. RT at 254. Erica's father refused to allow petitioner to stay. RT at 256. Petitioner agreed to accompany Erica on her errands. RT at 257. Later, Erica dropped him off at a bus stop in Menlo Park. RT at 259. As petitioner left her car, he was "pretty sad." RT at 260. Petitioner cried and said that "this is probably the last time I would see him, and that he had done something bad." RT at 261. Petitioner said that "he visited Jane and Aunt Jane, and he doesn't know if she's dead or alive, he took two shots at her." RT at 261. Shocked, Erica offered to take petitioner to talk to somebody. RT at 262. Petitioner refused and said, "I am going back in there," and he got out of the car. RT at 262. Later, Erica's family called the police to report the incident. RT at 263.

**Jane Webster's Testimony**

Jane Webster testified that she dated petitioner for about 10 years of the 15 years of their

1   acquaintance.  RT at 286.  Petitioner resided with Webster about eight years.  RT at 287.  Their

2   relationship deteriorated as petitioner threatened her and became "scary."  RT at 289.  He was

3   unemployed and promised to leave when he got on his feet financially.  RT at 289.  During the 2001

4   Christmas holidays, Webster insisted that petitioner leave her residence.  RT at 289.  Petitioner stood

5   6 feet 4 inches tall, and weighed about 220 pounds.  RT at 290.  Petitioner yelled at Webster, pinned

6   her, and threw things at her.  RT at 290-91.  Webster felt threatened, scared, and tried not to set him

7   off.  RT at 291.

8        In August 2002, the couple argued over petitioner breaking a shower glass door he

9   shattered while trying to caulk the tiling.  RT at 292.  The argument became physical when petitioner

10  choked Webster before throwing her down in the hallway.  RT at 293.  Petitioner took the phone

11  from Webster, took her keys and ran out of the home.  RT at 294.  Later, petitioner left the residence

12  while Webster was on the phone with the police.  RT at 295-96.  The next day, Webster petitioned

13  for a restraining order.  RT at 297.  Later, sheriff deputies reported the order had been served on

14  petitioner.  RT at 298.  While Webster stayed away from her residence, petitioner left voice mail

15  messages on her answering machine.  RT at 298-99.  At some point, the recorded messages were

16  turned over to investigating officers.  RT at 301.  Criminal proceedings were initiated against

17  petitioner for violating the restraining order, but the phone calls to Webster continued.  RT at 302.

18  Webster later received a three-year restraining order.  RT at 303-04.

19       By January 2003, Webster, still scared, was in hiding.  RT at 305.  Later, Webster turned

20  over more phone recordings that became the basis for another hearing on alleged violations of the

21  restraining order.  RT at 306.  In February 2003, Webster saw petitioner drive up to her home then

22  heard pounding on her front door.  RT at 307.  In June 2003, petitioner was convicted of violating

23  the restraining order.  RT at 309.  Over the ensuing nine months, Webster received just two phone

24  calls from petitioner.  RT at 310.

25       On June 28, 2004, Webster came home from work.  RT at 312.  At about 5:30 p.m.,

26  Webster entered a stairwell.  RT at 318.  Webster heard petitioner call her name.  RT at 318.

27  Webster turned to glance as she ran up the stairs.  RT at 319.  Webster saw petitioner.  RT at 319.

28  Webster heard two pops as she reached the top of the landing.  RT at 322-23.  Webster next saw the

1   door into the stairwell open and close.  RT at 321.  Webster fell and injured her elbow and right

2   hand.  RT at 324.  Webster screamed that somebody should call 911.  RT at 324.

3          By stipulation, the parties informed the jury the following:  on August 29, 2002, a

4   restraining order issued directing petitioner not to "contact, molest, harass, attack, strike, threaten,

5   sexually assault, batter, telephone, send any messages to, follow, stalk, destroy the personal property

6   of, disturb the peace, keep under surveillance or block movement in public places or thoroughfares

7   of Jane Webster" and he was ordered to stay 100 yards away from Webster's residence and not to

8   own or possess firearms; on January 23, 2003, petitioner was convicted of misdemeanor battery on

9   Webster, and misdemeanor stalking of Webster; on June 16, 2003, petitioner was convicted of

10  felony stalking of Webster; on July 29, 2003, a trial court placed petitioner on felony probation

11  conditioned on petitioner not contacting Webster.  RT at 345-47.

12  **Defense Case**

13         Petitioner admitted assaulting Webster on August 7, 2002. RT at 349.  He was served with

14  a restraining order the following day.  RT at 349.  On January 23, 3003, petitioner pleaded guilty

15  to misdemeanor battery and stalking.  RT at 350.  In February 2003, petitioner drove by Webster's

16  residence and knocked on her door.  RT at 350.  Petitioner pleaded guilty to stalking Webster as a

17  result of that contact.  RT at 350.

18         On June 28, 2004, petitioner traveled to see his niece.  RT at 351.  He did not want to press

19  the issue of staying with his niece because his brother-in-law was ill, so petitioner went to Brett

20  Branbury's home.  RT at 351.  Along the way, petitioner injured his leg at Central Park as he scaled

21  a fence.  RT at 353-54.  Petitioner denied telling his niece that he had been at Webster's residence

22  the night before.  RT at 355.  Petitioner had been upset while talking with his niece over the

23  treatment received from his family and about the status of his probation grant.  RT at 355-56.

24  Petitioner may have told his niece that he did not care if Webster were alive or dead.  RT at 357.

25  Petitioner told his niece that she may never see him again because he intended to avoid the police

26  and the probation office by absconding.  RT at 358.  Petitioner told Branbury that his life was worse

27  and was referring to his failures to visit his probation officer.  RT at 356.  Petitioner got out of jail

28  in September 2003, and he did not have any further contact with Webster through June 2004.  RT

1   at 357.  Petitioner had "pretty much" let it go by then.  RT at 357.  Petitioner denied owning or

2   possessing a gun.  RT at 359.  Petitioner denied going to Webster's residence on June 28, 2004, or

3   discharging a firearm at her.  RT at 359.

4                                   **ARGUMENT**

5                                        **I.**

6   **THE TRIAL COURT DID NOT EXCEED ITS JURISDICTION BY
    IMPOSING A SENTENCE OF LIFE WITH POSSIBILITY OF PAROLE**

7   **PLUS 20 YEARS**

8           Petitioner asserts that his sentence violates the Sixth and Fourteenth Amendments because

9   he "was sentence [*sic*] under a generic statute which is not authorize [*sic*] by law.  This sentence

10  exceeds the jurisdiction of [*sic*] trial court.  The due process command [*sic*] that no man shall lose

11  his liberty unless the government has borne the burden of convincing the fact finders of his guilt.

12  To such end, the reasonable doubt standard is indispensable."  *See* Petn. at 5.

13          The record shows that the trial court imposed life with the possibility of parole for

14  attempted premeditated murder, Cal. Penal Code §§ 187(a), 189, 664(a).  *See* RT at 552; CT 413-14,

15  417-19.  Pursuant to the intentional discharge of a firearm allegation found true, Cal. Penal Code

16  § 12022.53(c), the trial court imposed a determinate term of 20 years.  *Id.*  The trial court stayed

17  sentence on the remaining counts and special allegations.  *Id.*

18          Petitioner does not explain what a "generic statute" means or how the trial court was

19  without jurisdiction to impose sentence in this case.  Further, the record shows that the jury was

20  instructed on the reasonable doubt standard.  *See* CT at 338.  Petitioner is expected to state facts that

21  point to the real possibility of constitutional error.  *Mayle v. Felix*, 545 U.S. 644, 655 (2005).

22  Petitioner's bare showing does not demonstrate any Sixth or Fourteenth Amendment violations.

23          Petitioner's state habeas corpus petition adds an Eighth Amendment allegation that the

24  sentence is excessive in light of the offense.  *See* Respondent's Exhibit D.

25          The Eighth Amendment to the United States Constitution provides that there "shall not

26  be . . . cruel and unusual punishment inflicted."  U.S. Const. amend. VIII.  The Eighth Amendment

27  does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme

28  sentences that are "grossly disproportionate" to the crime.  *Ewing v. California*, 123 S. Ct. 1179,

1   1187 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring));

2   *see also Lockyer v. Andrade*, 123 S. Ct. 1166, 1173 (2003).

3   　　　In this case, the jury returned a verdict of attempted premeditated murder and found the

4   intentional discharge of a firearm allegation true.  Thus, the jury found that petitioner had the

5   requisite express malice or specific intent to kill Webster at the time he intentionally discharged his

6   weapon twice at Webster as she fled in a confined stairway.  Given petitioner's violent acts against

7   his prior co-habitant and victim of domestic violence, the trial court's sentence of life, plus 20 years

8   for the intentional discharge of a weapon, does not give rise to an inference of gross

9   disproportionality.

10  　　　The California court's denial of this claim was neither contrary to nor an unreasonable

11  application of Supreme Court precedent.  Petitioner is not entitled to the writ on this claim.

12  **II.**

13  **SUFFICIENT EVIDENCE SUPPORTS ATTEMPTED MURDER WITH
    USE OF A FIREARM**

14

15  　　　Petitioner asserts that there is insufficient evidence to support attempted murder or the use

16  of a firearm allegation.  *See* Petn. at 5.  The record demonstrates sufficient evidence.

17  　　　The Due Process Clause "protects the accused against conviction except upon proof

18  beyond a reasonable doubt of every fact necessary to constitute the crime for which he is charged."

19  *In re Winship*, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the evidence in support

20  of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact

21  to find guilt beyond a reasonable doubt therefore states a constitutional claim, which if proven,

22  entitles him to federal habeas relief.  *Jackson v. Virginia*, 443 U.S. 307, 321, 324 (1979).  A federal

23  court reviewing collaterally a state court conviction does not determine whether the evidence

24  established guilt beyond a reasonable doubt.  *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992), *cert*

25  *denied*, 510 U.S. 843 (1993).  The federal court determines only whether, "after viewing the

26  evidence in the light most favorable to the prosecution, any rational trier of fact could have found

27  the essential elements of the crime beyond a reasonable doubt."  *Id.*; (quoting *Jackson*, 443 U.S. at

28  319). Only if no rational trier of fact could have found proof beyond a reasonable doubt, may the

1  writ be granted. *Jackson*, 443 U.S. at 324.

2          On habeas review, a federal court evaluating the evidence under *In re Winship* and

3  *Jackson v. Virginia* should take into consideration all of the evidence presented at trial. *LaMere v.*

4  *Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006). Circumstantial evidence and inferences drawn from

5  that evidence may be sufficient to sustain a conviction. *Walters v. Maass*, 45 F.3d 1355, 1358 (9th

6  Cir. 1995). If confronted by a record that supports conflicting inferences, a federal habeas court

7  "must presume–even if it does not affirmatively appear on the record–that the trier of fact resolved

8  such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at

9  326. A jury's credibility determinations are therefore entitled to near-total deference. *Bruce v.*

10  *Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

11          The California Court of Appeal considered the trial record and determined that the record

12  supported attempted premeditated murder, and the weapon-use allegation as follows:

13      Defendant contends that the evidence was insufficient to support the jury's finding
        that he acted with intent to kill in shooting at Webster.
14
15      "We review claims of insufficient evidence by evaluating the entire record in the
        light most favorable to the judgment to determine whether it discloses evidence that is
16      reasonable, credible, and of solid value from which a rational trier of fact could have
        found the essential elements beyond a reasonable doubt. [Citations.] The credibility of
17      witnesses and the weight accorded the evidence are matters within the province of the trier
        of fact. [Citations.] [¶] Attempted murder requires the intent to kill plus a direct but
18      ineffectual act toward its commission. [Citation.] Generally, the question whether the
        defendant harbored the required intent must be inferred from the circumstances of the
19      shooting." (*People v. Ramos* (2004) 121 Cal.App.4th 1194, 1207-1208.)

20      In this case the evidence readily discloses a motive for defendant to kill Webster:
        his anger at her for terminating their relationship, for ignoring his attempts to contact her,
21      and for getting the police involved, which resulted in his serving jail time. Among other
        things, defendant called her a "backstabbing bitch." The jury's finding that defendant
22      intended to kill Webster is consistent with defendant's threats that "nothing is going to
        save your ass from me" if Webster invaded his privacy and that she was "not getting away
23      with this, believe me. You are not getting away with it." Moreover, the circumstances
        of the crime are consistent with a premeditated lethal attack: defendant came to Webster's
24      residential complex armed with a handgun, waited for her until she came home from
        work, and shot twice at close range. (See *People v. Lashley* (1991) 1 Cal.App.4th 938,
25      945 ["The very act of firing a .22-caliber rifle toward the victim at a range and in a
        manner that could have inflicted a mortal wound had the bullet been on target is sufficient
26      to support an inference of intent to kill under the circumstances presented here"].)

27      Defendant points out that there is no direct evidence that he aimed at Webster or that
        he fired live ammunition. But there were no bullet-holes in the floor or ceiling of the
28      stairwell, which would have been expected had defendant aimed away from Webster.
        And defendant told his niece that he took "two shots" at Webster and that he did not know

1    whether she was alive or dead, which is inconsistent with inferences that defendant aimed
2    away from Webster or was firing blanks.  Finally, that defendant missed Webster and did
     not continue shooting or follow her up the stairwell "does not compel the conclusion that
3    he lacked the animus to kill in the first instance."  (*Lashley, supra,* 1 Cal.App.4th at p.
     945.)

4        From the evidence in the record, a reasonable jury properly could conclude defendant
     harbored the intent to kill.
5

6    *See* Exhibit B at 7-8

7        Indeed, the record discloses that petitioner had a motive to kill Webster.  His numerous

8    telephone calls warned that he would find her and that he was "piss[ed]."  RT at 98-99.  Petitioner

9    blamed Webster for cutting off him from everything he owned.  RT at 108.  Petitioner warned

10   Webster that "nothing is going to save your ass from me" if Webster invaded petitioner's privacy.

11   RT at 109.  Petitioner called Webster a "backstabbing bitch" and warned that he would have to come

12   over "for a face-to-face."  RT at 235.  Petitioner threatened that Webster was "not getting away with

13   this, believe me.  You are not getting away with it."  RT at 236.

14       The record also discloses planning activity.  Petitioner armed himself,  struck after months

15   of quiet had passed, and waited until Webster came home from a long day at work.  Petitioner loaded

16   his weapon, and waited in a confined stairway for Webster.  When Webster arrived, he caught her

17   attention before firing.  Thereafter, he slipped away and hid out among close friends and relatives.

18       Further, the manner of the shooting indicates a calculated design to ensure death in that

19   petitioner shot twice at Webster as she fled in a confined stairway.  Later, petitioner told his niece

20   that he had done "something bad."  RT at 261.  He reported that he took "two shots" at Webster and

21   that he did not know whether she was alive or dead.  RT at 261.  The record contains substantial

22   evidence of premeditation and deliberation.

23       Respecting the gun use allegation, Anne Marie Cota heard "loud" and "sharp" noises that

24   sounded like "TV gunshots."  RT at 142, 144.  Greg Farron, described himself as an "outdoors man"

25   who had owned and fired guns "many times," heard "two loud reports" he assumed were

26   "gunshots."  RT at 157-58, 161.  Gabriella Nocito heard "two loud bangs and a scream."  RT at 178.

27   Nocito thought the bangs "were gunshots."  RT at 179.  Webster entered her apartment stairwell,

28   heard petitioner call her name, saw petitioner, ran up the stairs and heard two pops as she reached

1  the top of the landing.  RT at 318-323.  Petitioner told his niece that he "took two shots" at Webster

2  and did not know if she was alive or dead.  RT at 262.

3  The record shows that there was sufficient evidence from which a rational jury could have

4  concluded beyond a reasonable doubt that petitioner attempted to murder Webster and discharged

5  a firearm at her.  Thus, the state courts' denial of the claim was not contrary to, or an unreasonable

6  application of *Jackson v. Virginia*, 443 U.S. 307, nor was it objectively unreasonable in light of the

7  totality of the evidence presented.

8  **III.**

9  **PETITIONER DOES NOT DEMONSTRATE PROSECUTORIAL MISCONDUCT**

10

11  Petitioner asserts that the prosecutor committed misconduct by suppressing exculpatory

12  evidence.  *See* Petn. at 6.

13  To warrant habeas relief, prosecutorial misconduct must "so infect [] the trial with

14  unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477

15  U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

16  Petitioner argues:

17  The petitioner [*sic*] niece Ms. Smith testified on the day after the alleged crime that the
petitioner told her that he shot at Ms. Webster.  This is the only evidence offer [*sic*] by the
18  state to link petitioner to the allege [*sic*] crime.  The [*sic*] failed to disclose Ms. Smith [*sic*]
drug history.  They also mislead the jury by presenting a gun that had nothing to do with
19  the case.

20  *See* Petn. at 6.

21  With respect to an alleged prosecution failure to disclose Smith's purported drug history,

22  the record does not demonstrate a defense objection concerning a lack of discovery related to Smith.

23  *See* RT at 251-70.  Moreover, petitioner fails to demonstrate that Smith had felony drug convictions

24  that would have been admissible as impeachment at trial.  Accordingly, petitioner fails to

25  demonstrate any denial of due process.

26  With respect to petitioner's complaint about the prosecutor's presentation of a gun, the

27  record shows that investigating officer Shabatura testified that he looked in the stairwell and found

28  no expended shell casings, no bullets or bullet holes, and no gun.  RT at 272.  Shabatura explained

1  to the jury the difference between revolvers and semi-automatic handguns.  RT at 274.  Using a

2  diagram of a revolver handgun (People's Exh. 17), officer Shabatura demonstrated to the jury what

3  a revolver looks like.  RT at 274-75.  Next, officer Shabatura identified a Smith and Wesson .38

4  caliber revolver (People Exh. 19) for the jury.  RT at 276.  Officer Shabatura explained how the

5  revolver is loaded and testified that revolvers do not eject spent shell casings.  RT 276-77.  On cross-

6  examination, officer Shabatura testified that the sample revolver had nothing to do with the case and

7  was used simply as a demonstrative device.  RT 283-84.

8      The record discloses no defense objection to officer Shabatura's demonstration with a

9  sample revolver.  The record does not show that any prejudice resulted from the limited use of the

10  gun.  No due process violation is demonstrated.  Indeed, the challenged evidence did not have a

11  substantial or injurious influence on the verdict under *Brecht v. Abrahamson*, 507 U.S. 619, 623

12  (1993).

13      The California court's denial of this claim was neither contrary to nor an unreasonable

14  application of Supreme Court precedent.  Petitioner is not entitled to relief on this claim.

15                                        **IV.**

16  **PETITIONER DOES NOT DEMONSTRATE INEFFECTIVE**
    **ASSISTANCE OF COUNSEL**

17

18      Petitioner asserts that trial counsel was ineffective for failing to investigate and present

19  an innocence defense and for failing to impeach Erica Smith.  *See* Petn. at 6.  Petitioner also

20  complains that appellate counsel was ineffective for failing to raise on direct appeal the ineffective

21  assistance of trial counsel for the same failures petitioner now posits.  *Id.*

22      To establish ineffective assistance of counsel, a petitioner must first demonstrate that

23  counsel's performance was deficient by showing that counsel's performance fell below an objective

24  standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  To counteract

25  the unfair influence of hindsight, judicial scrutiny of counsel's performance must be highly

26  deferential, and a court must indulge a strong presumption that counsel's conduct falls within a

27  range of professional assistance.  *Id.* at 689.  After establishing the deficiency of counsel's

28  performance, a petitioner must then show that counsel's errors were so serious as to deprive him of

a fair trial. *See id.* at 687. While the petitioner need not show that counsel's deficient conduct more likely than not altered the outcome of the case, the petitioner must show that there is a reasonable probability that, but for counsel's deficient conduct, the result of the case would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694; *see also Brown v. Myers*, 137 F.3d 1154, 1157 (9th Cir. 1998).

The *Strickland* framework is considered "'clearly established' Federal law, as determined by the Supreme Court of the United States, for the purposes of 28 U.S.C. § 2254(d) analysis." *Wilson v. Henry*, 185 F.3d 986, 988 (9th Cir. 1999). Under AEDPA, a state court's *Strickland* analysis should be analyzed under the "unreasonable application" prong. *Weighall v. Middle*, 215 F.3d 1058, 1061-62 (9th Cir. 2000).

Here, petitioner does not demonstrate that he is innocent. Accordingly, petitioner does not demonstrate prejudice from counsel's inactions.

As to counsel's failure to impeach petitioner's niece, Erica Smith, petitioner does not demonstrate that Smith had committed a crime of moral turpitude appropriate for impeachment. The record of cross-examination reflects that trial counsel chose to examine Erica Smith with great care and established that Smith thought petitioner's statements were "unbelievable." *See* RT at 265. The fact that defense counsel examined Smith with care suggests that defense counsel discerned that the witness could not be impeached. No ineffective representation is demonstrated.

Moreover, given Webster's testimony identifying petitioner as her stalker, petitioner cannot demonstrate a reasonable probability of a more favorable result in the absence of counsel's failures to impeach Smith.

As to the claim of ineffective assistance from appellate counsel, the claim also fails. Appellate counsel have no constitutional obligation to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *Gustave v. United States*, 627 F.2d 901, 906 (9th Cir. 1980). Here, as argued, trial counsel was not ineffective. Accordingly, appellate counsel cannot be ineffective. Moreover, petitioner does not demonstrate that had trial counsel's actions been challenged on appeal that it would have resulted in a reversal of the judgment.

The California court's denial of this claim was neither contrary to nor an unreasonable

1    application of *Strickland v. Washington*.  Petitioner is not entitled to relief on this claim.

2                                    **CONCLUSION**

3          Accordingly, respondent respectfully requests that the Court deny the petition for writ of

4    habeas corpus.

5          Dated:  July 22, 2008

6                                    Respectfully submitted,

7                                    EDMUND G. BROWN JR.
                                     Attorney General of the State of California

8                                    DANE R. GILLETTE
                                     Chief Assistant Attorney General

9                                    GERALD A. ENGLER
                                     Senior Assistant Attorney General

10                                    JULIET B. HALEY
                                     Deputy Attorney General

11

12

13                                    /s/ René A. Chacón

14                                    RENÉ A. CHACÓN
                                     Supervising Deputy Attorney General

15                                    Attorneys for Respondent

16   20123035.wpd
     SF2008401662
17

18

19

20

21

22

23

24

25

26

27

28

Memo. of Ps & As in Support of Answer-No. C 08-1202 JSW (PR)

16

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  JULIET B. HALEY
   Deputy Attorney General
5  RENE A. CHACON, State Bar No. 119624
   Supervising Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5957
    Fax:  (415) 703-1234
8   Email:  Rene.Chacon@doj.ca.gov

9  Attorneys for Respondent

10

11            IN THE UNITED STATES DISTRICT COURT

12         FOR THE NORTHERN DISTRICT OF CALIFORNIA

13              SAN FRANCISCO DIVISION

14

15  **RONALD D. JACKSON,**                    C 08-1202 JSW (PR)

16                          Petitioner,       **NOTICE OF LODGING OF,**
                                              **AND INDEX TO, EXHIBITS**
16

17           **v.**

    **D.K. SISTO, Warden,**
18

19                          Respondent.

20          Respondent hereby submits the following exhibits to be lodged with the Clerk of the Court

21  in support of the Answer and supporting memorandum.

22              **RESPONDENT'S INDEX TO LODGED EXHIBITS**

23      EXHIBIT A:  Clerk's Transcript (2 Volumes);

24      EXHIBIT B:  California Court of Appeal Unpublished Opinion;

25      EXHIBIT C:  Petition for Review and Order Denying Petition for Review;

26      EXHIBIT D:  Petition for Writ of Habeas Corpus and Supreme Court Order Denying Petition;

27      EXHIBIT E:  Reporter's Transcript of Trial (8 Volumes, pages 1-555).

28

1          Dated:  July 21, 2008

2                                    Respectfully submitted,

3                                    EDMUND G. BROWN JR.
                                     Attorney General of the State of California

4                                    DANE R. GILLETTE
                                     Chief Assistant Attorney General
5
                                     GERALD A. ENGLER
6                                    Senior Assistant Attorney General

7                                    JULIET B. HALEY
                                     Deputy Attorney General
8

9                                    /s/ René A. Chacón

10
                                     RENE A. CHACON
11                                   Supervising Deputy Attorney General
                                     Attorneys for Respondent
12

13
        20125809.wpd
14      SF2008401662

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice Of Lodging Of, And Index To, Exhibits - C 08-1202 JSW (PR)