United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RONALD D. JACKSON,

Petitioner,

vs.

D.K. SISTO, Warden,

Respondent.

_______________________________/

No. C 08-1202 JSW (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set out below, the petition is denied.

**BACKGROUND**

A San Mateo County jury found Petitioner guilty of attempted murder, *see* Cal. Penal Code §§ 187(a), 664; one count of assault with a firearm, *see id.* at § 245(a)(2); two counts of stalking, *see id.* at § 646.9(b), (c)(2); one count of violating a protective order, *see id.* at § 166 (c)(4)(1); and three counts related to defendant's possession of a firearm, *see id.* at § 12021(a)(1), (c)(1), (g)(1)). (Ex. D (opinion of court of appeal) at 1-2.)[1] The jury found to be true the allegations that the attempted murder was premeditated, *see* Cal. Penal Code § 189, and that Petitioner personally and intentionally discharged a firearm,

[1] Citations to "Ex." are to the record lodged with the court by the Attorney General.

*see id.* at § 12022.53(c). (Ex. D at 2.) Defendant admitted allegations that he was on probation, that he had a prior conviction for stalking, and that he had a prior misdemeanor conviction. (*Id.*) The trial court denied probation and imposed an indeterminate term of life with the possibility of parole, imposed a consecutive twenty year term for the intentional discharge of a firearm allegation, and stayed sentencing on the remaining counts. (*Id.*)

Petitioner does not dispute the following facts, which are excerpted from the opinion of the California Court of Appeal:

> The victim, Jane Webster, dated defendant for over 10 years, and she lived with him for about eight of those years. Their relationship deteriorated and at the end of 2001 Webster asked defendant to leave her residence. Defendant did not move out and in August 2002 defendant choked Webster during an argument. He left the residence while Webster was on the phone with the police and she sought a restraining order the next day.
>
> During August and September 2002, defendant left numerous voice mail messages for Webster. In mid-November, Webster turned over to the police a tape with recordings of 43 messages left by defendant. Many of the messages were angry and threatening; a number of the messages complained that Webster had taken away his life and left him nowhere to go. One message threatened that he would find Webster and another threatened that “nothing is going to save your ass from me” if Webster invaded defendant's privacy (presumably by going through his mail or belongings at the residence).
>
> In February 2003, Webster saw defendant drive up to her home, then heard pounding on her door. Defendant left numerous voice mail messages that Webster played for the officer who responded to her report of a restraining order violation. In one message, defendant called Webster a “backstabbing bitch.” Another message threatened that he would “have to come over for a face-to-face.” Another message complained that it was “not okay, Jane, to end the relationship by putting me in jail.” In another message, defendant asked to talk to Webster because he was “in serious love” and complained “that hanging up shit has got to go.” A February 19 message asked Webster if she was proud of herself for putting him in jail and threatened, “You are not getting away with this, believe me. You are not getting away with it. I don't give a fuck who you tell, you are not getting away with this.” The final message, also on February 19, said, “I expect a call from you.”
>
> The parties stipulated: on August 29, 2002, a restraining order issued directing defendant not to “contact, molest, harass, attack, strike, threaten, sexually assault, batter, telephone, send any messages to, follow, stalk, destroy the personal property of, disturb the peace, keep under surveillance or block movement in public places or thoroughfares of Jane Webster” and directing him to stay 100 yards away from Webster's residence and not to own or possess firearms; on January 23, 2003, defendant was convicted of

United States District Court
For the Northern District of California

misdemeanor battery on Webster and misdemeanor stalking of Webster; on June 16, 2003, defendant was convicted of felony stalking of Webster; on July 29, 2003, a trial court placed defendant on felony probation conditioned on Jackson not contacting Webster.

After June 2003, Webster received just two phone calls from defendant. The last call was in March or April 2004; defendant called Webster and she hung up the phone when she heard his voice.

On June 28, 2004, Webster came home from work at about 5:30 p.m. She entered a stairwell leading up from the parking garage. Webster heard defendant call her name. She glanced back, saw defendant standing behind the door to the stairwell, and ran up the stairs. She heard two pops that sounded like gunshots or loud firecrackers as she reached the top of the stairs and fell to the ground, injuring her elbow and right hand. As she fell, Webster looked back and saw a figure exit from the stairwell into the garage. She screamed "it's him. Call 911."

Three people in nearby apartments heard what they believed were gunshots and then saw Webster lying on the ground. Officers dispatched to the scene were unable to find bullet holes or shell casings.

Later, defendant arrived at the residence of his friend Brett Banbury. Defendant was "nervous," "agitated," and had a "deep scrape" on his leg. He told Banbury that "things were worse for him now than they were before." He also complained that Webster had "ruined his life." He spent the night at Banbury's residence.

On June 29, 2004 at around 9:00 a.m., defendant's niece, Erica Smith, opened the door for defendant at her family's home in San Mateo. He appeared "very exhausted" and had a cut on his calf. Smith's father would not allow defendant to stay at the house, so defendant accompanied Smith on an errand. Eventually Smith dropped defendant off at a bus stop in Menlo Park. Before he left the car he was "pretty sad." He cried and told Smith that she probably would not see him again because he had "done something bad." He told her that he had visited Webster and he didn't know whether she was "dead or alive" because he had taken "two shots" at her.

At trial, defendant denied going to Webster's residential complex on June 28 and denied ever possessing a gun. He testified he did not have any contact with Webster after his release from jail in September 2003; he had "pretty much" let go of their relationship by then. On June 28, he went to San Mateo and injured his leg scaling a fence in a park. Later, he visited Banbury. When he told Banbury that his life was worse, he was referring to his probation status and his failure to visit his probation officer. He did see Smith on June 29, but he did not tell Smith that he had been to Webster's residence. While talking to Smith, he was upset about how his family was treating him and concerned about his probation status; he did tell Smith that he did not care whether Webster was alive or dead.

(Ex. D at 2-4.)

///

///

**STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

///

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**DISCUSSION**

As grounds for habeas relief Petitioner asserts that: (1) It was a miscarriage of justice when he was sentenced "under a generic statute which is not authorize[d] by law;"(2) there was no evidence to sustain his conviction for attempted murder or the use of a firearm; (3) the prosecutor committed misconduct, including by withholding exculpatory evidence; and (4) he received ineffective assistance from both his trial and appellate counsel.

## I. Generic Statute

In the petition, Petitioner phrases this issue thus: "The trial court sentence on petitioner is a miscarriage in the form of violating the sixth and fourteen[th] amendments." (Pet. at 5.) As "Supporting Facts" he says: "Petitioner was sentence[d] under a generic statute which is not authorize by law. This sentence exceeds the jurisdiction of trial court. The due process command that no man shall lose his liberty unless the government has borne the burden of convincing the fact finders of his guilt. To such end, the reasonable doubt standard is indispensable." (*Id.*)

Habeas corpus petitions must meet heightened pleading requirements. *McFarland v. Scott*, 512 U.S. 849, 856 (1994). An application for a federal writ of habeas corpus filed by a prisoner who is in state custody pursuant to a judgment of a state court must "specify all the grounds for relief which are available to the petitioner ... and shall set forth in summary form the facts supporting each of the grounds thus specified." Rule 2(c) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. "'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" Rule 4 Advisory Committee Notes (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970). "Habeas petitions which appear on their face to be legally

insufficient are subject to summary dismissal." *Calderon v. United States Dist. Court* (*Nicolaus*), 98 F.3d 1102, 1108 (9th Cir. 1996) (Schroeder, J., concurring).

In presenting this claim in his petition, Petitioner does not state facts that point to a real possibility of constitutional error; indeed, he states no facts at all. And although Petitioner presents a different claim in his traverse, that the sentence was cruel and unusual, new claims cannot be raised in a traverse. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). This claim therefore will be denied.

Alternatively, the Court will consider this issue as presenting an Eighth Amendment claim.

The Eighth Amendment to the United States Constitution provides that there "shall not be . . . cruel and unusual punishment inflicted." U.S. Const. amend. VIII. "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 23 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)); *see also Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) ("A gross disproportionality principle is applicable to sentences for terms of years.").

There can be no inference of gross disproportionality here. Petitioner was convicted of attempted murder, assault with a firearm, and a number of lesser offenses. (Ex. D at 1-2.) He also was found to have personally used a firearm and to have inflicted great bodily injury. (*Id.*) He was on probation when he committed the crimes. (*Id.*) Courts have upheld sentences of life without possibility of parole for crimes far less heinous than Petitioner's crimes. *See, e.g., Harmelin*, 501 U.S. at 961 (possession of 672 grams of cocaine); *United States v. Van Winrow*, 951 F.2d 1069, 1071 (9th Cir.1991) (possession of cocaine with intent to distribute). And California federal district courts, including this one, have held that imposing a consecutive sentence under Section 12022.53 of the California Penal Code is not cruel and unusual. *See, e.g., Sartoresi v. Horel*, No. ED CV 08-00901-GW (VBK), 2010 WL 476698, at *13 (C.D. Cal. Feb. 1,

2010) (sentence of thirty-one years, eight months, plus twenty-five years to life under Section 12022.53(d), not cruel and unusual for petitioner convicted of attempted murder, three counts of assault, and two counts of criminal threats, and who had four priors) (citing cases); *Valera v. Kane*, No. C 05-2568 JSW (PR), 2008 WL 4449610, at *11-13 (N.D. Cal. Sept. 30, 2008) (thirty-four years and eight months for attempted murder, assault with deadly weapon, shooting into inhabited dwelling, and firearm enhancements not cruel and unusual punishment). Because there is no inference of gross disproportionality, comparative analysis of the sentence is unnecessary. *See Harmelin*, 501 U.S. at 1004-05.

Petitioner's Eighth Amendment claim not only cannot be considered because it was improperly raised, but even if it were to be considered, it would be without merit.

**II. Sufficiency of the Evidence**

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, *id*. at 324. The federal court determines only whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *Id*. at 324.

In this issue in his petition, Petitioner sets out the elements of an attempted murder under California law, namely an intent to kill and a "'direct but ineffectual act towards its commission.'" (Ex. D at 7 (quoting *People v. Ramos*, 121 Cal. App. 4th 1194, 1207-08 (2004))). He contends that there was no evidence a "gun exist[ed]," or that he ever "purchased[d] or used a gun." (Pet. at 5.)

Contrary to Petitioner's claim, however, there was evidence that a gun existed and that Petitioner used it: The victim's testimony that she saw Petitioner in the parking garage, ran, and heard two sounds like gunshots or firecrackers (RT at 318-23), the testimony of other witnesses that they heard was they thought were gunshots (RT 142, 144, 157-58, 161, 179), and the evidence that Petitioner told his niece that he "took two shots" at the victim (RT 262). When considering a sufficiency of the evidence claim the Court must "view[] the evidence in the light most favorable to the prosecution," *Jackson*, 443 U.S. at 319, so must assume that the jury believed the witnesses. This testimony, when believed, was more than sufficient to support the verdict.

**III. Prosecutorial Misconduct**

Petitioner contends that the prosecution failed to disclose his niece's "drug history," and the prosecutor committed misconduct by "presenting" a gun that "had nothing to do with the case."

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The Supreme Court has since made clear that the duty to disclose such evidence applies even when there has been no request by the accused, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676 (1985). Evidence is "material" under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682. "There are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Petitioner has failed to provide any evidence that his niece had a drug history of any kind, much less a criminal history that could be used for impeachment, nor does he show that if such a history existed, it was not provided to counsel. There was no *Brady* violation. And the gun about which he complains is one that was used for demonstration by a deputy who was explaining that revolvers do not eject shell casings, so the absence of casings at the scene might be because a revolver was used, rather than a semi-automatic pistol. (RT 274-77.) It was not received into evidence, having been used merely to demonstrate how a revolver works. (CT 125; RT 283-84.) It was not prosecutorial misconduct for the prosecutor to use the revolver as a demonstrative prop.

**IV. Ineffective Assistance of Trial and Appellate Counsel**

Petitioner contends that his trial and appellate counsel were ineffective.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Id. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the Strickland test if the petitioner cannot even establish incompetence under the first prong. Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998). Similarly, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. Strickland, 466 U.S. at 697.

///

United States District Court
For the Northern District of California

Petitioner contends that his lawyer was ineffective in failing to present what he calls an “innocence defense” and in not impeaching his niece, a crucial prosecution witness, with purportedly inconsistent statements, and that appellate counsel was ineffective in not raising this issue and the others he presents here.

Petitioner provides no explanation what he means by an “innocence defense,” nor does he say what inconsistent statements by his niece should have been used to impeach her. Under the standard for habeas petition pleading set out in section I above, this total absence of facts pointing to a real possibility of constitutional error is fatal to these claims.

In addition, as to the “innocence defense,” Petitioner testified at trial and detailed his purported activities the day of the shooting, which of course did not include going anywhere near the victim (RT at 352-54), and in closing, his counsel argued that if the jury were not convinced beyond a reasonable doubt that Petitioner was at the scene, they should acquit (*id.* at 488). It thus appears that counsel did in fact present an innocence defense.

In short, Petitioner has completely failed to demonstrate that trial counsel's performance was deficient or that he was prejudiced. And because none of his claims here have merit, appellate counsel was not ineffective in failing to raise them.

**V. Appealability**

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability (formerly known as a certificate of probable cause to appeal). *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate must

indicate which issues satisfy this standard. *See id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000).

This was not a close case. For the reasons set out above, jurists of reason would not find the result debatable or wrong. A certificate of appealability will be denied. Petitioner is advised that he may not appeal the denial of a COA, but he may ask the court of appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a), Rules Governing § 2254 Cases.

**CONCLUSION**

The petition for a writ of habeas corpus is DENIED. A certificate of appealability is DENIED. The Clerk shall close the file.

**IT IS SO ORDERED.**

DATED: May 4, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

G:\JSWALL\Pro-Se Prisoner\2008\Jackson1202.RUL.wpd

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

RONALD D. JACKSON,

Plaintiff,

v.

D.K. SISTO et al,

Defendant.

_____________________________________/

Case Number: CV08-01202 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on May 4, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Ronald D. Jackson
CSP Solano
V70867
P.O. Box 4000
Vacaville, CA 95696

Dated: May 4, 2010

Jennifer Ottolini

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk